# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **CW GOVERNMENT TRAVEL, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | ) | **Case No. 03-1274**<br>**Judge Lawrence M. Baskir** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT AND JOINT REQUEST TO MODIFY BRIEFING SCHEDULE**

Plaintiff CW Government Travel, Inc. ("Carlson"), by counsel, submits this Memorandum in Support of its Motion for Leave to File an Amended Complaint and the Joint Request to Modify the Briefing Schedule for the Government's Motion to Dismiss or for Summary Judgment.

## BACKGROUND

This case involves three Department of Defense ("DoD") travel management service contracts. One contract was awarded to TRW, Inc. ("TRW") in 1998. That contract is known as the DTS DTR-6 Contract and is the contract that is at issue in Counts I and II of the Complaint. The DTS DTR-6 Contract is the subject of the claims Carlson seeks to amend in its Amended Complaint.

The other two contracts at issue are contracts between Carlson and the Army relating to the provision of traditional travel services. The claims regarding those contracts are not altered by the Amended Complaint.

The DTS DTR-6 Contract was a fixed-price contract in the amount of $263.7 million awarded in May 1998. The contract required TRW to develop and implement a software-based Common User Interface ("CUI") that would link the various components of DoD's travel management system, including automated payment/reimbursement of DoD travel expenses, to create a new, unified Defense Travel System ("DTS"). TRW's receipt of any payment was contingent upon the successful development, operational deployment, and actual utilization of the CUI by Government travelers. The 1997 DTS Solicitation required, among possible solutions, a client/server-based software solution in which the CUI software was to be physically installed in each PC or facility server used by Government travelers. The CUI software installed in the individual PCs or facility servers was to be modified to interface and communicate via a local area network, and had to interface with a number of other DoD computer software programs and systems. In addition, the CUI also had to be accessible via the DoD NIPRNET.

TRW's contract performance proceeded fitfully with numerous delays and failed tests. Operational deployment of the CUI throughout 11,000 DoD sites worldwide was originally scheduled to be completed by September 2001. But the project was marred by extensive delays, significant technical difficulties, and extensive cost overruns. By the end of 2001, TRW had incurred more than 43 million dollars in costs attempting to develop and test the CUI. However, the CUI was still not acceptable for operational deployment. The DoD Office of Inspector General issued a harshly critical report on the project in July 2002. Carlson contends that, as a result of the significant problems encountered by TRW, the Government commenced a complete restructuring of the DTS DTR-6 Contract that included fundamental out-of-scope changes.

In its original Complaint, Carlson set forth facts alleging two principal cardinal changes to the DTS DTR-6 Contract that were made in 2002. The first out-of-scope modification was a

radical change in technology. The original DTS DTR-6 Contract required the CUI to function as a client/server-based software solution in which the CUI software must be physically installed in each PC or facility server used by Government travelers. The CUI software was to be a "Commercial-Off-The–Shelf" ("COTS") software package that was to be modified to interface and communicate via a local area network, and had to interface with a number of other DoD computer software systems.

In contrast, the restructured contract called for TRW to develop a web-based solution that would perform all CUI-required functions and permit all Government travelers having access to the internet to interact with the DTS through a website hosted by TRW. This approach reflected a dramatically different methodology and technology from that contained in the original DTS DTR-6 Contract. The modification amounted to a sole-source procurement that ignored the fact that there are currently a number of commercially available, web-based/travel management products.

The second fundamental change added services never contemplated in the original Solicitation — the addition of traditional travel management services to the 11-state region included in the DTS DTR-6 Contract for the several additional years anticipated to be required to develop and deploy the new CUI technology.

The Government responded that the change from a client/server application to a web-based application was merely a natural technological progression contemplated in the 1997 DTS Solicitation and original DTS DTR-6 Contract, and that traditional travel services without using the CUI were always required by the contract.

On September 30, 2003, the Court held a preliminary status conference. Carlson's need for discovery, the documents included in a September 8, 2003 appendix for the Court, and

Carlson's inability to obtain information from the Government was one of the subjects addressed in the conference. The Court ordered that the parties engage in the informal exchange of documents. The Government thereafter produced an additional 25 volumes of documents for Carlson to inspect. As a result of the documents released in the September 8, 2003 appendix and informal production, Carlson learned that the 2002 modifications to the restructured DTS DTR-6 Contract were far more extensive than previously known.

The Amended Complaint addresses claims based on this newly available information. The amended pleading essentially addresses two additional significant changes that constitute improper cardinal changes.

First, the payment structure was completely restructured to make the contract far more favorable to the contractor. As originally solicited and awarded, the contract required the contractor to absorb all development and testing costs, and the Government was not obligated to pay any development or testing costs incurred by the contractor. Moreover, the contractor could not earn any payments, unless and until, the CUI was thoroughly tested and operationally deployed. After that time, fixed payments would be made based on the number of users and actual transactions using the CUI.

As detailed in the Amended Complaint, the restructured contract deleted and completely revised the fundamental contract provisions, including those governing pricing (economic risk), performance work statement, contract administration, and special contract provisions. The Government required TRW to submit extensive proposals for the restructuring of the contract. The Government prepared detailed pre-negotiation and post-negotiation Business Clearance Memoranda, as they would for a completely new contract. Moreover, the negotiation of the restructured contract extended over many months, during which the Government apparently

made no attempt to determine if competition for the restructured contract was possible. There was also no apparent attempt to justify the execution of a sole source contract with TRW in connection with the 2002 restructuring of the DTS DTR-6 Contract.

