# In The United States Court of Federal Claims

| | |
|---|---|
| CW GOVERNMENT TRAVEL, INC.<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | Case No. 03-1274<br>Judge Lawrence M. Baskir |

## REPLY TO PLAINTIFF'S OPPOSITION TO NORTHROP GRUMMAN'S MOTION TO INTERVENE

John W. Chierichella
Anne B. Perry
Sheppard, Mullin, Richter & Hampton
1300 I Street, NW, 11th Floor East
Washington, DC 20005
202-218-0000
202-218-0020, fax

Dated: November 24, 2003

# Table of Authorities

## *Cases*

Am. Maritime Transp., Inc. v. United States,
870 F.2d 1559, 1561 (Fed. Cir. 1989) ............................... 8

Bean Stuyvesant, LLC v. United States, 48 Fed. Cl. 303 (2000) ...... 6

Butler, Fitzgerald & Potter v. Sequa Corp.,
250 F.3d 171 (2d Cir. 2001) ............................................ 7

CCL Services Corp. v. United States, 48 Fed. Cl. 113 (2000) ..........6

Computer Sciences Corp. v. United States,
51 Fed. Cl. 297 (2002) ..................................................6

Freeman v. United States, 50 Fed. Cl. 305 (2001) ........................7

Hage v. United States, 35 Fed. Cl. 737 (1996) ............................7

Halter Marine, Inc. v. United States, 56 Fed. Cl. 144 (2003) ........... 6

Hines v. Rapides Parish Sch. Bd., 479 F.2d 762 (5th Cir. 1973) ...... 7

Input/Output Tech., Inc. v. United States, 44 Fed. Cl. 65 (1999) ....6-7

Miller-Holzwarth, Inc. v. United States, 42 Fed. Cl. 643 (1999),
aff'd, 232 F.3d 905 (Fed. Cir. 2000) ..................................7

Northrop Grumman Corp. v. United States,
50 Fed. Cl. 443 (2001) ..................................................6

Synetics, Inc. v. United States, 45 Fed. Cl. 1 (1999) .....................6

## *Rules*

RCFC 24(a) ........................................................ 4, 5, 7, 8
RCFC, Appendix C .................................................. 2, 5, 7-9

## Summary

CW Government Travel, Inc.'s ("Carlson") opposition to Northrop Grumman Space and Mission Systems Corporation's ("Northrop Grumman" or "Intervenor") motion to intervene is unfounded. This is a case in which Carlson seeks to set aside and nullify a contract award made by the Government to Northrop Grumman. For the reasons summarized below, and as explained more fully in the ensuing discussion, Northrop Grumman's motion should be granted.

First, notwithstanding Carlson's unsupported protestations to the contrary, this is a typical post-award bid protest involving an effort to set aside a contract action, allegedly under the principles set forth in the Competition in Contracting Act. Carlson's very Complaint marks this as a protest case, subject to Appendix C.12 of the Rules of the Court of Federal Claims. Appendix C.12 makes clear the right of an awardee to intervene to protect its interests.

Second, Carlson's complaints with respect to delay on the part of Northrop Grumman are groundless:

1. There have been no substantive motions decided by the Court and there are no substantive motions pending;

2. The only procedural motions pending (other than the instant motion) are motions instigated by Carlson that mitigate – if not vitiate – any contention that Northrop Grumman's motion is somehow untimely, i.e., a motion to file a new and expanded Amended Complaint that, in effect, "restarts" this case ab initio, will require a new Answer on the part of the Government, and specifically asks the Court to extend the schedule; and
3. Northrop Grumman is amenable to and will comply with any schedule the Court should direct, including the filing of an Answer on the currently scheduled date.

Under these circumstances, Carlson's criticisms of Northrop Grumman's alleged "delay" of the proceedings not only ring hollow, they are misdirected. If anything has delayed the resolution of Carlson's claims, it is (i) Carlson's thirteen (13) month delay in initiating this action; (ii) its subsequent withdrawal of its original motion for provisional relief; and (iii) its ensuing amendment of its Complaint, which necessitates that the schedule now be extended further by the Court.

Finally, Carlson's Opposition betrays, in the end, the facile nature of its contentions. Rather than have Northrop Grumman intervene here and have all affected parties' rights resolved in a single proceeding, Carlson

would affirmatively promote a multiplicity of claims, actions, and protests, with Northrop Grumman separately proceeding "to protect its interest through the contract claims process as well as in the subsequent procurement," including additional protests. Opposition to Motion to Intervene, at 6 ("Opposition"). This, however, is precisely what Rule 24 is designed to avoid.

