# In the United States Court of Federal Claims

| | | |
|---|---|---|
| **CW GOVERNMENT TRAVEL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 03-1274C** |
| **v.** | ) | **Judge Lawrence M. Baskir** |
| | ) | |
| **THE UNITED STATES of AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILED AMENDED COMPLAINT**

Plaintiff CW Government Travel, Inc. ("Carlson") submits this Opposition to the Motion to Strike filed on December 1, 2003, by Defendant The United States of America ("the Government"). The Motion urges the Court to strike portions of Carlson's Amended Complaint on the grounds that it contains matter outside the scope of Rule 8(a) and portions of Carlson's Memorandum in Support of Motion for Leave to File an Amended Complaint on the grounds that it contravenes Rule 1. The Motion should be denied in its entirety. The Amended Complaint includes new allegations, with appropriate facts and explanation to provide context to those allegations. There is no dispute over the relevancy of the factual allegations; only a complaint that Carlson has pled more facts than necessary. While the Government complains about Carlson's characterization of those facts, that is not a basis to burden the Court with a motion. Moreover, many of the characterizations are the Government's own, lifted from documents produced after the Court ordered informal discovery. The Motion for Leave supports the request to file an Amended Complaint, as well as an extension of the briefing schedule. The

Government's complaint is apparently simply that if it agreed to allow Carlson to amend, Carlson was precluded from advising the Court of what it was amending, how it changed the issues before the Court, and why a new briefing schedule for motions was necessary. There is no prejudice to the Government. There certainly is no basis to allow the Government to select what allegations stay or are struck from the pleadings as it prepares its Motions to Dismiss. Accordingly, Carlson respectfully requests that the Court deny the Government's Motion to Strike.

## FACTUAL BACKGROUND

At the Preliminary Status Conference in this matter, held on September 30, 2003, the parties were encouraged to engage informal discovery. After review of some 25 volumes of documents made available by the Government, Carlson ascertained that the modifications to the DTS DTR-6 Contract were far more extensive than previously known. Accordingly, Carlson sought to amend its Complaint to include the allegations newly uncovered during informal discovery.

Counsel for Carlson provided counsel for the Government with a copy of the proposed Amended Complaint on November 4, 2003; the Motion for Leave and Memorandum in Support of the Motion for Leave to Amend the Complaint were provided on November 7, 2003. After reviewing these documents and working out a new briefing schedule, the Government consented to the Motion for Leave while reserving its right to file a Motion to Strike against the Memorandum in Support of Motion for Leave. The Government did not express the same concern nor make the same reservation with regard to the Amended Complaint itself.

**Amended Complaint**

The Government's Motion is perplexing. It says it wants to strike allegations that it claims are unnecessary allegations of evidence or are argumentative. But it also has said that a 12(b)(6) Motion or Rule 56 Motion will be filed by mid-December. Carlson may have pled many specific facts; but it pled relevant facts. And while notice pleading is the standard, it does not preclude a party from pleading relevant facts. Faced with the likelihood of extensive motions practice (as evidenced by this Motion), the pleading of additional factual allegations is not a cause of concern.

During its opportunity to review the Amended Complaint, the Government did not advise Carlson that the Amended Complaint was "tediously long" or that the headings, designed to help guide the reader, were objectionable. The Government seeks to erase portions of Carlson's Complaint that it now views as "alleged evidence" and "arguments." This approach is in complete contrast to the Government's treatment of similar language in Carlson's original Complaint. In its Answer, filed October 20, 2003, the Government simply responded to similar sentences by claiming a "lack of knowledge or information sufficient to form a belief as to their truth" or that the sentence "constitute[s] conclusions of law to which no answer is required". The Government's sudden and mid-course change in policy in dealing with Carlson's Complaint is baffling.

