IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CW GOVERNMENT TRAVEL, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-1274 |
| | ) | (Judge Lawrence M Baskir) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO MOTION TO STRIKE

In its opposition to defendant's motion to strike, plaintiff CW Government Travel, Inc. ("Carlson") contends that its amended complaint contains only "new allegations, with appropriate facts and explanation to provide context to those allegations." Opposition at 1. Carlson argues that we took issue with the characterization of the facts but "many of the characterizations are . . . lifted from documents produced after the Court ordered informal discovery." With respect to the motion for leave, Carlson contends it was simply "advising the Court of what it was amending [and] how it changed the issues before the Court." Opposition at 3.

The amended complaint does not present background facts but,

instead, argues legal contentions and evidence. Further, the factual characterizations are not consistent with "documents produced after the Court ordered informal discovery." Instead, they distort the documents. Finally, the memorandum to support the motion for leave contains duplicitous and irrelevant material which argues the merits of the amended complaint. Accordingly, this material should be stricken.

## ARGUMENT

### I. THE AMENDED COMPLAINT PRESENTS IRRELEVANT LEGAL ARGUMENTS RATHER THAN A SHORT AND PLAIN STATEMENT OF THE CLAIM

The amended complaint does not only "plead relevant facts" as Carlson contends. For example, it asserts that "The Solicitation required offerors to provide a COTS soft-ware product that would function in a client/server mode necessitating integration/interface with thousands of local area networks ("LANs") . . . " Amended Complaint at 2. These are not "facts" but arguments concerning the alleged scope of the competition. While such arguments might be appropriate in a brief, they are not a factual basis for the amended complaint.

Likewise, the amended complaint does not present facts concerning the additional "risk-shifting" claim. For example, it contends that "all

revenue to be earned by the contractor was contingent on the successful development, testing, operational deployment, and actual utilization by Government travelers." Amended Complaint at 4-5. Instead of reciting the provisions of the modification which allegedly place the risk of non-performance on the Government, the amended complaint simply characterizes the "facts" as requiring the Government to "assume all risk and cost of developing, testing, deploying, and maintaining the CUI." These are legal conclusions rather than facts and are not appropriate in an amended complaint.

Carlson argues, nevertheless, that the Government has incurred a "sudden and mid-course change in policy in dealing with Carlson's Complaint," because the original complaint contained argumentative allegations as well. Opposition at 3. While it did, the Government chose not to challenge the original complaint in the interest of advancing the litigation. Compared to the amended complaint, however, the original complaint set forth its contentions in a relatively plain and straightforward manner. Also, it is 9 pages shorter than the amended complaint. By contrast, the amended complaint contains an extensive (11 pages) "Overview of the Case" filled with aggressive legal arguments. For

example, it asserts that: **The Government Solicits And Awards A Contract For A Client/Server-Based Travel Management Software Integration Project.** Opposition at 2. This heading is a classic legal argument. Further, the amended complaint presents background contentions in argumentative tones. For example, while the original complaint asserted that two alleged out of scope changes included "a radical change in technology and . . . adding traditional travel management services to the DTS DTR 6 contract . . . , " Complaint at 3, the amended complaint asserts that "[The delay in deployment] led to a series of extensive bilateral contract modifications in 2002 that totally restructured the DTS DTR-6 Contract.. . ." Amended Complaint at 4. Thus, the amended complaint transmutes relatively straightforward contentions into aggressive legal argument.

Carlson contends, nevertheless, that its arguments are justified by "the Government's own documents." Opposition at 3. This is a non-sequitor because, even if true, the amended complaint should not argue the evidence. Further, as was true for the motion for leave and the amended complaint, the opposition to the motion to strike is a transparently contrived springboard for arguing the merits of the amended complaint.

For example, with respect to the "shift of loss" allegation, Carlson quotes selective excerpts from a Feb. 13, 1998 Business Clearance Memorandum, the August 1, 2001 Pre-Negotiation Business Clearance Memorandum, an August 27, 2001 Memo for Record, a September 2001 letter, a March 8, 2002 memorandum, and an April 1, 2002 Combined Post Negotiation and Pre-Negotiation Objective Memorandum. These excerpts do not demonstrate a shift in the risk of financial loss. Moreover, even if Carlson had appended the records containing the excerpts to the opposition, they would not support the opposition. As with the amended complaint and motion for leave, Carlson uses the opposition to argue "evidence" rather than to oppose the motion to strike.

