No. 03-1274C
(Judge Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CW GOVERNMENT TRAVEL, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S APPENDIX IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II AND REPLY TO OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, DC 20530
Telephone: (202) 307-0309
Facsimile: (202) 514-7965

Attorneys for Defendant

March 10, 2004

TABLE OF CONTENTS

# TABLE OF CONTENTS

## A. SUPPLEMENTARY DECLARATION OF PEGGY W. BUTLER

## ATTACHMENTS

| TAB | DATE | DESCRIPTION | FILED UNDER SEAL |
|---|---|---|---|
| 1 | 03/25/02 | Extract of from Northrop Grumman Contract Restructure Proposal, cover page and pages 87-89 and 96. | Yes. |
| 2 | 03/29/02 | Extract of Modification P00027, pages 1-2, and section C1. | No. |
| 3 | 03/13/98 | Extract of Northrop Grumman Best and Final Offer Proposal ("BAFO"), pages 1.3-44 through 1.3-45. | Yes. |
| 4 | 05/07/98 | Extract from DTS Contract – Clause H.6 | No. |
| 5 | 12/12/03 | Extract from modification P00047, pages 1-2 and 56. | Yes. Unredacted Version Separately Filed Under Seal. |
| 6 | 02/27/02 | Extract from modification P00025, pages 1-6. | Yes. Unredacted Version Separately Filed Under Seal. |
| 7 | 08/05/03 | Extract from modification P00025, pages 1-63 | Yes. Unredacted Version Separately Filed Under Seal. |
| 8 | 06/04/03 | Extract from Modification P00039, pages 1-2, 6-7, 23, 34, and 45 | Yes. Unredacted Version Separately Filed Under Seal. |

**B. DECLARATION OF RICHARD B. FABBRE**

**ATTACHMENTS**

| TAB | DATE | DESCRIPTION | FILED UNDER SEAL |
|---|---|---|---|
| 1 | 08/28/97 | Extract of Solicitation DAMT01-97-R-1003 (DTS Solicitation) – Performance Work Statement | No. |
| 2 | 03/13/98 | Extract from Northrop Grumman Proposal – p. 1.0-2 | Yes. |
| 3 | 03/13/98 | Extract from Northrop Grumman Proposal – pp. 1.1-1 and 1.1-2 | Yes. |
| 4 | 03/13/98 | Extract from Northrop Grumman Proposal – p. 1.1-8 | Yes. |
| 5 | 03/29/02 | Extract from Modification P00027 | No. |

A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CW GOVERNMENT TRAVEL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-1274 |
| | ) | (Judge Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

SUPPLEMENTAL DECLARATION OF PEGGY W. BUTLER

1. On April 13, 2001 I was assigned as the contracting officer for contract number DAMT01-98-D-1005 (hereinafter "DTS Contract") and I have remained the contracting officer for the DTS Contract without interruption. On February 12, 2004 Carlson filed its response to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. Exhibit 75 of Carlson's response is a document titled "Demonstrative Exhibit Comparing DTR-6 Contract Section B to Restructured Section B." This exhibit contains numerous factual errors and omissions.

2. Carlson alleges "TRW will be paid separately under the Testing CLINs to support the Government-led compliance testing." See Plaintiff's Exhibit 75 at page 5. Carlson is incorrect. Compliance testing under the restructured contract is Northrop Grumman's responsibility as part of its development effort. See Attachment 1, Northrop Grumman's contract restructure proposal at sections 6.6 and 6.7, which reflects the basis for this statement.

3. Carlson alleges that the restructured contract "reduced the number of required DTS deployment sites from 11,000 to 260." Carlson further states that this alleged change

"shift[s] the cost burden of fielding the CUI and training DoD personnel at these sites from the DTS PMO [Defense Travel System Program Management Office] to the individual services." See Plaintiff's Exhibit 75 at page 14. These allegations are unfounded. The DTS Contract as restructured continues to require that the DTS system be available to DoD users worldwide. See, Attachment 2, paragraph C1.2, which reflects this continuing requirement. Furthermore, the original DTS Contract never required Northrop Grumman to conduct on-site installation at all deployment sites. Rather, Northrop Grumman's Best and Final Offer ("BAFO") incorporated into the DTS Contract proposed to accomplish deployment of the CUI by affirmatively visiting approximately 250 sites and by sending compact disks ("CDs") to be downloaded to all remaining users. See Attachment 3, Section 1.3.4.1 of Northrop Grumman's BAFO, which reflects this requirement.

4. With regard to the point-of-sale discount, Carlson correctly states that the restructured contract deletes this requirement, replacing it with a transaction fee paid by the Government. Carlson also correctly states that this change "resulted from the airlines' cessation of commission payments to travel agents [and] this change was made to many Government travel service contracts." See Plaintiff's Exhibit 75 at page 16. Carlson fails to mention, however, that contract clause H.6 in the original DTS Contract provided for this eventuality by specifically authorizing an equitable adjustment. See Attachment 4, contract clause H.6, which reflects the basis for this statement. In addition, Plaintiff's Exhibit 75 significantly overstates the DTS transaction fee by using out of date pricing rather than the current price structure contained in contract modification P00047. For example, Carlson identifies unit prices in excess of $20.00 for the period of April 1, 2004 through September 29, 2006. See Plaintiff's Exhibit 75 at page

16. In fact, the current unit pricing for this period is no more than $5.10. See Attachment 5, CLIN X023AC, which reflects the basis for this statement.

