| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | AMOUNT |
|---|---|---|---|---|
| 2001BH | OPTIONAL | 1.00 | Million | $500,000.00 |
| | FFP - Annual Maintenance of Travel Manager software. Based on number of travel vouchers. Proceed using DTS Express the previous year. (This is a Year Six Maintenance fee for One Million Vouchers).<br>Period: April 1, 2004 – March 31, 2005 | | | |

| ITEM NO | INFORMATIONAL | | | |
|---|---|---|---|---|
| 2005 | | | | |
| | BASE PERIOD YEAR 6<br>November 1, 2004 through October 31, 2005 | | | |

| ITEM NO | SUPPLIES/SERVICES | ESIMATED QUANTITY | UNIT | UNIT PRICE |
|---|---|---|---|---|
| 2006AA | | 5 | Month | $1,464,753.35 |
| | **DTS OPERATIONS AND MAINTENANCE**<br>FFP - Population/travel volume<br>Funds: O&M<br>Contract Type: Requirements<br>See section C paragraph C2<br>Period: November 1, 2004 – March 31, 2005 | | | |
| ITEM NO | SUPPLIES/SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE |
| 2006AB | | 7 | Month | $1,588,577.03 |
| | **DTS OPERATIONS AND MAINTENANCE**<br>FFP - Population/travel volume<br>Funds: O&M<br>Contract Type: Requirements<br>See section C paragraph C2<br>Period: April 1, 2005 – October 31, 2005 | | | |

| ITEM NO | SUPPLIES/SERVICES | | | UNIT PRICE |
|---|---|---|---|---|
| 2006AC | | | | NSP |
| | DATA (CDRL)<br>The contractor shall provide the following CDRLs: AA01 - AA30 Delivery of the CDRLs shall be in accordance with the instructions on the DD1423s provided in Section J. | | | |

| ITEM NO | INFORMATIONAL |
|---|---|
| 2007 | |
| | **GDS CONNECTIVITY (BIG PIPE)**<br>FFP<br>Funds: O&M<br>Contract Type: IDIQ |

| ITEM NO | SUPPLIES/SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE |
|---|---|---|---|---|
| 2007AA | | 5 | Month | $3,140.04 |
| | **GDS CONNECTIVITY (BIG PIPE)**<br>FFP - Connectivity to SABRE<br>Funds: O&M<br>Contract Type: IDIQ | | | |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | AMOUNT |
|---|---|---|---|---|
| 3001BH | OPTIONAL | 1.00 | Million | $500,000.00 |
| | FFP - Annual Maintenance of Travel Manager software. Based on number of travel vouchers. Proceed using DTS Express the previous year. (This is a Year Seven Maintenance fee for One Million Vouchers).<br>Period: April 1, 2005 – March 31, 2006 | | | |

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | AMOUNT |
|---|---|---|---|---|
| 3001BJ | OPTIONAL | 1.00 | Million | $249,315.00 |
| | FFP - Annual Maintenance of Travel Manager software. Based on number of travel vouchers. Proceed using DTS Express the previous year. (This is a Year Seven Maintenance fee for One Million Vouchers).<br>Period: April 1, 2006 – September 29, 2006 | | | |

| ITEM NO | INFORMATIONAL | | | |
|---|---|---|---|---|
| 3005 | | | | |
| | BASE PERIOD YEAR 7<br>November 1, 2005 through September 29, 2006 | | | |

| ITEM NO | SUPPLIES/SERVICES | ESIMATED QUANTITY | UNIT | UNIT PRICE |
|---|---|---|---|---|
| 3006AA | | 5 | Month | $1,452,324.75 |
| | **DTS OPERATIONS AND MAINTENANCE**<br>FFP -Population/travel volume<br>Funds: O&M<br>Contract Type: Requirements<br>See section C paragraph C2<br>Period: November 1, 2005 – March 31, 2006 | | | |

