# In The United States Court of Federal Claims

CW GOVERNMENT TRAVEL, INC.

Plaintiff

v.

THE UNITED STATES OF AMERICA

Defendant.

Case No. 03-1274
Judge George W. Miller

**NORTHROP GRUMMAN'S REPLY TO PLAINTIFF'S RESPONSE TO NORTHROP GRUMMAN'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF NORTHROP GRUMMAN'S MOTION TO INTERVENE**

Plaintiff CW Government Travel's ("Carlson's") response demonstrates with absolute clarity why Northrop Grumman Space & Mission Systems Corporation ("Northrop Grumman") should be allowed to intervene in this action – as a non-party, Northrop Grumman has been subject to, and continues to be subject to, a risk of unauthorized disclosures of its proprietary information. Nothing in Carlson's opposition suggests otherwise. To the contrary, Carlson's positions – and its disregard for the record in support of these positions – only buttress the need for, and propriety of, intervention.

**First,** Carlson's statement that the pages identified in Exhibits 3, 8, 11 and 13 were "previously publicly filed in this matter [as part of] the

Appendix to the Joint Preliminary Status Report (dated September 8, 2003)"[1] is flatly contradicted by the record. One need only refer to the Index to that very Appendix, attached as Attachment A hereto, which specifically states that "pages 67-285" were filed under the Protective Order. The 218 pages in question clearly were not publicly filed in this matter until Carlson chose unilaterally to do so, without any advance consultation with Northrop Grumman.

**Second**, Carlson's fallback argument – i.e. that Carlson was free to ignore the Protective Order legend because the United States allegedly agreed to the release of the documents – fails for two reasons:

1. Assuming arguendo that such an agreement was struck – and it was not – this argument only compels the admission of Northrop Grumman as a party. Clearly, if the United States and one of Northrop Grumman's continuing competitors can agree to the release of Northrop Grumman's proprietary information without any input from or consultation with Northrop Grumman, then the interests of the United States and Northrop Grumman are hardly "perfectly aligned." To the contrary, if Carlson's factual allegation on this point is true, Northrop Grumman must

---

1 See Exhibit 2 to Northrop Grumman's Supplemental Memorandum.

be allowed to intervene because its interest in its proprietary information manifestly is not being adequately protected by the existing parties.

2. Carlson misstates the record in asserting that the United States "agreed to the release of the subject documents." While by letter dated February 11, 2004, attached hereto as Attachment B, Carlson did provide the Government with a list of documents that Carlson intended the following day to include in its public filing, it did not (a) seek the Government's approval of the release of these documents, (b) provide copies of the documents it intended to so release for the Government's review, or (c) obtain the Government's approval for the public filing of proprietary materials. Rather, Carlson simply presented the Government with a fait accompli with respect to certain of the protected documents, advising the Government that it could object to the release of that information after the fact. This simply is not the procedure established by this Court's Protective Order and is in direct contrast to Carlson's specific request, in this same letter, that the Government approve the release of proposed redacted versions of other documents.

Carlson clearly understands the procedures. With respect to certain documents including Northrop's proprietary information, however, it chose to ignore those procedures.[2]

Northrop Grumman should be allowed to intervene in this matter, both for all the reasons previously articulated in support of its Motion, but also, more immediately, to protect its proprietary information and to police Carlson – an ongoing competitor in other acquisitions – from unilateral disclosures of proprietary information, to Northrop Grumman's competitive disadvantage.

## Conclusion

Northrop Grumman respectfully requests that this Court grant its Motion to Intervene.

---

2 It is ironic that Carlson should criticize Northrop Grumman's intervention request, and in particular the facts addressed in Northrop Grumman's supplemental memorandum, as a "procedural side-show[ ] that will unduly delay the litigation of a matter in which time is critical." Leaving aside the fact that Carlson long ago abandoned any request for time critical provisional relief and filed its lawsuit years after many of the challenged events occurred, Northrop Grumman respectively submits that compliance with this Court's Protective Order is more than a "procedural side-show," and that its reasoning and protections were implemented for good and valid purposes.

DATED: March 19, 2004

Respectfully submitted,

*/S/ John W. Chierichella*

John W. Chierichella
Anne B. Perry
Sheppard, Mullin, Richter & Hampton
1300 I Street, NW, 11th Floor East
Washington, DC 20005
202-218-0000
202-218-0020, fax

**CERTIFICATE OF FILING**

I hereby certify that on March 19, 2004, a copy of the foregoing NORTHROP GRUMMAN'S REPLY TO PLAINTIFF'S RESPONSE TO NORTHROP GRUMMAN'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF NORTHROP GRUMMAN'S MOTION TO INTERVENE was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access these filings through the Court's system.

*/S/ John W. Chierichella*
John W. Chierichella