IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CW GOVERNMENT TRAVEL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-1274 |
| | ) | (Judge George W. Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S AND INTERVENOR'S JOINT RESPONSE
TO PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM
CONCERNING WHETHER UNIT PRICES AND OTHER INFORMATION
IN THE DTS-DTR 6 CONTRACT IS CONFIDENTIAL

Pursuant to this Court's order dated April 1, 2004, we respectfully submit this response to CW Government Travel Inc.'s ("Carlson's") reply to our memorandum concerning whether cost, price and other confidential information in the DTS DTR 6 contract should be withheld from public disclosure. As we demonstrated in our original memorandum, the cost, price and other confidential information must not be publicly disclosed because, under National Parks and Conservation Association v. Morton, 498 F.2d 765, 771 (D.C.Cir. 1974), the disclosure of this information is "likely to cause competitive harm [to Northrop Grumman]." Nothing in Carlson's reply rebuts this conclusion.

ARGUMENT

I. Cost And Price Information In The DTS DTR 6 Contract Is Confidential As A Matter Of Law

As a preliminary matter, it is worth noting that the Government and Northrop Grumman have already publicly released the bulk of the contract documents relevant to this case. What is

now at issue, however, are a small number of redactions of confidential information relating to cost, pricing, and technical information proprietary to Northrop Grumman**.**

Although Carlson contends that "unit pricing [by which it means the CLINs at issue in the case] on Government contracts is not subject to the FOIA exception for trade secrets," Reply at 5, the relevant precedent holds precisely the contrary. As we point out in our memorandum, the United States Court of Appeals for the District of Columbia Circuit held in McDonnell Douglas Corporation v. National Aeronautics and Space Administration, 180 F.3d 303 (D.C.Cir.1999), that line item pricing information in Government contracts is confidential and not subject to disclosure pursuant to the Freedom of Information Act ("FOIA").

Carlson contends McDonnell Douglas is irrelevant because it does not seek line item pricing information through an FOIA request but, rather, seeks to have the information made public in the course of this court proceeding. According to Carlson, in these circumstances the relevant inquiry is whether the information is protected under the Uniform Trade Secrets Act and, if so, whether the public's right of access trumps the confidentiality of the information, rather than whether the information is confidential. Carlson cites McDonnell Douglas Corp. v. NASA, 895 F. Supp 319, 325-26 (D.D.C. 1995), vacated by, 88 F3d 1278 (D.C.Cir.1996) (Table) and Mallinckrodt Inc. v. West, 140 F.Supp 2d 1, 11 (D.D.C. 2000)**,** as support for the proposition that line item pricing information must be disclosed. In addition, Carlson contends that the information must be made public because FAR §§ 15.503(b)(1)(iv) and 15.506(d) require that "unit prices" must be disclosed to unsuccessful offerors for Government contracts.

Carlson misconstrues both McDonnell Douglas and Mallinckrodt. McDonnell Douglas holds precisely the opposite of what Carlson contends. In that case, a FOIA requester attempted

to obtain release of contract line item pricing information which the Court had enjoined the release of in an earlier proceeding. The Court held that "when a permanent injunction against release of specific information already exists, the agency simply lacks the discretion to decide whether the information should be released." 895 F. Supp. at 322. Contrary to Carlson, the Court upheld its prior injunction against the release of contract line item pricing information. The Court did allow the release of information concerning "termination payments" and payments for "secondary payloads" (i.e., small satellites launched on the same vehicle as a larger satellite). However, it did so because plaintiff was unable to "offer any explanation as to how a competitor might use or deduce in any way information that would result in substantial competitive harm . . . ." 895 F. Supp. at 325.

