**PROTECTED INFORMATION**
**TO BE DISCLOSED ONLY IN ACCORDANCE WITH**
**THE U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

# In the United States Court of Federal Claims

| | | |
|---|---|---|
| **CW GOVERNMENT TRAVEL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03-1274C** |
| | ) | **Judge George W. Miller** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NORTHROP GRUMMAN SPACE AND MISSIONS SYSTEM CORPORATION,** | ) | |
| | ) | |
| **Intervenor.** | ) | |

**PROPOSED TIMETABLE AND ACTIONS TO IMPLEMENT ORDER DATED JULY 26, 2004**

Pursuant to this Court's decision and order dated July 26, 2004, the Plaintiff, CW Government Travel, Inc. ("Carlson"), hereby submits its proposed timetable and actions to compete traditional travel services currently being performed under Northrop Grumman's DTS DTR-6 Contract in violation of the Competition in Contracting Act of 1984, 41 U.S.C.A. § 253, ("CICA"). For the reasons set forth below, Carlson opposes the timetable and actions proposed by the Government.

**THE GOVERNMENT'S PROPOSED SCHEDULE IS UNREASONABLE**

The Court has found that the addition of traditional travel services to the DTS DTR-6 Contract violates CICA. Pursuant to 5 U.S.C.A. §706, continued performance of traditional

**PROTECTED INFORMATION
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
THE U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

travel services under the DTS DTR-6 Contract is unlawful and must be set aside. The Government has essentially proposed that, notwithstanding the violation of CICA that has been ongoing since the issuance of the Contract Modification in May 2002, it should be permitted to continue business as usual and allow the unlawful contractual action to continue for at least another nine months.

The Government proposes that, rather than take prompt remedial action in regard to traditional travel being performed unlawfully under the DTS DTR-6 Contract, it will eventually replace the unlawful contract as part of a program to procure travel management services for all of DoD worldwide that provides an uncertain schedule and simply seeks to shelve the Court's decision. While the Government suggests that it might be nine months away, it could be much longer. Because the DoD travel management program proposed is a new type of procurement for DoD travel,[1] and includes all 11,000 DoD sites worldwide, there will certainly be delays in the procurement that will result in the unlawful DTS DTR-6 Contract for traditional travel services extending well beyond the unacceptable nine months proposed.

It is also unfair that Sato Travel (Northrop's CTO subcontractor) should be allowed to continue performance of traditional travel services in eight of the DTR-6 states, for at least another nine months, while DoD is procuring new long-term global travel service contracts. It is well established that there is an inherent advantage to being the incumbent contractor when service contracts are procured. The schedule proposed by the Government not only unreasonably extends an unlawful contract, but also creates an unearned, and thus unfair,

---

[1] Multi-phase, multiple award, IDIQ Master Contracts followed by individual Task Order competitions.

potential competitive advantage for Sato Travel under the new, long-term DoD travel contracts to be awarded in 2005.

There is no basis for the Government's effort to extend this unlawful contract a minimum of another nine months, and probably, substantially longer. The Government has been on notice since Carlson filed its original Complaint in May 2003, that the addition of traditional travel services to the DTS DTR-6 Contract was a violation of CICA. Based upon the record and briefing in this case, the Court's July 26, 2004 decision and order on this issue could not have been a surprise. However, the Government proposes to essentially ignore the Court's decision and order and proceed at its own, leisurely pace to replace this unlawful contract. The CICA mandates that the Government shall "use advance procurement planning and market research" and develop specifications "as is necessary to obtain full and open competition with due regard to the nature of the property or services being required." 41 U.S.C.A. §253(a). Likewise, CICA specifically prohibits an executive agency from entering into a contract for services "using procedures other than competitive procedures on the basis of lack of advance planning…" 41 U.S.C.A. § 253(f)(5). The Government's failure to originally comply with CICA when it added the traditional travel services to the DTS DTR-6 Contract in 2002, and its failure to take appropriate action to correct the unlawful contract during the past 14 months of litigation, cannot be permitted to continue for the extended period proposed by the Government. Extraordinary efforts are required by the Government to replace the unlawful contract, rather than the "business as usual" approach it proposes.

## CARLSON'S PROPOSED SCHEDULE TO COMPLY WITH CICA

The provision of traditional travel services to the Government is not complex. There are literally dozens of qualified contractors who have been satisfactorily providing such services to

DoD and other Government agencies for many years. The General Services Administration ("GSA") already has multiple, indefinite-delivery, indefinite-quantity contracts for traditional travel services similar to what the Defense Travel Service Program Management Office ("DTS PMO") is planning for all of DoD.[2] The GSA Federal Supply Schedule ("FSS") Contract Number 599 for "Travel Service Solutions"[3] currently has 24 qualified Commercial Travel agents to provide traditional travel services to any entity of the Federal Government, including DoD. Both Carlson and Sato Travel are qualified under the GSA FSS Contract, and thus, are available to provide traditional travel services to the sites being serviced unlawfully under the DTS DTR-6 Contract.

