# In the United States Court of Federal Claims

No. 03-1274 C
(Filed January 12, 2005)
TO BE PUBLISHED

| | |
|---|---|
| CW GOVERNMENT TRAVEL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant,<br><br>and<br><br>NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,<br><br>Defendant-Intervenor. | Injunctive Relief; Motion for Reconsideration; 28 U.S.C. § 1491(b); Administrative Procedure Act, 5 U.S.C. § 706; RCFC 52 |

Lars E. Anderson, Venable LLP, Vienna, Virginia, for plaintiff. Michael W. Robinson, Benjamin A. Winter, Sharon A. Jenks, Venable LLP, Vienna, Virginia, of counsel.

David A. Levitt, Trial Attorney, Franklin E. White, Jr., Assistant Director, David M. Cohen, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

John W. Chierichella, Sheppard, Mullin, Richter & Hampton LLC, Washington, D.C., for defendant-intervenor. Anne B. Perry, Sheppard, Mullin, Richter & Hampton LLC, Washington, D.C., of counsel.

**OPINION AND ORDER**

GEORGE W. MILLER, Judge.

This matter is before the Court on the motion of plaintiff, CW Government Travel, Inc. ("Carlson" or "CWGT"), for partial reconsideration of the Court's Opinion and Order dated August 3, 2004. Defendant and defendant-intervenor filed oppositions to plaintiff's motion for partial reconsideration and plaintiff filed a reply brief in support of its motion. Oral argument was held on October 14, 2004. For the reasons set forth below, plaintiff's motion for partial reconsideration is DENIED.

## *BACKGROUND*

The facts of this case are set forth in detail in the Court's August 3 Opinion and Order. *CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559 (2004). The Court will repeat some, but not all of those facts here. This case involves several contracts for government travel services. Counts I and II of plaintiff's amended complaint, though not explicitly styled as such, constituted a bid protest of contract number DAMT01-98-D-1005 ("DTS DTR-6 contract")[1] that was being performed by Northrop Grumman. Count I of the amended complaint alleged that the Government violated the Competition in Contracting Act, 41 U.S.C. § 253(a) (2000) ("CICA"), when it modified the DTS DTR-6 contract, because the modifications constituted cardinal changes such that the new work under the DTS DTR-6 contract was required by law to be competed. In Count II of the amended complaint, plaintiff sought a permanent injunction, requesting that the Court enjoin Northrop Grumman's performance of the DTS DTR-6 contract and require the United States Army Contracting Agency, Information Technology, E-Commerce and Commercial Contracting Center ("ITEC-4") to issue a new solicitation for the work encompassed in the out-of-scope modifications. Count III of plaintiff's amended complaint was a performance dispute, brought under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-612 (2000), relating to two contracts between Carlson and the Army for traditional travel services. *Id.* at 563.

The Court denied defendant's motion to dismiss Count III of the complaint. Counts I and II encompassed three alleged cardinal changes to the contract: (1) addition of traditional travel services; (2) modification of the requirements for the Common User Interface ("CUI"); and (3) payment restructure. On summary judgment, the Court found that the addition of traditional travel services constituted a cardinal change to the DTS DTR-6 contract in violation of CICA. *Id.* at 574. The Court considered and weighed the relevant factors and determined that plaintiff was entitled to injunctive relief. Accordingly, the Court ordered the agency to compete the traditional travel services portion of the contract. *Id.* at 576.

---

[1] DTS DTR is the acronym for Defense Travel System Defense Travel Region. In addition to DTS travel regions, there are also Army travel regions. These regions are designated separately. Sometimes a DTS travel region will overlap an Army travel region. Thus, some states are in DTS DTR-6, but in Army DTR-3, 4, or 5.

The Court determined, however, that the record was insufficient regarding whether Carlson had standing to challenge the failure to re-compete the contract after the alleged changes to the CUI and payment restructure. *CW Gov't Travel*, 61 Fed. Cl. at 570-71. The Court further found that there were genuine issues of material fact whether the alleged changes to the CUI and payment restructure constituted cardinal changes, such that the contract would have been required to be re-competed. *Id.* at 576-77. The Court, nonetheless, determined that even if Carlson had standing and could prove that there was a cardinal change, Carlson was not entitled to the injunctive relief it sought. *Id.* at 579. Accordingly, the Court entered summary judgment on Count II (injunctive relief) in favor of the Government and Northrop Grumman.

