# IN THE UNITED STATES
# COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CW GOVERNMENT TRAVEL, INC.,** | |
| **Plaintiff,** | |
| **v.** | No. 03-1274C |
| **THE UNITED STATES,** | Judge George W. Miller |
| **Defendant,** | |
| **and** | |
| **NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION** | |
| **Defendant-Intervenor.** | |

## NORTHROP GRUMMAN'S OPPOSITION TO CARLSON'S MOTION FOR RELIEF FROM JUDGMENT

Defendant Northrop Grumman Space and Mission Systems Corporation ("Northrop Grumman") joins Defendant United States in opposing Plaintiff-Appellant CW Government Travel, Inc.'s ("Carlson's") motion for relief from judgment. Northrop Grumman has reviewed the United States' Opposition to Carlson's motion and concurs with the United States' position in all material

respects. Hence, it joins in and adopts the United States' position as its own and respectfully requests the Court to deny Carlson's motion for relief from judgment.

## ARGUMENT

As set forth in detail in the United States' Opposition, Carlson's argument that this Court should provide relief from final judgment on the ground of newly discovered evidence is without substantive or legal merit for at least four reasons:

First, the supplemental materials proffered by Carlson reflect events that have occurred and data that has been developed since the Court of Federal Claims issued its decision. As post hoc events, the proffered materials are irrelevant to the merits of the decision rendered by this Court at the time it ruled on Carlson's request for injunctive relief in 2004.

Second, even if the proffered materials were not post hoc in nature, they are irrelevant because – on their face – they do nothing: (1) to undermine or contradict the Court's decisional rationale that the United States would be unduly injured by terminating the DTS contract with Northrop Grumman; or (2) to discredit the Government's view of its property rights in the property that was in existence in 2004. Nothing in those materials contradicts or negates the fact that, if Northrop Grumman's contract were terminated, the Government could not fulfill its DTS

requirements without experiencing considerable delay, as well as incurring duplicative and excess costs.

The proffered materials make it clear that there are five categories of property at issue:

1. Governmentally funded, noncommercial technical data; Carlson's Motion for Relief from Judgment ("Carlson's Motion"), Attachment 2 at 23, Table 1;
2. Governmentally funded noncommercial software (see id.);
3. "Several dozen" privately funded commercial software programs (see id.);
4. "Three key" privately funded commercial software programs; (see id.); and
5. "Hardware (and other equipment) necessary to deliver services under the contract" (see Exhibit 2, at 23).

At best, the materials proffered by Carlson indicate that the Government has rights in only two of the five categories (i.e., the two Governmentally funded categories of noncommercial technical data and computer software). With respect to these two categories of noncommercial property, the proffered materials add nothing that is new or was not available to Carlson at the time the court below

ruled in 2004. In fact, even with respect to the first two categories of property, Carlson possessed the relevant documentation to ascertain the Government's rights at the time the motions for summary judgment and the motion for reconsideration were filed.

With respect to the latter three categories of property, the proffered materials simply demonstrate – consistent with this Court's conclusions in 2004, and consistent with the record currently before this Court – that the Government cannot simply terminate Northrop Grumman's contract and give the entire system to another contractor to run. Hence, termination would significantly undermine and adversely affect the DTS program.

While Attachment II to Carlson's Motion refers to letters from Northrop Grumman agreeing to provide rights to the balance of the property (the remaining three categories of hardware and software), those rights have not yet been granted to the Government – they were not granted at the time of this Court's decision, and they have not been granted as of this date. Indeed, the letters clearly demonstrate that the Government does not have rights in all of the DTS software and hardware. If it did, the Government would have no need to negotiate to obtain these rights from Northrop Grumman. It is clear, however, that the Government has, in fact, attempted to obtain these rights from Northrop Grumman – proof positive that the

United States does not have unlimited rights in all of the DTS software and hardware.

Moreover, even if the letters granted the United States some sort of unlimited right in the software and hardware, an argument with which Northrop Grumman does not agree since no contract modification has been executed, the transfer of these rights, by the plain terms of the letters – is conditioned on: (1) the completion of the current contract;[1] (2) the competition for a follow-on contract; and (3) Northrop Grumman's loss of that follow-on competition. None of these events has happened. Consequently, the letters, at best, grant in the Government no more than a future contingent interest in the software and hardware.

Third, this Court was clearly right on the facts in its 2004 decision – as confirmed by Carlson's now-proffered evidence. The Department of Defense did not, in 2004, have the right – and it still does not have the right – to use and/or provide the complete DTS system software and hardware to a third party. If the DTS contract were terminated (as Carlson requests in this action), while the

---

[1] "Completion" of the contract is distinctly different from declaring the contract illegal or terminating the contract. The letters do not agree to transfer any rights – whether in intellectual property: (a) developed under the contract after it was modified to include the standard data rights clauses; or (b) developed at private expense prior to the challenged modification, at a point when the Government clearly had acquired no rights in data or software – if Northrop Grumman is deprived of the ability to complete the DTS contract by terminating the contract.

Government may walk away with some technical data and some computer software in the final year of an eight year contract, it would clearly not walk away with the full complement of hardware, software, and technical data needed to implement the DTS, let alone on the same schedule and at the same or even a similar cost to the United States. Carlson's newly proffered materials make this point fairly plainly on their face and thus do nothing to undermine this Court's 2004 decision and the subsequent judgment in favor of the United States.

Fourth, as the DTS contract already is in its eighth and final year of performance, the Government is already in the process of re-procuring the DTS requirements. Insofar as this has been Carlson's ostensible requested relief in this action from the beginning, there appears to be nothing further that the Court could order. All that further proceedings would do is put all the parties and the Court to the time and expense of in-depth discovery on all of the open issues in the case (including those relating to standing and the nature of the modifications), possible new motions for summary judgment, and ultimately a trial. Whether those activities could be concluded before the expiration of the contract in September 2006 is questionable, but – even if they could be – the best that Carlson could hope for from this Court is an order directing the Government to do that which it has already embarked upon, i.e., a new procurement for the follow-on period.

This case is moot.

## CONCLUSION

For the reasons summarized above and set forth in detail in the United States' Opposition, Northrop Grumman joins the United States in respectfully requesting that this Court deny Carlson's motion to set aside the judgment.

DATED: January 26, 2006

Respectfully submitted,

/S/ John W. Chierichella

John W. Chierichella
Sheppard Mullin Richter & Hampton LLP
1300 I Street, NW, 11th Floor East
Washington, DC 20005
Tel: 202-218-6878
Fax: 202-218-0020

**PROOF OF SERVICE**

I hereby certify, under penalty of perjury, that on January 26, 2006, I caused a true and correct copy of the foregoing NORTHROP GRUMMAN'S OPPOSITION TO CARLSON'S MOTION FOR RELIEF FROM JUDGMENT was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/S/ David S. Gallacher