The restructuring of the contract pricing provisions and performance risk allocation constitute cardinal changes that rival or surpass the magnitude of the technical changes. The restructured contract required the Government to pay more than $43 million to reimburse TRW for the costs it incurred from 1998 through 2001 attempting to develop and test the CUI. The restructured contract then required the Government to pay TRW fixed monthly fees for the next five years, totaling more than $142 million to develop, test, deploy, and maintain the CUI. The restructured contract also included additional cost-reimbursable provisions. The effect of the restructured contract was that the Government, not TRW, assumed the risk and cost of developing the CUI. Moreover, TRW was to be paid "up front," and the revenue received by TRW was no longer contingent upon the successful development, operational deployment, and widespread utilization of the CUI by Government travelers.

The information disclosed in the Government's document production also revealed the extent of the modifications to the contract's technical requirements. The contract revisions deleted the onerous technical requirements that the CUI must be a COTS product and be integrated via client-server/computer software interaction and the DoD NIPRNET, and allowed TRW to move solely to a web-based system. It had been these technical requirements for extensive software development and integration that significantly limited the potential bidders for the original Solicitation, and was the primary source of TRW's performance problems and the massive cost overruns. Thus, not only was the contract restructured to pay tens of millions of dollars in development costs up front and to provide a "no-risk" payment schedule, the most

onerous technical requirements were deleted, allowing for the first time a solely web-based CUI system. This information puts to rest the Government's claim that a web-based system was merely the result of a natural technological progression, because as long as a client/server application was required using COTS computer software and interface with the DoD NIPRNET (as it was in the 1997 Solicitation and original DTS DTR-6 Contract), a web-based system could only be a costly compliment to the acquired client/server system.

The proposed Amended Complaint also reflects the fact that the General Services Administration conducted a competition for a web-based, end-to-end travel management system and has awarded contracts to Carlson, Electronic Data Systems, and TRW (e.g., Northrop Grumman). This establishes that there would be adequate competition if the DoD requirement for a web-based, end-to-end travel management system is competitively procured, and that Carlson is a viable competitor.

The proposed Amended Complaint amends Carlson's claim to include these new claims. The Government has been provided a copy of the proposed Amended Complaint and, while not agreeing to Carlson's allegations regarding the import of the modifications, does not object to Carlson's Motion for Leave to Amend to add these issues.

In addition, during the September 30, 2003 Initial Status Conference, the Court established a briefing schedule for the Government to file a renewed Motion to Dismiss or Motion for Summary Judgment. That schedule required the Government to file its Motion and initial Brief on November 14, 2003. Carlson was to file an opposition or a Motion justifying additional discovery by December 12, 2003. The Government was to file any reply by December 31, 2003.

In light of the Amended Complaint, the parties have agreed that a modification to that schedule is appropriate. The parties ask that the schedule be amended to allow the Government to file its Motion and initial Brief on December 15, 2003. Carlson's reply, as outlined above, will be due on January 15, 2004. The Government will file any reply by January 30, 2004. The Government's answer to the Amended Complaint will be due on December 9, 2003.

**ARGUMENT**

Leave to amend is to be freely given in the interests of justice. *Rule 15, RCFC*.; *Filmtec Corp. Hydranautics*, 67 F.3d 931,935 (Fed. Cir. 1995) (court should be guided by underlying policy of Rule 15 to liberally grant leave so cases are addressed on their merits). Generally, leave to amend should be granted absent specific factors such as bad faith, undue delay accompanied by specific prejudice to the opposing party, or undue prejudice. *See 3 Moore's Federal Practice §15.15[1]* (Matthew Bender 3rd Ed). Here, the Government does not oppose leave. There is no prejudice because there is no trial scheduled, formal discovery has not been undertaken, the amendment is based upon documents in the Government's possession, and the Government will have more than a sufficient opportunity to fully defend all of the claims.

Likewise, Carlson did not delay at all in seeking leave. Carlson had to await informal discovery to learn the extent of the cardinal changes made to the DTS DTR-6 Contract. After the status conference, the Government informally produced documents. The information contained in those documents form the basis for the Amended Complaint. Carlson promptly advised the Government of its intention to file an Amended Complaint, and promptly sought leave to amend when information regarding the new matters became available.

Likewise, the Amended Complaint is not interposed for purposes of delay. Rather, the new information and claims go to the heart of whether the Government violated the Competition

in Contracting Act by revising its contract with TRW in such a way that it resulted in a new contract that was never the subject of a competitive procurement.

Finally, the modified schedule proposed by the parties is reasonable and will not unduly delay the proceedings. The addition of new claims must be addressed and the proposed modification to the schedule will give the Government the time it needs to evaluate these claims and address the issues in whatever Motion it files.

## CONCLUSION

For the reasons stated above, the Court should grant Carlson leave to amend its Complaint.

Respectfully submitted,

"s/Lars E. Anderson"

Lars E. Anderson
Michael W. Robinson
**VENABLE LLP**
8010 Towers Crescent Drive
Suite 300
Vienna, Virginia 22182
(703) 760-1600 (Telephone)
(703) 760-1623 (Protected Facsimile)

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2003, a copy of the foregoing *Plaintiff's Memorandum in Support of Motion for Leave to Amend Complaint and Joint Request to Modify Briefing Schedule* was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

"s/Lars E. Anderson"

Lars E. Anderson