For all of these reasons, which are discussed in greater detail below, Northrop Grumman's motion to intervene should be granted.

## Discussion

Carlson's Opposition is nothing more than an exercise in definitional self-help. By seeking to characterize its challenge as something other than a "typical post-award bid protest," Carlson dispenses with the need to discuss either (1) what the Rules of this Court relating to intervention require, or (2) how these Rules are applied in a post-award bid protest. Instead, Carlson cites to inapposite authority to support its argument that merely having an "economic interest" in the bid protest is not enough to justify intervention. The plain fact of the matter is that Carlson's words cannot change the facts – it is protesting the award of a contract; it is seeking to enjoin performance of that contract as awarded; and it is seeking to have the requirements of the contract reprocured. Any attempt

to characterize this matter as something other than a "protest" is nothing more than an exercise in sophistry.

### A. The Rules of the Court Allow Northrop Grumman to Intervene

Rules 24(a)(2) of the Rules of the Court of Federal Claims ("RCFC") clearly states the controlling legal rule – a party is entitled to intervene in an action when it "claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." This rule clearly encompasses the awardee in a bid protest case, as confirmed by RCFC, Appendix C.12 (relating to procedure in the Court of Federal Claims for bid protest actions), which makes clear that a successful contractor in a post-award bid protest is entitled to intervene when injunctive relief is sought.

Here, because Carlson has sought injunctive relief in its protest allegations concerning the propriety of the Government's modifications to Northrop Grumman's contract, the foregoing principles clearly support intervention by Northrop Grumman. Carlson's principal argument to the contrary – i.e., that it is not contesting the original award – places the cart before the horse, because the determination as to whether a modification is beyond the scope of a contract necessarily hinges on whether the original

contract contemplated the effort called for under the modification. Further, Northrop Grumman disputes Carlson's allegations that the changes in the modification are beyond the scope of the contract, and the record will clearly demonstrate that the alleged changes were either contemplated by, or included in, the original contract. It is simply specious for Carlson to contend that Northrop Grumman has no interest in this Court's interpretation of a contract to which Northrop Grumman is a party. Clearly, the Rules and procedures of this Court allow Northrop Grumman, as the contractor whose interests would be adversely affected by this post-award bid protest, to intervene to protect those interests.

**B. The Weight Of Authority From the Court of Federal Claims Supports Northrop Grumman's Right to Intervene**

Northrop Grumman's right to intervene is clearly recognized by the Court of Federal Claims, which routinely allows successful contractors to intervene in bid protest cases. See, e.g., Halter Marine, Inc. v. United States, 56 Fed. Cl. 144 (2003); Computer Sciences Corp. v. United States, 51 Fed. Cl. 297 (2002); Northrop Grumman Corp. v. United States, 50 Fed. Cl. 443 (2001); CCL Services Corp. v. United States, 48 Fed. Cl. 113 (2000); Bean Stuyvesant, LLC v. United States, 48 Fed. Cl. 303 (2000); Synetics, Inc. v. United States, 45 Fed. Cl. 1 (1999); Input/Output Tech.,

Inc. v. United States, 44 Fed. Cl. 65 (1999); Miller-Holzwarth, Inc. v. United States, 42 Fed. Cl. 643 (1999), aff'd, 232 F.3d 905 (Fed. Cir. 2000).

Tellingly, none of the authorities cited by Carlson in its Opposition involve bid protests. Hage v. United States, 35 Fed. Cl. 737 (1996), and Freeman v. United States, 50 Fed. Cl. 305 (2001), both involve cases where environmental groups sought to intervene in an action to make sure that the interests of the environmental lobby were addressed. None of the parties seeking intervention had a direct contractual relationship with the Government, and the parties claimed only incidental economic harm. Similarly, Hines v. Rapides Parish Sch. Bd., 479 F.2d 762 (5th Cir. 1973), involved a school desegregation case, which is completely removed from the facts of this protest. Finally, Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171 (2d Cir. 2001), involved a law firm that was trying to intervene in a case to preserve a charging lien against the final judgment. Simply stated, not one of these cases involves a protest; not one involves a claim for injunctive relief against contract performance that falls within the provisions of RCFC Appendix C.12; and not one involves a contractor in privity with the Government that would be stripped of valuable contract rights and interests if the protest were to succeed.