Carlson is also puzzled by the Government's characterization of the facts of this case as "alleged evidence" or "argument." Most, if not all of the alleged "argumentative" facts reflect characterizations or factual conclusions contained in the Government's own documents. On page 6 of the Motion to Strike, the Government objects to the statement: "Essentially, under the restructured contract, the Government, not TRW, assumed the primary risk and cost of

developing, testing, deploying, and maintaining the CUI" as being legal conclusion. This statement is merely a summary of information in documents prepared by the Government. In its February 13, 1998 Business Clearance Memorandum for the original DTS DTR-6 Contract, the Government stated: "The proposed contract type is firm-fixed price and therefore, poses more monetary risk to the potential contractor than to the Government. With this type of contract the contractor will be accepting 100% of the cost risk." In an August 1, 2001 Pre-Negotiation Business Clearance Memorandum prepared at the beginning of the Contract Restructure negotiations, the Government noted that the original contract "was a firm fixed price contract for which TRW assumed the risk of performance." During the restructure, Lt. Colonel Larry Schafer, the Program Director of DTS, noted in an August 27, 2001 Memo for Record that there had been "an undue financial burden on TRW since they have carried the development costs on the program for three years" and that the new "approach would provide TRW with revenue earlier than they would receive revenue if the original contract was strictly enforced." In fact, Lt. Colonel Schafer noted in regard to pricing for the Restructured Contract that "the fee value [5%] was determined by an analysis of the PMO contracting team and an evaluation of a typical fee associated with a contract where the Government has all the risk of the contract." In September 2001, TRW requested that the "current transaction CLIN on the DTS Contract [be] restructured so that TRW's revenue stream is not contingent on the selling of transactions." The evaluation of TRW's Restructure Proposal led to the March 8, 2002 comment that "the type of CLINS being put in place … reduce the overall risk to the Contractor." Similar language appears in the April 1, 2002 Combined Post Negotiation and Pre-Negotiation Objective Memorandum that certain reductions should be made to TRW's proposed costs due to "the reduced risk TRW is

receiving by having the majority of the work up front instead of in the out years as originally planned."

On page 5 of the Motion to Strike, the Government objects to the facts pled in regard to the reimbursement of $43 million in costs incurred by TRW during the Restructuring and the benefit to TRW by deleting the requirements to provide a client/server-based system, and instead, provide only a web-based system. The documents produced by the Government contain extensive evidence, including DCAA Audit Reports, Business Clearance memoranda, Contracting Officer memoranda, evaluation reports, etc., establishing that under the Restructured Contract, TRW was reimbursed more than $43 million for developmental and testing costs incurred prior to December 19, 2000, that TRW was not entitled to receive under the original contract. At the time the Restructuring negotiations commenced in August 2001, the DTS PMO estimated that TRW had completed "0 %" of the work necessary for web-based implementation, meaning that the $43 million in reimbursed costs had been incurred working on the client/server-based CUI. At a March 8, 2001 Restructure Meeting, the DoD DTS team concluded "If web-based is where we want to go, it's not developed yet. It will take a lot of effort and additional funding." In a presentation by TRW dated March 12, 2002, it was represented that the "new requirements will drive to a new technological solution (such as security, GDS interface, web only system)." In another presentation, dated 2/21/01, TRW explained at length the benefits of changing to only a web-based system and the technical/cost difficulties experienced with the client/server mode. TRW noted that with a web-based system, each PC only requires about five MB of storage, whereas with the client/server system, each PC requires about 100 MB of storage for the DTS CUI. Thus, Carlson's factual pleading is well-supported by the Government's own documents. If the Government has a problem with the facts as pled by Carlson, it should

disprove those facts in the proceedings, not move to strike them as unnecessary. Of course, if the Government could have those allegations struck, it would avoid the obligation of having to respond to its own characterizations of its conduct; facts that are difficult for the Government to address.

The Government argues that the sole source extension through October 11, 2002 of Sato's 1992 Army travel contract for traditional travel services in eight of the eleven states covered by the DTS DTR-6 Contract, does not demonstrate that traditional travel services were not included in the original DTS DTR-6 Contract. The Justification and Approval ("J&A") executed by the Government to justify each of the numerous six to twelve-month sole source extensions of Sato's traditional travel service contract from October 1997 through October 11, 2002, found that there was no other contractor that could provide traditional travel services to the eight states included in the DTS DTR-6 Contract region. The J&As stated that the performance of travel services was to be transferred to TRW when the "planned fully automated DTS has been implemented" and the delay in implementing the fully automated DTS is "forcing the existing contract [with Sato for traditional travel services] into successive extensions." The J&A also found that "the reason for the delay of DTS is due to numerous test failures over the period of more than two years with the Common User Interface." The DTS DT-6 Contract was awarded to TRW in May 1998, and provided that TRW was the exclusive provider of the requirements of that Contract. The sole source extensions of the Sato Contract because it is the only contractor who could provide traditional travel services in those eight states during the first four years of the DTS DTR-6 Contract does demonstrate that traditional travel services were not included in the original DTS DTR-6 Contract. Of course, as noted in Carlson's amended

pleadings (at Paragraph 58), this crucial fact is also confirmed by the Contracting Officer's letters to TRW.