The same is true with respect to pages 5-6 of the opposition. These contend we "object" to alleged documented facts in the amended complaint relating to alternative payment methodologies in the contract modification. For example, the opposition states that, at the time of the modification, "the DTS PMO estimated that TRW had completed '0%' of the work," thereby suggesting TRW had not earned the money paid in the restructure. The source for this alleged "fact" is not stated or disclosed. The opposition claims that "at a March 8, 2001 Restructure Meeting, the

DoD DTS team concluded 'If web-based is where we want to go, it's not developed yet." However, the source of the quote is neither identified nor appended.

The opposition claims that "in another presentation, dated 2-21-01, TRW explained at length the benefits of changing to only a web-based system and the technical/cost difficulties experienced with the client/server mode." Once again, it does not identify the source or provide the record from which it is derived. Thus, the opposition ignores the issue of the amended complaint's prolixity and instead pontificates upon alleged "evidence." None of this "evidence" is appended to the opposition and the selective excerpts do not support the claims in the amended complaint.

Further, the opposition purports to demonstrate that the sole source extensions of Sato's contracts demonstrate that DTS did not encompass traditional travel services. However, Carlson merely quotes portions of a Justification and Approval Memorandum which fail to demonstrate that the DTS contract does not encompass traditional travel services. Rather, these selective quotations suggest only that traditional travel services had not yet been implemented under DTS. Finally, Carlson contends it was justified to plead "too many facts" in its amended complaint because the

Government had indicated it would file a motion to dismiss and additional facts would assist that process. Further, it argues that we seek to advantage our motion to dismiss or for summary judgment by striking the standing allegations from the amended complaint. As to the first contention, the requirement that the amended complaint contain a short and plain statement of the claim is independent of whether or not the response is likely to involve a motion to dismiss or for summary judgment. As to the second contention, contrary to Carlson's claim, the motion to strike does not encompass the standing allegations of the amended complaint (paragraphs 83 and 85).

In short, Carlson fails to demonstrate that the amended complaint satisfies the short and plain statement rule of RCFC 8(a). Accordingly, the motion to strike should be granted.[1]

## II. THE MEMORANDUM IN SUPPORT OF THE MOTION FOR LEAVE CONTAINS REDUNDANT AND IMMATERIAL MATTER

The opposition concedes that the "Motion [for Leave] provides more

---

[1]Carlson's contention that McHenry v. Renne, 84 F.3d 1172, 1176 (9th Cir. 1996) fails to support our motion to strike lacks merit. The ruling in the case was based on the prolixity of the complaint and not, as Carlson suggests, solely on the lack of apparent connection between the various claims and the various defendants.

than a bare-bones legal basis for the filing of an Amended Complaint." Opposition at 8. It contends, however, it "is not prejudicial" because it "provides the Court with information regarding the current status of the case [and] changes that have occurred since the Preliminary Status Conference some sixty days ago . . . ." Id. Carlson's contentions notwithstanding, the motion for leave is prejudicial because it argues the merits of the amended complaint rather than the legal basis for the additional claim. Indeed, as we pointed out in our motion to strike, it burdens the record by repeating at length boilerplate arguments concerning the alleged merits of the complaint and amended complaint that are lifted from prior pleadings knowing we do not oppose the addition of a "risk-shifting" claim to the complaint.

Finally, Carlson contends we violate the very rule we allegedly seek to advance by requiring the Court to reread statements in the motion for leave. According to Carlson, the motion to strike could have been avoided if we had explained the objection we had to the motion for leave before it was filed. We did explain our objection to the argumentative and irrelevant portions of the motion for leave. Yet Carlson proceeded to file the motion. Further, because Carlson regularly files repetitive and non-responsive

documents, we had no choice but to bring its objectionable practice to the Court's attention through a motion to strike. Favorable resolution of the motion may streamline this litigation in the long run. Accordingly, duplicitous and irrelevant portions of the amended complaint and motion for leave should be stricken.

## CONCLUSION

For the foregoing reasons and those contained in the motion to strike, the motion to strike should be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

s/David A. Levitt
DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-0309
Fax: (202) 514-7965

Attorneys for Defendant

Date: December 18, 2003

Certificate Of Filing

I hereby certify that on December 18, 2003, a copy of the foregoing Defendant's Reply To Plaintiff's Opposition To Motion To Strike was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/David A. Levitt