5. Carlson alleges that the restructured contract increases the number of training courses above the 516 courses estimated in the original contract thereby increasing "the cost of Training by more than $50 million to approximately $61,800,000." See Plaintiff's Exhibit 75 at pages 3, 7 and 22. This is completely untrue. The number of estimated courses (516) remains unchanged throughout the total contract period. Although Carlson correctly states that the restructured contract adds CLINs 0020AA, 1020AA, 3020AA, and 4020AA, these CLINs do not include additional courses. Rather, they reflect an increase in the ordering period for the original 516 courses provided under CLIN 0001AV. See Attachment 6, an extract from contract modification P00025, which, at section 25(a)(iv), reflects the basis for this statement. In addition, the unit price for the classes has been reduced. See Attachment 7, an extract from modification P00042 dated August 6, 2003, which, at page 2, "specifies that 445 courses [of the original 516] remain under the contract", as they have yet to be ordered, and that the price for each course ordered after the date of the modification is reduced to $15,947.51.

6. Plaintiff's Exhibit 75 includes a table containing monthly prices for DTS operations and maintenance. See Plaintiff's Exhibit 75 at pages 11 - 12. The monthly prices contained in this table are significantly overstated since Carlson uses out of date unit prices rather than the more current pricing reflected in modification P00039. See Attachment 8, at page 2, which reflects the correct monthly prices. For example, Carlson states that the monthly price for April 1, 2004 through March 31, 2005 is $1,928,883.17. In fact, the monthly price for this period is broken into two segments with the period of April 1, 2004 through October 31, 2004 (CLIN

1006AB) priced at $1,224,551.02 per month and November 1, 2004 through March 31, 2005 (CLIN 2006AA) priced at $1,464,753.35 per month.

7. Finally, the calculations Carlson uses in Plaintiff's Exhibit 75 to estimate contract value include optional CLINs that have not been ordered. For example, the optional Testing Environment CLINs 1001AC, 2011AC, 3001AC, and 4011AC are unpriced and marked "reserved." Carlson estimated the value of these CLINs at $21,885,268.86 and included this value in its estimation of total contract value. See Plaintiff's Exhibit 75 at pages 10 and 20. But, the optional Testing Environment CLINs have not been ordered. Likewise, Carlson calculates costs for Optional Fielding (Phase III), Travel Agents, and Troop/Ground Movement. See Plaintiff's Exhibit 75 at pages 14 and 22. To date, none of these options have been ordered.

8. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 4 day of March 2004.

Peggy W. Butler

1

# DOCUMENT SEPARATELY FILED UNDER SEAL

2

OMB Approval 2700-0042

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | | 1. CONTRACT ID | PAGE 1 | 34 |
|---|---|---|---|---|---|
| 2. AMENDMENT/MODIFICATION P00027 | 3. EFFECTIVE DATE See Block 16c | 4. REQUISITION/PURCHASE N/A | | 5. PROJECT NO. DTS | |
| 6. ISSUED BY CODE W909MY<br>US Army CECOM Acquisition Center Washington<br>ATTN: AMSEL-AC-WB-B (Peggy Butler)<br>2461 Eisenhower Avenue, Room 1124<br>Alexandria, VA 22331-0700 | | 7. ADMINISTERED BY (If other CODE<br>See Block 6 | | | |

| 8. NAME AND ADDRESS OF CONTRACTOR | (✔) | |
|---|---|---|
| TRW, Inc.<br>12900 Federal Systems Park Drive<br>Fairfax, Va. 22033-4411 | | 9A. AMENDMENT OF |
| | | 9B. DATED (SEE ITEM 11) |
| | X | 10A. MODIFICATION OF DAMT01-98-D-1005 |
| CODE / FACILITY CODE | | 10B. DATED (SEE ITEM 13) 30 September 1998 |

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers is ☐ extended, ☐ is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:(a) By completing Items 8 and 15, and returning copy of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATA SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and data specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (✔) | |
|---|---|
| | A.THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B.THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b) |
| X | C.THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.234-1, 52-243-2 Alt I and 52.243-3 |
| | D.OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor ___ is not, _X_ is required to sign this document and return _1_ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

See Continuation Pages.

P2 Restructure Modification.