| ITEM NO | SUPPLIES/SERVICES | ESTIMATED QUANTITY | UNIT | UNIT PRICE |
|---|---|---|---|---|
| 3006AB | | 6 | Month | $1,579,613.01 |
| | **DTS OPERATIONS AND MAINTENANCE**<br>FFP -Population/travel volume<br>Funds: O&M<br>Contract Type: Requirements<br>See section C paragraph C2<br>Period: April 1, 2006 – September 29, 2006 | | | |

| ITEM NO | SUPPLIES/SERVICES | | | UNIT PRICE |
|---|---|---|---|---|
| 3006AC | | | | NSP |
| | DATA (CDRL)<br>The contractor shall provide the following CDRLs: AA01 - AA30 Delivery of the CDRLs shall be in accordance with the instructions on the DD1423s provided in Section J. | | | |

B

In The United States Court of Federal Claims

| | |
|---|---|
| CW GOVERNMENT TRAVEL, INC.<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | Case No. 03-1274<br>Judge George W. Miller |

**DECLARATION OF RICHARD B. FABBRE**

I, Richard B. Fabbre, declare, under penalty of perjury, as follows:

1. I, Richard B. Fabbre, am employed by Northrop Grumman Mission Systems ("NGMS") and am the Program Manager for the Defense Travel System ("DTS") Contract and was involved in preparing BDM's proposal, where I was the Program Manager designee. I am over 18 years of age. I am fully competent to make this declaration and I have personal knowledge of the facts stated herein.

2. It was my understanding when we were preparing the proposal for the Defense Travel System, Defense Travel Region 6 contract that the Government was not mandating the use of Commercial-Off-The-Shelf ("COTS") products. My understanding was based on the language of Request for Proposals No. DAMT01-97-R-1003 (hereinafter the "RFP" or the "Solicitation"), in the "Defense Travel System (DTS) "Performance Work Statement" section of the RFP, which provided:

> C-1.2. Provides capabilities that satisfy the requirements defined in the DTS Functional Requirements Document, and the Technical Requirements Document. An integrated approach shall be used that maximizes the use of commercial off-the-shelf (COTS) products to provide an open solution.

RFP. ¶ C-1.2. A true and accurate copy of the excerpt of the RFP that contains this language is found in Attachment 1 hereto. I did not then read

the language relating to the maximal use of COTS products as a requirement to base our offer solely and exclusively on COTS products, and I do not read it that way today.

3. In the proposal my Company prepared in response to the Solicitation, we proposed a solution that was both "COTS based" and "Scalable." Our proposal stated that:

> COTS based – The BDM solution is based on commercial-off-the-shelf software.
>
> * * *
>
> Scalable – The BDM solution is highly scalable.

REDACTED

Attached hereto as Attachment 2 is a true and accurate copy of the portion of the Northrop Grumman proposal that contains this language.

4. Another example of Northrop Grumman's initial offer to use COTS products, to the maximum extent practicable is found in the following excerpt from the proposal:

> Based on commercial-off-the-shelf (COTS) software, and leveraging the Defense Information Infrastructure (DII), the architecture offers the DTS user a choice of means for accessing the CUI, ranging from a Web browser or client server access, to a telephone call to someone who can access the CUI on the user's behalf.

A true and accurate copy of the page from the proposal that contains this language is attached hereto as Attachment 3.

5. As reflected in our proposal, we did not propose to use the distributed client/server architecture alleged by Carlson in its Cross-Motion for Summary Judgment and Response to Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment. Rather, the proposal provided

> Regional Data centers configured to provide highly reliable, responsive data services while ensuring data integrity with minimal administrative burden
>
> * * *
>
> In designing the physical architecture, the BDM Team considered both centralized and decentralized (databases and application software at all user sites) approaches. We chose the centralized approach because it dramatically reduces configuration management and administration burdens for both the BDM Team and DoD.