The pricing information at issue in the immediate case, by contrast, such as CLINS 10 and 17 among others, break down the unit pricing into costs and fixed fees and, therefore, advise Northrop Grumman's competitors of the cost and price structure of Northrop Grumman's products and services. See, e.g., Exhibit C to Carlson's Reply at pp. 6-8. The disclosure of such data is "likely to cause competitive harm [to Northrop Grumman]". National Parks, 498 F.2d at 77l; see, e.g., Gulf & Western Industries, Inc. v. United States, 615 F.2d 527, 533 (D.C.Cir. 1979) (information that would allow a competitor to "calculate Norris' future bids and its pricing structure" cannot be released). Further, to the extent the district court's decision in McDonnell Douglas, 895 F.Supp. 319, allows the release of line item pricing information under the FOIA, it runs counter to the D.C. Circuit's holding in McDonnell Douglas, 180 F.3d 303, and, therefore, is

not persuasive authority.[1]

Likewise, Mallinckrodt addressed whether information concerning rebates for medical products was required to be disclosed or, instead, constituted confidential price information. The district court concluded that the information could not be disclosed because "it is of a kind that would customarily not be released to the public by the submitter." Id. at 4.[2] Alternatively, the Court observed that "even under the more stringent National Parks test, the information would be protected since its disclosure would cause competitive harm to plaintiff." Id. at 6, n. 4. The Court held that the information could not be released, not that it could be. Accordingly, the case does not support Carlson's contention that all pricing information in the DTS DTR 6 contract should be disclosed.

With respect to Carlson's reliance upon FAR §§ 15.503(b)(1)(iv) and 15.506(d), Carlson fails to cite FAR § 15.506(e) which prohibits the release of "any information . . . . exempt from release under the Freedom of Information Act." As this Court noted in Mallinckrodt, "48 C.F.R. §§ 15.503(b)(1)(iv)-(v) and 15.506(d)(2) . . . . do no more than require the disclosure of information unless its disclosure would reveal information that is exempt from release under the

[1]Carlson relies heavily upon Martin Marietta v. Dalton, 974 F.Supp. 37, 38-40 (D.D.C. 1997) for the proposition that the cost and price information in the DTS DTR 6 contract is subject to disclosure. The district court found, in that case, that Martin Marietta had not demonstrated that the Government's decision to release information to an FOIA requestor was arbitrary and capricious. With respect to price and cost data, the ruling by the D.C. Circuit in McDonnell Douglas demonstrates that the decision of a federal agency to release line item pricing information is arbitrary and capricious. Thus, Martin Marietta is inconsistent with the D.C. Circuit's decision in McDonnell Douglas and does not advance Carlson's cause.

[2]The Court noted that this was the test established by Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871 (D.C.Cir. 1992) (en banc), cert. denied, 507 U.S. 984 (1993), for the application of Exemption 4 of the Freedom of Information Act ("FOIA") to information voluntarily submitted to a Government agency.

FOIA." 140 F.Supp.2d at 4. As we have demonstrated, the FOIA does not permit the release of all pricing information. Accordingly, as in Mallinckrodt, Carlson's reliance on these regulations is misplaced.

Carlson contends, nevertheless, that the cases we cite interpreting FOIA exemption 4's protection of confidential commercial and financial information are not dispositive because "the public has a longstanding right of access to judicial records." Reply at 3. However, as Carlson acknowledges, "the presumption of a public right of access is rebuttable upon [the provider of the information] showing a compelling need to keep certain information confidential." In re Adope Systems, Inc. Securities Litigation, 141 F.R.D. 155, 157 (N.D.Cal. 1992); see, e.g., Pratt & Whitney Canada, Inc. v. United States, 14 Cl. Ct. 268, 272 (1988). Although Carlson contends the presumption of public access is not outweighed by the danger of competitive harm with respect to line item pricing information, this is simply contrary to relevant case law.