Carlson proposes that DoD promptly issue a tailored Task Order under the GSA FSS Contract 599 for traditional travel services to the areas currently being provided under the DTS DTR-6 Contract. Essentially, the only "tailoring" of the Task Order necessary would be to include transaction fees for the very small percentage of travel services provided using the DTS (estimated at less than five percent, based upon statistics publicly released by the DTS PMO).

---

[2] The FAR describes the GSA Multiple Award Schedule Program as providing "Federal agencies with a simplified process of acquiring commonly used supplies and services in varying quantities while obtaining volume discounts." FAR 38.101(a). As a recent book on the subject notes, the growth of the Program is due, in part, to "the fact that the Program provides the Government with a simple, cost-effective means of acquiring commercial supplies and services." John W. Chierichella and Jonathan S. Aronie, *Multiple Award Schedule Contracting* 41 (2002).

[3] The summary description of the GSA FSS Contract No. 599 is:
"TRAVEL AGENT SERVICES Commercial services for the provision of travel agent services which includes, but not limited to: travel arrangement, reservation, ticketing and traveler support for air, rail, lodging, car rental and ancillary services, which includes arrangement, booking, ticketing, business services, delivery services, destination services, documentation, frequent flyer and loyalty programs, help desk, international services, invoicing, reconciliation, profile management, quality control, and reporting."

PROTECTED INFORMATION
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
THE U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

As a result of ongoing DTS PMO Solicitations for combinations of traditional travel services and DTS travel services, the industry is very familiar with DTS, as are Carlson and Sato Travel, and would have no trouble providing a transaction fee for use of the DTS, in addition to the normal traditional travel service transaction fees already contained in the GSA FSS Contracts.

DoD could issue a Task Order Request for Quotations ("RFQ") under the GSA FSS Contract in two to three weeks, receive proposals by mid-September 2004, and make award(s) by October 1, 2004, for service to commence on November 1, 2004, and remain firm for a six-month period, with the Government's option to renew for another six-month period. The Government's own proposed schedule indicates that it is practical to issue an RFQ, receive proposals, and make Task Order awards for the DTR-6 area within a month. The major delay in the Government's proposed schedule is the time required for the Government to first procure the multiple, master IDIQ Contracts, under which the Task Order for DTR-6 would be competed. The existing GSA FSS Contract Number 599 for traditional travel services allows DoD to immediately issue the Task Order RFQs, rather than wait until February 2005, as proposed by the Government.

The Task Order RFQ under the GSA FSS Contract would make it clear that this is merely an interim contract for traditional travel services that will be replaced in six to twelve months by Task Orders issued under the planned DoD worldwide IDIQ Travel Contracts. This proposed procedure and schedule has the benefit of promptly remedying the unlawful provision of traditional travel services under the DTS DTR-6 Contract, while doing so in such a manner that it does not significantly disrupt the Government's plan for procuring travel services for all of DoD worldwide next year.

**PROTECTED INFORMATION
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
THE U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

An alternative procedure would be for the Government to issue a Solicitation for interim traditional travel services using a revised version of two pending DTS PMO Solicitations, one developed for the MEPS (mentioned by the Government's proposal), and the other for Air Force bases. Those two pending Solicitations are set asides for small businesses and include multiple regions. Either of those Solicitations could easily be simplified to include a single region of eight states currently being serviced under DTS DTR-6 Contract. Such a Solicitation could be released in two to three weeks, with proposals due in mid-September, award by October 1, 2004, and the new contract to commence by November 1, 2004. Again, such an interim contract for six months, with the Government's option to extend for another six months, would satisfy CICA and not significantly disrupt plans for the global DoD IDIQ travel service contracts and Task Orders next year.

## CONCLUSION

Carlson believes it is reasonable and required by CICA and the Administrative Procedure Act that the Court order the Government to competitively procure traditional travel services to replace the unlawful traditional travel services currently being provided under the DTS DTR-6 Contract no later than November 1, 2004.

Respectfully submitted:

/s/Lars E. Anderson
Lars E. Anderson
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 760-1623 (Protected)

**PROTECTED INFORMATION
TO BE DISCLOSED ONLY IN ACCORDANCE WITH
THE U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

*Of Counsel:*

Michael W. Robinson
Benjamin A. Winter
Sharon A. Jenks
Julia M. Kiraly
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 760-1623 (Protected)

*Attorneys for Plaintiff*

Dated: August 6, 2004

**PROTECTED INFORMATION**
**TO BE DISCLOSED ONLY IN ACCORDANCE WITH**
**THE U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

# CERTIFICATE OF FILING

I hereby certify that on August 6, 2004, a copy of the foregoing PROPOSED TIMETABLE AND ACTIONS TO IMPLEMENT ORDER DATED JULY 26, 2004, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Lars E. Anderson
Lars E. Anderson