Following the Court's decision, the parties, on August 12, 2004, filed a stipulation of dismissal regarding Count III. By Order dated October 14, 2004, the Court adopted defendant's revised proposed schedule for re-competing the traditional travel services portion of the DTS DTR-6 contract. The DTS DTR-6 task order was to be awarded on or about October 26, 2004, with performance pursuant to the new task order to commence and performance of traditional travel services pursuant to the DTS DTR-6 contract to terminate, on or about November 22, 2004. To the knowledge of the Court, those events were completed on schedule.

## *DISCUSSION*

### I. Standard for Motion for Reconsideration

Motions for reconsideration are governed by United States Court of Federal Claims Rule ("RCFC") 59, and are granted at the sole discretion of the court–not as a matter of right. *See Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990); *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000). A showing of extraordinary circumstances is necessary before a party may prevail on its motion for reconsideration. *Fru-Con Constr.*, 44 Fed. Cl. at 300. "This showing, under RCFC 59, must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Id.* (internal citations omitted). In other words, a motion for reconsideration is improper when based upon "the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise a losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged with no more satisfactory results, as there would still be a losing party in the end." *Roche v. District of Columbia*, 18 Ct. Cl. 289, 290 (1883). "Because of a strong public policy disfavoring reconsideration based upon facts already in the record at the time of the original conclusion, a party's motion for reconsideration must be premised upon much more than a mere re-argument of positions already advanced before the court." *Anchor Sav. Bank, FSB v. United States*, 63 Fed. Cl. 6, 7 (2004) (citing *Fru-Con Constr.*, 44 Fed. Cl. at 301).

## II. Issuance of an Injunction is Within the Court's Sound Discretion

Carlson first contends that "in addressing a violation of CICA, the Court is not free to decline to enforce the statutes. Regardless of whether Carlson is entitled to all of the equitable relief sought, the Court is not permitted to enter judgment in favor of the Government in the face of a violation of CICA. Congress has circumscribed the Court's tradition discretion in equity. Under the Administrative Procedure Act ("APA"), the Court must declare unlawful and set aside action that violates CICA." Mem. in Supp. of Pl.'s Mot. for Recons. at 1. The Court of Appeals for the Federal Circuit has considered and rejected this very argument. *PGBA, LLC. v. United States*, 389 F.3d 1219 (Fed. Cir. 2004).

The Court has jurisdiction over Carlson's bid protest pursuant to the Tucker Act, 28 U.S.C. § 1491(b) (2000), which was enacted as part of the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, 100 Stat. 3879. Section 1491(b) provides in relevant part:

> (1) The Unite[d] States Court of Federal Claims . . . shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.
>
> (2) To afford relief in such an action, the courts may award any relief that the court considers proper including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.
>
> (3) In exercising jurisdiction under [1491(b)], the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.
>
> (4) In any action under [1491(b)], the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.

Section 706 of title 5, which is part of the APA, Pub. L. No. 89-554, 80 Stat. 378 (1966), provides in relevant part as follows:

> The reviewing court shall–
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be–
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

The question before the court is whether the reference in 28 U.S.C. §1491(b)(4) to 5 U.S.C. § 706 merely incorporates the standard of review from section 706, or whether it means that the reviewing court must set aside any action it finds unlawful without consideration of the relative harms of such action. *PGBA*, 389 F.3d at 1225. In answering that question, the Federal Circuit held that "section 1491(b)(4) only incorporates the standard of review of section 706(2)(A) and therefore does not deprive a court of its equitable discretion in deciding whether injunctive relief is appropriate. We thus hold that, in a bid protest action, section 1491(b)(4) does not automatically require a court to set aside an arbitrary, capricious, or otherwise unlawful contract award." *Id.* at 1225-26.