### C. Northrop Grumman Satisfies the Legal Standard For Intervention

Carlson cites to American Maritime Transportation, Inc. v. United States, 870 F.2d 1559, 1561 (Fed. Cir. 1989), to suggest that intervention requires "something more than merely an economic interest." American Maritime, however, involved a case where there was a potential and speculative impact on a company's overseas shipping business as a result of shipping subsidies, and the company seeking to intervene lacked privity with the Government. This decision is clearly inapposite as Northrop Grumman (1) has an actual interest in continuing to perform its existing contract, and (2) is, in fact, in privity with the Government.

Carlson also alleges that Northrop Grumman's economic interests would not be unduly harmed because its "ability to protect its interests through contract claims or the competitive procurement process, including protests, adequately protects Northrop's alleged interest." Opposition, at 6. In other words, Carlson alleges that Northrop Grumman has a sufficient interest in the subject matter of this action to file other lawsuits to redress the harm that could be inflicted by this protest, but it does not have an interest sufficient to avoid that harm in the first instance by intervening in this protest. This illogic must be rejected. Northrop Grumman's interest in its contract, standing alone, is sufficient under (1) RCFC 24(a), (2) RCFC,

Appendix C.12, and (3) this Court's clear line of precedent, to support intervention.

Moreover even if one were to fixate on the need "for something more than merely an economic interest," Northrop Grumman's interests clearly transcend the "economic." For instance, Northrop Grumman has an interest in protecting its proprietary information. If it is not a party to the protest, it will lack the visibility necessary to protect against the release of its sensitive information outside of the protective order. See RCFC, Appendix C.VI. Additionally, Northrop Grumman's reputation is at issue. Carlson has asserted in its Complaint and Amended Complaint that Northrop Grumman's allegedly poor performance prompted the modification that is under challenge. Without intervening, Northrop Grumman will be placed at a disadvantage in defending itself from such baseless and unfair attacks, or in having its interests harmed by factual misrepresentations in connection with issues that may not be central to the Government's contentions. Such misrepresentations, if not aggressively debunked by the entity most directly affected, could potentially affect Northrop Grumman's competitive interests in future procurements.

Northrop Grumman's intervention is made even more imperative in light of the fact that the goals of the United States and Northrop Grumman

are not identical. In particular, Northrop Grumman's paramount goals are maintaining its contract with the Government, protecting its proprietary information, preserving its reputation, and withstanding Carlson's protest. The United States' paramount goals lie in making sure that Carlson is accorded due process in its protest, receiving the best value for the taxpayers, and enforcing public policy. These interests, while overlapping in some respects, are neither identical nor wholly coincident. Northrop Grumman must be allowed to participate in this bid protest to ensure that its interests are fairly and fully defended by intervening now, before its interests are impaired and instead of being relegated to the meaningless pursuit of post hoc vindication in an unnecessarily duplicative proceeding.

Finally, Carlson argues that Northrop should be precluded from intervening because of inexcusable delay. Carlson's argument is ironic, especially considering that it delayed thirteen months from the time of the contested contract modification before filing a post-award bid protest in this Court. In light of its own delays in this matter, Carlson's claims of injury because Northrop "sat on its hands" ring especially hollow. Northrop Grumman has not caused Carlson any harm, it will not add to the length of the case, nor will it increase the burden on the Court. Northrop has not asked for an extension of time in conjunction with its motion to intervene,

nor has it requested an adjustment of the calendar. In fact, Carlson has just filed a proposed Amended Complaint that raises new issues and consequently compels an extension to the briefing schedule. Northrop Grumman is hardly "late to the game." Indeed, in light of Carlson's amended pleadings, the game has just begun. Consequently, Northrop Grumman's intervention will not delay the proceedings, create a whole new round of briefing, or unfairly prejudice Carlson.

## **Conclusion**

Based on the foregoing, Northrop Grumman respectfully requests that its motion to intervene be granted.

DATED: November 24, 2003

Respectfully submitted,

*/S/ John W. Chierichella*

John W. Chierichella
Anne B. Perry
Sheppard, Mullin, Richter & Hampton
1300 I Street, NW, 11th Floor East
Washington, DC 20005
202-218-0000
202-218-0020, fax

**CERTIFICATE OF FILING**

I hereby certify that on November 24, 2003, a copy of the foregoing REPLY TO PLAINTIFF'S OPPOSITION TO NORTHROP GRUMMAN'S MOTION TO INTERVENE was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/S/ John W. Chierichella*
John W. Chierichella