Given the Government's assertion, during the Preliminary Status Conference, that it would be filing a renewed Motion to Dismiss or a Motion for Summary Judgment, Carlson can only surmise that the Government seeks to eviscerate the Complaint in an attempt to facilitate its dispositive Motion. The Government seeks to eliminate from Carlson's Amended Complaint language that establishes Carlson as an interested party to challenge the changes made to the DTS DTR-6 Contract without competition, as well as language setting forth the fundamental nature and staggering breadth of the Restructured Contract changes. This language does not render the Complaint confusing, or create the risk that neither the judge nor the litigants will understand the issues that are being litigated. Indeed, the Amended Complaint sets forth the issues carefully and methodically such that the reader may comprehend the issues in the case from that single, stand-alone document. Moreover, we are confident that the facts pled are accurate.

The cases relied upon by the Government are not applicable to the Motion before this court. In McHenry v. Renne, 84 F.3d 1172 (9th Cir. 1996) the plaintiff named some twenty defendants, but failed to specify which violation of his rights related to which defendant(s); the district judge found that defendants could not respond to the complaint because it did not provide defendants notice of what legal claims were asserted against which defendants. Carlson's Amended Complaint names a single defendant and provides contact information for each of the contracts at issue; the language the Government finds "prolix" clarifies, rather than obfuscates, the issues. In Van Poppenheim v. Portland Boxing & Wrestling Com'n, 442 F.2d 1047 (9th Cir. 1971), the plaintiff failed to submit a pretrial statement, required by court order, containing a

clear statement of the parties to the alleged conspiracy and the role that each party played. The Government does not claim that Carlson's Complaint fails to specify facts relevant to each alleged claim, or that it is incapable of providing an answer to Carlson's Amended Complaint. While the Government may not like some of the material in Carlson's Amended Complaint, it is not prejudiced by the material it seeks to strike.

**Motion for Leave**

The Government seeks to strike portions of Carlson's Motion for Leave as it "contravenes Rule 1's purpose of securing the "just, speedy and inexpensive determination" of this case." After making this assertion, however, the Government goes on to repeat the material that it claims is duplicative, thus causing all parties to read the material again. The Government's very Motion seems contrary to its claimed championing of speed and avoidance of unnecessary filings. Counsel for the Government was provided with both the Amended Complaint and the Motion for Leave in advance of filing, and Carlson expressed its desire to work through any issues or concerns the Government may have with those documents at that time. Instead, the Government has now filed this unnecessary Motion to Strike.

The Motion for Leave is not prejudicial to the Government in any way. While the Motion provides more than a bare-bones legal basis for the filing of an Amended Complaint, the current status of the case and length of time since the Preliminary Status Conference merited additional information. Carlson's Motion for Leave provides the Court with information regarding the current status of the case, changes that have occurred since the Preliminary Status Conference some sixty days ago, and outlines the request for a change in the briefing schedule. The Motion for Leave also puts the new risk-shifting allegation into context, so the Court may better understand how the new issue fits into this case. Apparently, the Government would have

preferred that Carlson have made two additional and separate filings: one to update the Court or request a Status Conference, and one to request a change to the briefing schedule. Carlson does not view such an approach as conducive to "the just, speedy, and inexpensive determination of every action."

## CONCLUSION

For the foregoing reasons, Carlson respectfully requests that the Court deny the Government's Motion to Strike.

Respectfully submitted,

"s/Lars E. Anderson"
Lars E. Anderson
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 760-1623 (Protected)

*Of Counsel:*
Michael W. Robinson
Benjamin A. Winter
Sharon A. Jenks
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 760-1623 (Protected)

Dated: December 8, 2003

**CERTIFICATE OF FILING**

I hereby certify that on December 8, 2003, a copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

"s/Lars E. Anderson"
Lars E. Anderson