Except at provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed,

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER | |
|---|---|---|---|
| CHARLENE C. FINES<br>Contract Manager | | PEGGY W. BUTLER<br>Contracting Officer | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE | 16B. UNITED STATES OF AMERICA BY | 16C. DATE |
| Charlene C. Fines | 03/29/02 | [signature] | 3/29/02 |

NSN 7540-01-152-8070 30-105 STANDARD FORM 30 (REV. 10-83)
PREVIOUS EDITION UNUSABLE Computer Generated Prescribed by GSA
FAR (48 CFR) 53.24

SECTION SF 30 BLOCK 14 CONTINUATION PAGES

This modification represents the final restructure of the DTS Contract. The Contractor performance over the remaining 5 years of this Contract shall be in accordance with the Terms and Conditions of Modification P00025, dated February 27, 2002 and this instant Modification P00027.

The following Restructure Modification changes the following Sections:

Section B is deleted in its entirety and replaced with the following new Section B that provides pricing for various CLINs and reflects the addition of optional training and fielding. CLIN 0017, 1017, etc. for optional fielding / training is added to Section B.

Section C is deleted in its entirety and replaced with the attached revised Section C dated March 21, 2002.

Section G is deleted in its entirety and replaced with the attached revised Section G.

Section H is deleted in its entirety and replaced with the attached revised Section H.

Section J is updated and attached with CDRL's and DIDS.

The Government may order IDIQ CLINS in 12-month increments or less except for the testing facilities CLINS (0011aa 1011aa, 2011a, 3011aa, and 4011aa), which must be ordered in a 1-year increment and optional fielding, phase 3 CLINS (0017AA, 0017AB, and 0017AC).

## SECTION B Supplies or Services and Prices

| ITEM NO | INFORMATIONAL |
|---|---|
| 0001 | |
| | The description for CLIN 0001 from the original contract dated May 7, 1998 is no longer applicable and is hereby deleted. CLIN 0001 from the effective date of P00023 forward is merely used as a placeholder Parent CLIN for the few valid remaining SubCLINs under CLIN 0001 from the original contract. |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | AMOUNT |
|---|---|---|---|---|
| 0001AU | | 1.00 | Lot | $6,548,720.00 |
| | DIGITAL SIGNATURE<br>FFP - Provide digital signature integration in the CUI.<br>Years 1 through 5 of the Base Period (September 30, 1998 – September 29, 2003 in original contract) | | | |

| ITEM NO | SUPPLIES/SERVICES | ESIMATED QUANTITY | UNIT | UNIT PRICE |
|---|---|---|---|---|
| 0001AV | | 516.00 | each | $19,961.24 |
| | TRAINING<br>FFP - Provide four consecutive-day training to DoD travelers and CTOs for the CUI, using the Train-the-Trainer concept.<br>Additional 4-day Regional (Off-Site) Class @ $20,000 each<br>Additional 4-day On Site Class @ $18,000 each<br>Funds: O&M<br>Contract type: Requirements<br>Period of Performance runs from May 7, 1998 through February 28, 2002<br><br>Off-site is defined as a non-contractor owned or operated facility.<br>On-site is defined as a contractor owned or operated facility. | | | |

## SECTION C – STATEMENT OF WORK

### C1 Overview/General

C1.1 The Department of Defense (DoD) requires a travel service, based on maximizing the use of commercial-off-the-shelf (COTS) products, which provides a seamless, paperless temporary duty (TDY) travel system. This system is the Defense Travel System (DTS).

C1.2 The DTS shall meet the needs of DoD travelers, commanders, and process owners by reducing costs, supporting mission requirements, and providing superior customer service. The DTS shall be available to DoD users worldwide and to official travel management service contractors.

C1.3 The DTS shall provide system flexibility and technical refreshments based on advances in proven information technologies to improve the user's interaction with the system and simplify system administration.

C1.4 The DTS shall provide system upgrades to ensure that it meets current regulatory requirements, along with any changes to regulatory requirements as they occur.

C1.5 The DTS shall promote the Government and the Contractor working together in a cooperative relationship ensuring quality travel services in support of DoD mission requirements.

C1.6 The Contractor shall provide personnel, equipment, tools, materials, supervision, and other items and services, except as specified in Attachment 7 (Government Furnished Information (GFI) and Government Furnished Equipment (GFE)), necessary to satisfy the requirements of the DTS including system functions as defined in the DTS Requirements Specification Document (Attachment 2) and perform all tasks identified in this Statement of Work (SOW).

C1.7 The Contractor shall provide official travel management services within designated locations within the Defense Travel Region 6 (the states of North Dakota, South Dakota, Nebraska, Minnesota, Iowa, Missouri, Wisconsin, Illinois, Michigan, Kentucky, and Indiana, and other designated areas) in accordance with the Functional Requirements Document (Attachment 1).

C1.8 The Government may negotiate with the Contractor the extension of any or all services required by this contract to other federal agencies pursuant to the provisions of the Economy Act (31USC1535) and all applicable regulations and directives.

### C2 DTS Operations and Maintenance

#### C2.1 <u>System</u>

C2.1.1 Where appropriate, the Contractor shall describe and analyze alternate implementations to support tradeoffs by the Government for optimization of the Operations approach. The Contractor shall provide an Operations Plan that details how it shall perform operations activities