A true and accurate copy of the page from our proposal that contains this language is found in Attachment 3 at pages 1.1-1 and 1.1-2. As the foregoing excerpt states, we opted not to adopt an architecture in which databases and application software would be installed at all user sites. Any suggestion to the contrary simply ignores the express statements in our proposal.

6. As stated in Karen Williams' December 11, 2003 Declaration in this matter, we proposed a solution that was "designed to operate across three automated environments so as to be accessible to all DoD personnel today: Web, Client/Server and Character based." Williams Decl., 10 and Att. 7 thereto. The use of the Regional Data Centers in all three modes of access – as opposed to the distributed client/server architecture assumed by Carlson in its Cross Motion and Response -- was depicted, for example, in Figure 1.1.0.2.3-1 as reprinted below.

REDACTED

A true and accurate copy of the page in our proposal that contains this diagram found in Attachment 4.

7. This is fundamentally the same client/server architecture as the one originally proposed, but has been enhanced to improve system security in accordance with the latest industry guidance and technology advances. The modifications at issue in this case, nonetheless, had no impact on Northrop Grumman's use of a centralized approach and Regional Data Centers. This consistency is reflected in the Contract, which requires, for example:

> C2.2.1 The Contractor shall provide, operate, and maintain, a Regional Data Center to support the DTS. The RDC shall include sufficient data processing and communications equipment and software in a production environment to comply with the DTS Requirements Specification Document (Attachment 2) for all DTS fielded sites. DTS shall be available 24 hours a day, 7 days a week, except for Government-approved downtime. System availability shall be greater than 95% measured monthly for the RDC. The Contractor shall notify the Contracting Officer's Representative (COR) via e-mail and obtain approval from the Government for all system

> downtime. The RDC shall be located in the Washington, DC metropolitan area.
>
> * * *
>
> When requested, the Contractor, after receiving approval of its engineering change proposal, shall provide a second RDC that shall be capable of furnishing a redundant backup capability for the production environment. System availability, once the second RDC is in place, shall be greater than 98.5% measured monthly for both RDCs. The RDCs shall be located in separate Contractor facilities to reduce susceptibility to acts of God or common disaster.

A true and accurate copy of the page in our Contract that contains this language is attached hereto as Attachment 5.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 8 ~~day of~~ March, 2004.

Rich Fabbre

1

SECTION C - PERFORMANCE WORK STATEMENT

C-1. DEFENSE TRAVEL SYSTEM (DTS) STATEMENT OF OBJECTIVES. The Government's objective is to acquire travel services supported by a seamless, paperless process which:

C-1.1. Meets the needs of travelers, commanders, and process owners; reduces costs; supports mission requirements; and provides superior customer service.

C-1.2. Provides capabilities that satisfy the requirements defined in the DTS Functional Requirements Document, Technical Requirements Document and the Leisure Travel Requirements Document. An integrated approach shall be used that maximizes the use of commercial off-the-shelf (COTS) products to provide an open solution.

C-1.3. Obtains a single official travel service contractor to provide official travel management services within Defense Travel Region 6 (the states of North Dakota, South Dakota, Nebraska, Minnesota, Iowa, Missouri, Wisconsin, Illinois, Michigan, Kentucky, and Indiana, and other designated areas) and to deploy a common user interface (CUI) to official travel management service contractors and DoD users worldwide, as the DTS is expanded beyond DTR 6. The DTS PMO will provide a list of winning, follow-on, DTS travel management service contractors to the CUI vendor to facilitate the required new interfaces and to the appropriate government offices to identify new access permission requirements.

C-1.4. Obtains a single leisure travel service contractor to provide leisure travel management services within DTR 6.

C-1.5. Provides system flexibility to permit continuous technical refreshments to DTS based on advances in proven information technologies.

C-1.6. Fully sustains the CUI throughout the entire system life cycle satisfying operational, performance, system availability, and changing functional requirements.

C-1.7. Promotes the Government and the Contractor working together in a cooperative relationship ensuring quality travel services in support of DoD mission requirements.