As this Court observed in Crane Helicopter Services, Inc. v. United States, 56 Fed. Cl. 313 (2003), confidential information whose disclosure "could significantly damage Bell's competitive advantage . . . and could allow the production of unauthorized replacement parts, which would . . . damage Bell's commercial prospects . . . [presents] a compelling reason to prevent the public from accessing the material . . . ." Id. at 327. Under Crane Helicopter, therefore, the provider of confidential information has a compelling interest to keep that information from the public which outweighs the public's right of access. In this case, the cost and price information is confidential as a matter of law under the D.C. Circuit's ruling in McDonnell Douglas, and there is a compelling need to retain the information under seal in order to eliminate the risk of competitive harm to Northrop Grumman if the information is publicly

released. Accordingly, the information must not be released. See, e.g., Adobe Systems, Inc. Securities Litigation, 141 F.R.D. 161-163 (compelling need to have price and cost information related to computer software remain private in the context of class-action securities litigation).

Carlson, however, relies upon this Court's decision in Miller-Holzwarth v. United States, 44 Fed. Cl. 153 (1999) to support the contention that cost and price information in a Government contract must be disclosed in a judicial proceeding. That case, however, does not support disclosure of the cost and price information in the DTS DTR 6 contract. To the contrary, this Court refused to seal its opinion concerning the sanctionable behavior of the plaintiff and its counsel because they were not "protected by a specific statutory privacy right." Id. at 154 (quoting Pratt & Whitney, 14 Cl. Ct. at 276 (citing In re Knoxville News-Sentinel Co., 723 F.2d 470, 476-77 (6th Cir. 1983)).

In this case, by contrast, there is a specific privacy right for confidential commercial and financial information provided in Rule 26 (c)(7) of the Rules of the United States Court of Federal Claims ("RCFC") which authorizes the imposition of protective orders to regulate the disclosure of confidential commercial and financial information where disclosure is likely to cause competitive harm. This is precisely the right being enforced by the protective order governing the DTS DTR 6 contract, and, accordingly, the protective order should continue to be enforced.

Carlson falsely suggests the protective order is preventing the public from having access to the primary evidentiary materials in the litigation, namely the contract and relevant modifications. In fact, the redacted version of the contract and modifications has already been released to the public and contains all but an infinitesimal portion of the text of the contract and

modifications. The key records in the case have been released, not withheld. Only a minute amount of confidential cost and price information and information related to the architecture of the CUI has been withheld from public disclosure.

Finally, Carlson contends the cost and price information in the DTS DTR 6 contract has no competitive significance because the contract has been modified and the original information is four years old. Carlson provides no case authority to support the contention that four year old cost and price information is no longer confidential. Northrop Grumman's competitors could extract information from the original contract to calculate Northrop Grumman's prices in today's market. See Public Citizen Health Research Group v. National Institutes of Health, 209 F.Supp.2d, 37, 46-49 (D.D.C. 2002) (competitors can extrapolate from royalty payments for pharmaceutical products to the cost structure to produce and develop pharmaceutical products).

Further, the cost and price information relating to CLINs in the modified contract are two years old rather than four years old. Two year old cost and price information is clearly confidential. See, e.g., In re Adobe Systems, Inc. Securities Litigation, 141 F.R.D. at 163 ("[I]nformation created within the past two years is still sensitive and disclosure would put defendants and third-parties at a competitive disadvantage"). Moreover, Carlson does not dispute the fact that the market in information technology is highly competitive and that Northrop Grumman is engaged in ongoing competition with Carlson and others under the multiple award GSA contract for the provision of travel services to Federal agencies.[3] The release of this data

[3]Carlson contends that, because we have argued that the interface specifications for software development for the DTS DTR 6 contract are far more sophisticated than those required to satisfy the GSA contract, we are inconsistent in contending that the cost and price information in the DTS DTR 6 contract has competitive value to Northrop Grumman's competitors. However, the fact that software development requirements for the DTS DTR 6 contract are

would provide Carlson with an unfair competitive advantage in the ongoing competition and for future competitions. In this regard, the present litigation and Carlson's requested relief proves the compelling need to retain this proprietary information under seal. Carlson seeks the termination of Northrop Grumman's contract and re-competition of the requirements. If this cost and price information were released as Carlson now seeks, it would provide Carlson with an unfair competitive advantage in any re-competition and place Northrop Grumman at a competitive disadvantage. Accordingly, there is no merit to Carlson's contention that cost and price information in the DTS DTR 6 contract should be disclosed.[4]