The Federal Circuit first analyzed the plain language of section 1491(b)(4). *Id.* at 1226. "The statute states that 'courts shall *review* the agency's decision pursuant to the *standards* set forth in section 706 of title 5.'" *Id.* (quoting 28 U.S.C. § 1491(b)(1)). The Federal Circuit interpreted this language to mean that "courts are to employ the standards of 5 U.S.C. § 706 in *reviewing* an agency decision. The statute does not say anything, however, about *remedying* agency decisions found to be unlawful." *Id.* The Court continued:

> Section 706(2)(A) of title 5, in turn, provides two standards: a standard for *relief* – "the reviewing court shall hold unlawful and set aside agency actions findings, and conclusions . . .;" and a standard of *review* for determining when to apply the required relief – "found to be arbitrary capricious, an abuse of discretion, or otherwise not in accordance with law." In short, when read together, sections 1491(b)(4) and 706(2)(A) compel the conclusion that section 1491(b)(4) only incorporates the arbitrary or capricious [or otherwise not in accordance with law] standard of review of section 706(2)(A).

*PGBA*, 389 F.3d at 1226. To the extent that Carlson contends that its case falls within section 706(1), the same analysis applies – section 706(1) provides two standards: a standard for *relief* – "the reviewing court shall compel agency action . . .;" and a standard of *review* for determining when to apply the required relief – "unlawfully withheld or unreasonably delayed." *See id.* Thus, when read together, sections 1491(b)(4) and 706(1) "compel the conclusion that section 1491(b)(4) only incorporates . . . the standard of review" of section 706(1). *Id.*

"This construction is consistent with the language of 28 U.S.C. 1491(b)(2), which, through the use of the permissive 'may,' provides the Court of Federal Claims with discretion in fashioning relief." *PGBA*, 389 F.3d at 1226. The Court further held that "[i]nterpreting section 1491(b)(4) as requiring the court to enjoin all agency decisions found to be arbitrary, capricious, an abuse of discretion, or otherwise unlawful, would read the discretionary language out of section 1491(b)(2)." *Id.*

Because "in a bid protest action, section 1491(b)(4) does not automatically require a court to set aside an arbitrary, capricious, or otherwise unlawful contract award," *PGBA*, 389 F.3d at

1226, nor does it require the Court to compel agency action unlawfully withheld, *see id.*, plaintiff's argument that the Court's decision to deny injunctive relief to Carlson constituted a manifest error of law fails.

**III. The Court Can Enter Summary Judgment in Favor of the Non-Moving Party Provided That The Party Against Whom Judgment Was Entered Was Given Sufficient Opportunity To Oppose Such Judgment**

Plaintiff next contends that, even though each side filed a dispositive motion regarding Count II, "the availability of injunctive relief was not properly before the Court as a basis for judgment." Mem. in Supp. of Pl.'s Mot. for Recons. at 13. Plaintiff is incorrect.

The Supreme Court has recognized that "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Celotex Corporation v. Catrett*, 477 U.S. 317, 326 (1986). The Courts of Appeals have accordingly recognized this power of the district courts. *See, e.g.*, *Salehpur v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998) ("There is no per se prohibition on a district court entering summary judgment *sua sponte*"); *Black Warrior Elec. Membership Corp. v. Miss. Power Co.*, 413 F.2d 1221, 1226 (5th Cir. 1969) ("Black Warrior did not move for summary judgment below. However, Mississippi Power's motion for summary judgment alleges, as it necessarily must, that there are no material issues of fact, and all parties treat [the issue before the court] as a question of law. Therefore, we remand with directions that summary judgment be entered for Black Warrior on that issue alone.").[2]

When there is before the court a motion but no cross-motion, "the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of judgment." CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, 10A FED. PRAC. & PROC. CIV.3D § 2720. The weight of authority is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56. *Id.* The focus is on whether the losing party "had an adequate opportunity to show that there is a genuine issue and that the opponent is not entitled to judgment as a matter of law." *Id.*

In this case, the propriety of injunctive relief was plainly before the Court. Defendant's motion to dismiss or, in the alternative, for summary judgment, filed on December 15, 2003, sought dismissal or summary judgment with respect to plaintiff's *entire* complaint. Plaintiff's cross-motion for summary judgment, filed February 12, 2004, specifically stated that Carlson "respectfully moves the Court for Summary Judgment on Counts I and II of its Amended Complaint. . . . Therefore the Court should enter summary judgment on the merits of Counts I

---

[2] The Federal Circuit and the Court of Federal Claims will look to decisions applying "parallel" federal rules. *See, e.g.*, *Messerschmidt v. United States*, 29 Fed. Cl. 1, 14 (1993).

and II for the Plaintiff." Pl.'s Cross-Mot. for Summ. J. at 1; *see also* Pl.'s Reply to Def.'s Opp. to Pl.'s Mot. for Summ. J. (filed Mar. 24, 2004) at 2.