C-1.8. The Government may negotiate with the Contractor the extension of any or all services required by this contract to other federal agencies pursuant to the provisions of the Economy Act (31USC1535) and all applicable regulations and directives.

C-2. GENERAL.

C-2.1. The Contractor shall provide personnel, equipment, tools, materials, supervision, and other items and services (except as specified in Attachment 10 (GFI)) necessary to perform the following for authorized DoD travelers:

2

# DOCUMENT SEPARATELY FILED UNDER SEAL

3

# DOCUMENT SEPARATELY FILED UNDER SEAL

4

# DOCUMENT SEPARATELY FILED UNDER SEAL

5

in accordance with (IAW) CDRL AA05. Operation of the system shall include, but not be limited to, the following:

a. Availability, Regional Data Center (RDC) architecture, response time, implementation of redundancy, and other variables as appropriate;
b. Approaches to system monitoring of hardware, software, and communications to detect, anticipate, and prevent outages, and verify components and subsystems are operating within acceptable parameters;
c. Coordination of maintenance (both scheduled and unscheduled) and trouble-shooting activities for all systems (Government, Contractor, and commercial);
d. Transition to new versions of DTS software, including implications for RDC architecture, requirements for delivery of revised training materials, and impact on users;
e. Communication to users of system status and possible workarounds for contingencies;
f. Continuity of Operations Plan (COOP) in the event of disaster or emergency;
g. Scale-up of RDC capacity to serve a growing user community.

**C2.2 Facilities/Environments**

C2.2.1 The Contractor shall provide, operate, and maintain, a Regional Data Center to support the DTS. The RDC shall include sufficient data processing and communications equipment and software in a production environment to comply with the DTS Requirements Specification Document (Attachment 2) for all DTS fielded sites. DTS shall be available 24 hours a day, 7 days a week, except for Government-approved downtime. System availability shall be greater than 95% measured monthly for the RDC. The Contractor shall notify the Contracting Officer's Representative (COR) via e-mail and obtain approval from the Government for all system downtime. The RDC shall be located in the Washington, DC metropolitan area.

C2.2.2 Second RDC (Optional)

When requested, the Contractor, after receiving approval of its engineering change proposal, shall provide a second RDC that shall be capable of furnishing a redundant backup capability for the production environment. System availability, once the second RDC is in place, shall be greater than 98.5% measured monthly for both RDCs. The RDCs shall be located in separate Contractor facilities to reduce susceptibility to acts of God or common disaster.

C2.2.3 Enterprise Web Training Environment (Optional)

The Contractor shall provide and maintain an enterprise web training environment. This "live" web-training system shall mirror the functionality of the DTS web production system. This system shall be capable of supporting training classes conducted by the Contractor as well as follow-on training classes conducted by DTS train-the-trainer (TTT) trainers worldwide, 24 hours a day, 7 days a week, except for Government-approved downtime. The Contractor shall assist each fielded site with set-up of a site-specific training database, resident at the primary RDC, which site personnel can use for the follow-on training effort. For this, the Contractor shall provide a manual that details the use of the system as well as an instructor's manual for use by TTT trainers.

## CERTIFICATE OF FILING

I hereby certify that on March 10, 2004, a true copy of the foregoing **Defendant's Appendix in Support of Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment on Counts I and II and Reply to Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment,** was filed by hand to the following:

David A. Levitt
U.S. Department of Justice
Civil Division - Commercial Lititgation Branch
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, DC 20530

Lars E. Anderson
Venable, Baetjer & Howard
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182

*/S/John W. Chierichella*
John W. Chierichella

Certificate of Filing

I certify that on March 16, 2004, a copy of the foregoing Defendant's Appendix In Support Of Defendant's Opposition To Plaintiff's Cross-Motion For Summary Judgment On Counts I and II and Reply To Opposition To Defendant's Motion To Dismiss or, In the Alternative, For Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ David A. Levitt