II. Information Relating To The Development And Deployment Of The CUI Constitutes Trade Secrets

Carlson contends that the information contained in BDM's bid proposal relating to developing and deploying the CUI should be disclosed because the restructure modification (Mod 25) deleted the original proposal and substituted a revised statement of work and revised technical requirements for a web-based CUI. Carlson relies upon its erroneous argument that the revised statement of work and specifications eliminated the architecture and software of the original CUI. As we demonstrated in our motion to dismiss, or, in the alternative, for summary

significantly more advanced than for the GSA contract does not mean that Northrop Grumman's software development costs for the DTS DTR 6 contract would not assist competitors in pricing software development for the GSA contract.

[4]Carlson contends that this Court had the "general view," expressed at the initial pretrial conference, that "once a contract is awarded, 'the prices upon which that contract rests are not confidential any more.'" Reply at 1, (quoting Status Conference Tr. at 14:1-2). In fact, the Court made it clear that, although it had this initial "understanding," it was "somewhat uncertain about the pricing materials." It requested the Government to "file a memorandum that clarifies that point," and decided to "keep the pricing material . . . subject to the protective order" until after it had reviewed the Government's memorandum. Tr. at 15: 10-15.

judgment, however, the restructuring related to a web-based solution that did not effect the architecture or software of the CUI but simply eliminated redundant and unnecessary modes of access (i.e., client-server and telnet modes of access). The same requirements for the implementation for the original CUI are equally applicable to the revised CUI. Accordingly, the contention that the revised statement of work and technical requirements eliminates the confidentiality of the original proposal misunderstands Mod 25 and lacks merit.

Indeed, Carlson has already conceded in the course of this proceeding that the architecture of the CUI is, in fact, a trade secret. For example, at the initial status conference, Carlson acknowledged that "there will be protected information coming in on the technical descriptions of TRW's products and Carlson's products." Id. at 14:18-20. This pointed out to the Court that the software and hardware configurations for the CUI and the e-travel system being adopted by GSA were trade secrets. This Court agreed with Carlson's representations, asserting without qualification that "details about TRW's software development" constituted trade secrets. Initial Status Conf. Tr. at 15:6-8.

In addition, precedent clearly holds that confidential information concerning the development of software and information technology systems constitute trade secrets. For example, in In Re Adobe Systems, Inc. Securities Litigation, 141 F.R.D. at 161-162, the United States District Court for the Northern District of California held that information concerning the development and marketing of software could not be disclosed to the public even after the parties completed discovery and were about to commence a trial. Likewise, in Crane Helicopter Services, Inc., 56 Fed. Cl. at 321-326, this Court held that confidential engineering and production plans and blueprints relating to military and civilian helicopters were trade secrets and

could not be disclosed following a trial upon the Government's fraud counterclaim. Accordingly, information in the original contract relating to the development and deployment of the CUI should not be disclosed in this case as well.

CONCLUSION

For the foregoing reasons, and for the reasons contained in our original memorandum, cost and price information for products and services in the DTS DTR 6 contract and information relating to the development and deployment of the CUI in the original contract constitute trade secrets and should not be publicly disclosed.

Respectfully submitted,

/s/ John W. Chierichella
JOHN W. CHIERICHELLA
ANNE B. PERRY
Sheppard Mullin Richter &
Hampton, LLP
1300 I Street, NW, Floor 11 East
Washington, DC 20005
Telephone: (202) 218-0000
Fax: (202) 218-0020

Attorneys for Intervenor

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

s/David A. Levitt

DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-0309
Fax: (202) 514-7965

Attorneys for Defendant

Date: April 14, 2004

.

Certificate Of Filing

I hereby certify that on April 14, 2004, a copy of the foregoing Defendant's And Intervenor's Joint Response To Plaintiff's Reply To Defendant's Memorandum Concerning Whether Unit Prices And Other Information In The DTS-DTR 6 Contract Is Confidential was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/David A. Levitt