**A. The Issue of Harm to the Government Was Before the Court**

The issues of harm to the Government and of the effect of an injunction upon the public interest were clearly framed, presented, and supported in conjunction with the Government's argument that Carlson's action should be dismissed as untimely or, in the alternative, on the basis of laches:

> [I]f the Court were to grant the remedies demanded by Carlson, that delay would cause the Government serious continuing economic harm since, over the two years that Carlson sat on its hands, the Government has spent millions of dollars developing and deploying the DTS.

Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J. (filed Dec. 15, 2003) at 29.

> If Carlson is successful in obtaining injunctive relief, the Government may have to forfeit all money paid to Northrop Grumman to develop and deploy the CUI as well as termination fees. Further, given that deployment is proceeding pursuant to the Northrop Grumman contract, if Carlson is chosen to develop and deploy a web-based CUI after a competitive procurement in 2004 [or 2005], all the deployment already in the field will be aborted and continuing deployment will be delayed until Carlson is able to develop a functional CUI.

Def.'s Opp. to Pl.'s Cross-Mot. for Summ. J. (filed Mar. 10, 2004) at 6.

Furthermore, Defendant's Proposed Undisputed Fact No. 42 specifically addressed the issue of harm to the Government: "From the date of the challenged modifications, the Government and Northrop Grumman have been incurring costs and continuing performance." Carlson did not deny that statement. Rather it stated:

> The fact that the Government makes cardinal changes to a contract that result in excessive costs to the Government cannot prevent Carlson from challenging such conduct or this Court from providing an appropriate remedy. Moreover, the Government could have ceased such expenditures and taken proper corrective action to competitively procure the DTS requirements under the terms and conditions of the 2002 Modifications at any time. It is also noted that the Government has avoided disclosing how much money has been paid to TRW/Northrop Grumman under the contract to date.

Consol. Joint Statement of Facts in Support of Def.'s and Intervenor's Mot. to Dismiss Or, In the Alternative For Summ. J. and Pl.'s Resp. Thereto (filed May 10, 2004) ("Statement of Facts") ¶ 42.

The Government contended that the balance of harms would weigh more heavily against it if the Court entered the injunction requested by Carlson. Carlson had an opportunity to respond both in its written submissions and at oral argument. Accordingly, the Court acted within its power in finding against Carlson on that factor.

**B. Carlson Had an Opportunity to Present Evidence on the Public Interest**

The Court's determination that an injunction was not in the public interest was based in part on information entered into the record by Carlson. Carlson submitted evidence into the record to support its contention that it has a web-based, Government travel management system, known as E2 Solutions, that is comparable to the system being procured under the DTS DTR-6 contract. William Hearne, a key Carlson declarant, candidly conceded however, that Carlson's E2 Solutions cannot presently satisfy DTS. Hearne Declaration ¶ 1, Pl.'s App. at V 1571. Mr. Hearne stated that he worked on DTS for the Air Force for two years and became familiar with and monitored the progress of DTS. Hearne Decl. ¶¶ 3-5, Pl.'s App. V 1571-72. Mr. Hearne conceded that "each agency using the GSA eTravel system will undoubtedly require an interface with the particular agency's accounting, disbursing, and vendor pay systems . . . . In other words, GSA's eTravel Contract with CWGT did not include such features in the fixed transaction fee pricing, but provided that such features could be added by individual agencies at an additional cost for development." *Id.* While Mr. Hearne believes that "to the extent the features mentioned in [former DTS PMO, Colonel] Larry J. Schaefer's Declaration represent legitimate requirements of the DoD for travel management services, they could be readily added to the CWGT eTravel System, known as E2 Solutions," no support is provided for that conclusion. *Id.* ¶ 12, Pl.'s App. at V 1574. Mr. Hearne further concedes that such development to E2 Solutions would be at the Government's expense. *Id.*

Based on the type of evidence that it submitted, Carlson clearly had - and seized - the opportunity to rebut the facts relevant to the Court's determination that an injunction would not be in the public interest.

Because both parties moved either to dismiss Count II or for summary judgment on Count II, Carlson was on notice that the Court would consider whether to grant or deny the injunctive relief requested in Count II. The facts underlying the Court's conclusion that the balance of the hardships and the public interest weighed against granting injunctive relief were clearly at issue in the parties' cross-motions for summary judgment. Though the parties may have used those facts to urge different legal conclusions, Carlson was nonetheless "on notice that [it] had to come forward with all of [its] evidence," *Celotex*, 477 U.S. at 326, regarding those factual assertions. Based on the foregoing, the Court remains of the view that it properly granted summary

judgment in favor of defendant and defendant-intervenor on plaintiff's claim for injunctive relief regarding the alleged changes to the CUI requirements and the payment restructure.

## IV. RCFC 52 Does Not Require Factual Findings of the Type Demanded by Carlson

Carlson next contends that "the Court's judgment fails to comply with Rule 52," and that the Court was required to make "specific factual findings." Mem. in Supp. of Pl.'s Mot. for Recons. at 18. RCFC 52(a) provides as follows:

> In all actions tried upon the facts, the court shall find the facts specifically and state separately its conclusions of law thereon, and judgment shall be entered pursuant to RCFC 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. . . . . Findings of fact and conclusions of law are unnecessary on decision of motions under RCFC 12 or 56 or any other motion except as provided in subdivision (c) of this rule.

In the case at bar, RCFC 52 does not require findings of fact. First, this matter was not "tried upon the facts," nor did this matter consider "an interlocutory injunction." Second, the United States, Northrop Grumman, and Carlson moved for summary judgment in their favor pursuant to RCFC 12 and 56. The express language of RCFC 52 states that "findings of fact and conclusions of law are unnecessary on decisions of motions under RCFC 12 or 56." Finally, the Court fully explained the basis for its determination that injunctive relief was unwarranted in sufficient detail to allow a meaningful review. *Cf. Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 19 (2d. Cir. 2000) (indicating that the purpose of Federal Rule of Civil Procedure 52 is to provide a basis for reviewing the court's decision); *cf. also* Fed. R. Civ. P. 52, Notes to the 1946 Amendments ("the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts").

The Court finds that formal fact finding pursuant to RCFC 52 was not required, and in any event, the Court provided an explanation of its basis for denying the injunction in sufficient detail to allow meaningful review.

## V. The Court Adheres to Its Initial Decision To Deny Injunctive Relief Regarding the Alleged Changes to the CUI and Payment Restructure

### A. The Record Does Not Need to Be Supplemented

Carlson asserts that the record before the Court was insufficient to find that injunctive relief was unwarranted. The Court disagrees. In a typical bid protest case, the Court is presented with the "administrative record." That record consists of the materials and files that were before

the agency at the time the decision was made. *See Florida Power & Light v. Lorion*, 470 U.S. 729, 743 (1985); *Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 331 (1976). The administrative record generally does not include materials created or obtained subsequent to the time the decision-maker decided to take the challenged agency action or materials adduced through discovery by opponents of the agency's actions in *de novo* proceedings in court. *See id.*

In the case at bar, there was no formal administrative record. Rather, in connection with their respective cross-motions, the parties filed voluminous appendices. Thus, the Court was not simply reviewing the materials and files that were before the agency at the time the decision was made. *See Florida Power & Light*, 470 U.S. at 743. Instead, the parties submitted *all* materials that purported to support their respective motions. While the Court believed that the record was lacking in some respects, *i.e.*, whether Carlson had standing challenge the alleged changes to the CUI and alleged payment restructure, and whether those alleged modifications constituted cardinal changes, *CW Gov't Travel*, 61 Fed. Cl. at 570-71, 576-77, the record was sufficiently complete to allow the Court to consider and weigh the factors required to determine whether to grant injunctive relief.

**B. The Record Supports The Court's Conclusions**

As discussed in the August 3, 2004 Opinion and Order, *id.* at 575, injunctive relief is an extraordinary remedy, *CACI, Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983). A court, however, may issue a permanent injunction if plaintiff establishes that: (1) it has achieved actual success on the merits; (2) it will suffer irreparable injury if injunctive relief is not granted; (3) the harm to plaintiff if an injunction is not granted outweighs the harm to the Government if an injunction is granted; and (4) granting the injunction serves the public interest. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *Al Ghanim Combined Group v. United States*, 56 Fed. Cl. 502, 519-20 (2003); *Interstate Rock Products, Inc. v. United States*, 50 Fed. Cl. 349, 354 (2001). No one factor, taken individually, is necessarily dispositive. *FMC*, 3 F.3d at 427. Case law in this court has held that a plaintiff must demonstrate its right to injunctive relief by clear and convincing evidence.[3] *MCS Mgmt., Inc. v. United States*, 48 Fed. Cl. 506, 511 (2001) (citing *Bean Dredging Corp. v. United States*, 22 Cl. Ct. 519, 522 (1991)).

In resolving the issue of injunctive relief on summary judgment, the Court first determined that there were "no *genuine* issues of *material* fact." RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis added). Consistent with the law, the Court then considered the harm to Carlson if the injunction was not granted (for the purposes of the analysis, the Court assumed that Carlson would suffer irreparable harm), balanced that harm against the harm to the Government if the injunction was granted, and evaluated whether granting the injunction would serve the public interest. *CW Gov't Travel*, 61 Fed. Cl. at 577-79.

---

[3] For further discussion regarding the standard of proof, see *CW Gov't Travel*, 61 Fed. Cl. at 575 n.45.

Pursuant to 28 U.S.C. § 1491(b)(3), the Court also properly "gave due regard to the interests of national defense and national security and the need for expeditious resolution of the matter." *See CW Gov't Travel*, 61 Fed. Cl. at 578.

With one exception, plaintiff sought reconsideration based merely on "facts already in the record at the time of the original conclusion." *Anchor Sav. Bank*, 63 Fed. Cl. at 7. Reconsideration on those grounds is improper. *Id.* Furthermore, the new evidence presented by Carlson does not convince the Court that reconsideration should be granted. In its appendix to its reply in support of its motion for partial reconsideration, Carlson included a September 20, 2004 letter from Contracting Officer ("CO") Peggy Butler. In that letter, the CO sent to potential offerors for Request For Quotation ("RFQ") No. W91QUZ-04-T-0016 responses to vendor questions. App. to Pl.'s Reply at 9-12. Specifically, plaintiff directed the Court's attention to the table at page 11 that purports to show the relatively low percentage of travel services transactions booked using DTS (2.47%) or "DTS touched" (0.88%) from August 30, 2002 through September 15, 2004. The Court's decision to deny the requested injunctive relief was not dependent on the percentage of travel services then booked using DTS, though the Court did acknowledge and consider that terminating the DTS contract would impact current operations. No one factor was dispositive, and the other factors considered by the Court are not addressed by plaintiff's new submission.

The Court, after thorough consideration of the parties' written submissions and oral argument, finds that its evaluation of the relevant factors is supported by the record in this case. *See generally* Def.'s Opp. to Pl.'s Mot. for Recons. at 18-22 (citing record support for the denial of injunctive relief). The Court exercised its discretion and determined that an injunction was not in the public interest and that the balance of hardships disfavored injunctive relief. Plaintiff's motion for reconsideration has not persuaded the Court otherwise.

## VI. Clarification of the Court's August 3, 2004 Conclusions

In the conclusion of the August 3, 2004 Opinion, the Court stated that "defendant's and defendant-intervenor's motions for summary judgment shall be, and hereby are, GRANTED with respect to plaintiff's claims, set forth in Counts I and II, relating to the payment restructure and changes to the requirements of the CUI." *CW Gov't Travel*, 61 Fed. Cl. at 582-83. Without changing the substance of the Court's August 3, 2004 Opinion, the Court takes this opportunity to reconsider the manner in which it formulated its conclusions quoted above. In lieu of the quoted language, the Court should have stated: "The Court ORDERS that defendant and defendant-intervenor's motions for summary judgment shall be, and hereby are, DENIED with respect to plaintiff's claims set forth Count I, relating to the payment restructure and changes to the requirements of the CUI. The Court ORDERS that defendant and defendant-intervenor's motions for summary judgment shall be, and hereby are, GRANTED with respect to plaintiff's claim for injunctive relief set forth in Count II, relating to the payment restructure and changes to the requirements of the CUI."

## *CONCLUSION*

For the reasons set forth above, plaintiff's motion for reconsideration is DENIED. The Clerk is directed to enter judgment for plaintiff with respect to plaintiff's claim set forth in Counts I and II relating to traditional travel services. The Clerk is further directed to enter judgment for defendant and defendant-intervenor with respect to plaintiff's claim for injunctive relief set forth in Count II, relating to the payment restructure and changes to the requirements of the CUI.

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge