Case No. 03-1274C
(Judge George W. Miller)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CW GOVERNMENT TRAVEL, INC.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant,

and

NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,

Intervenor.

---

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT

---

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director
FRANKLIN E. WHITE, JR.
Assistant Director
/s/ David A. Levitt
DAVID A. LEVITT
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0309
Fax: (202) 514-7965

January 26, 2006

# TABLE OF CONTENTS


**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT** . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

- **I. THE GOVERNMENT'S LEGAL POSITION AT ORAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . 4
- **II. CARLSON'S KNOWLEDGE OF DOD'S INTELLECTUAL PROPERTY RIGHTS IN THE DTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
- **III. THE COURT'S DENIAL OF CARLSON'S REQUEST FOR INJUNCTIVE RELIEF** . . . . . . . . . . . . . . . . . . 6
- **IV. THE SUBCOMMITTEE HEARING** . . . . . . . . . . . . . . . . . . . . . . 6
- **V. THE CURRENT STATUS OF THE DTS CONTRACT AND FOLLOW-ON PROCUREMENT** . . . . . . 10

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

- **I. CARLSON IS NOT ENTITLED TO RELIEF FROM JUDGMENT PURSUANT TO RCFC 60(B)(2)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  - **A. CARLSON'S MOTION ADDRESSES FACTS NOT IN EXISTENCE AT THE TIME OF JUDGMENT** . . . . . . . . . . . . . . . . . . . . . . . . . 11
  - **B. CARLSON'S MOTION IS BASED UPON EVIDENCE THAT CARLSON POSSESSED, OR THAT WAS READILY AVAILABLE TO CARLSON, AT THE TIME OF JUDGMENT** . . . . . . . . . . . . . . . . . . . . . . . . . 12

C. THE EVIDENCE PROFFERED BY CARLSON IS CUMULATIVE AND WOULD NOT ALTER THE COURT'S JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II. CARLSON IS NOT ENTITLED TO RELIEF FROM JUDGMENT UNDER RCFC 60(B)(3) . . . . . . . . . . . . . 16

A. THERE WAS NO FRAUD OR MISREPRESENTATION . . . . . . . . . . . . . . . . . . . . . . . . . 16

B. CARLSON HAD EVERY OPPORTUNITY TO PRESENT ITS CASE FULLY AND FAIRLY . . . . 17

III. CARLSON'S MOTION IS MOOT . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

### FEDERAL CASES

Algonac Mfg. Co. v. United States,
198 Ct. C1. 258, 262, 458
F.2d 1373, 1376 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Betterbox Communications LTD v. BB Techs.,
300 F.3d 325 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CW Government Travel, Inc. v. United States,
61 Fed. Cl. 559, 578 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 14, 15

CW Government Travel, Inc. v. United States,
63 Fed. Cl. 459, 462-68 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Dan Caputo Co. v. Russian River County Sanitation District,
749 F.2d 571, 574 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Diaz Methodist Hospital,
46 F.3d 492, 496 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Dynacs Eng'g Co. v. United States,
48 Fed. Cl. 240, 242 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

Endyke v. United States,
14 Cl. Ct. 622, 623 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Engal Indus., Inc. v. Lockformer Co.,
166 F.3d 1379, 1384 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Forestry Surveys and Data v. The United States,
44 Fed. Cl. 485, 491-91 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Gull Airborne Instruments, Inc. v. Weinberger,
694 F.2d 838, 846 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

James Luterbach Construction Co., Inc. v. Adamkus,
781 F.2d 999, 602 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Maudlin v. M/V Peacock,
809 F.3d 1043, 1405 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Owen of Georgia v. Shelby County,
648 F.2d 1084, 1094 (6th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Placeway Constr. Corp. v. United States,
19 Cl. Ct. 484, 489 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13, 14

PGBA, LLC v. United States,
389 F.3d 1219, 1221 n. 2 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rivera v. M/T Fossarina,
840 F.2d 152 (1st Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Wash. Med. Ctr. v. United States,
211 Ct. Cl. 379 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Yachts Am., Inc. v. United States,
8 Cl. Ct. 278, 281 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

Zurich North America v. Matrix Servs., Inc. ,
426 F.3d 1281, 1291-92 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**FEDERAL REGULATION**

48 C.F.R. Subpt. 252.227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CW GOVERNMENT TRAVEL, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 03-1274C |
| THE UNITED STATES, | ) | Judge George W. Miller |
| Defendant, | ) | |
| and | ) | |
| NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION, | ) | |
| Intervenor. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR RELIEF FROM JUDGMENT

Pursuant to Rule 60(b), CW Government Travel, Inc. ("Carlson") moves to set aside the Court's July 26, 2004 judgment declining to enjoin performance of the Defense Travel Services ("DTS") contract, a complex information technology procurement that is now in its eighth and final year of performance, upon the basis of statements that were made in September 2005, regarding the Government's then current understanding of its rights in the existing 2005 DTS system. Specifically, Carlson's motion is based upon an excerpt of a transcript of a September 29, 2005 Senate Homeland Security and Government Affairs Permanent Investigative Subcommittee hearing and Appendix I to prepared testimony set forth in a September 29, 2005 draft Government Accountability Office ("GAO") report entitled "Department of Defense Rights to Property in the Defense Travel System" in which the Government opines upon its intellectual property rights in the 2005 DTS system.

Carlson argues that it is entitled to relief from judgment because testimony offered at the September 2005 subcommittee hearing allegedly contradicts a representation made by the Government during oral argument on May 2004 as to the Government's rights in the software developed by Northrop Grumman Space & Missions Systems Corporation ("Northrop Grumman") under the DTS contract. In May 2004, the Government argued that if the 2002 modification to the DTS contract were invalidated and Northrop Grumman was not selected as the winning contractor following a re-solicitation, then the deployment of any DTS system would be further delayed - (1) Northrop Grumman would be left with a system that it no longer needed, and (2) the Government would be required to fund the development of what would inevitably be an entirely new system. The Court agreed, finding, in part, that if the Government were forced to re-procure the system, an award to any new contractor would "send the most challenging and complex aspects of the project back to the drawing board." CW Government Travel, Inc. v. United States, 61 Fed. Cl. 559, 578 (2004) ("Carlson I").

Carlson now contends that the Court relied upon false information when it denied, in 2004, Carlson's claim for injunctive relief and ruled, in part, that a re-procurement would harm the public interest by delaying the development and use of the DTS during a time of increased military travel. The basis for Carlson's contention is that the Government -- in late 2005 -- now allegedly owns "vital portions" of the DTS system, has perpetual licenses in other aspects, and could simply jettison any other aspects of the system that are currently in use. Carlson's motion is fundamentally flawed. Carlson cannot rest upon data or software in which the Government may believe it had acquired some measure of rights as of the date of the 2005 Senate hearings. That data and that software did not exist in its entirety when the ruling that Carlson seeks to

reopen was issued by this Court. Rather, Carlson's motion must be evaluated against the specific data and software extant at the time the Court ruled, and upon the specific rights in that intellectual property that the Government had, or believed it had, as of that time. See, e.g., PGBA, LLC v. United States, 389 F.3d 1219, 1221 n. 2 (Fed. Cir. 2004) (time for considering the merits of a claim for injunctive relief is the point at which the Court of Federal Claims considered the claim).

It is upon the basis of that data and software -- not data and software developed and generated in the intervening nineteen (19) months -- that the Court's evaluation of the impact of an injunction upon the public interest can be properly reassessed. More specifically put, the only relevant inquiry here is what was in existence at that time, in whom the intellectual property rights then resided, and whether a successor contractor could have simply stepped into the shoes of Northrop Grumman in 2004, and continued to develop the DTS without further delaying DoD's critical travel infrastructure. That is an inquiry that Carlson avoids addressing, and for a very obvious reason -- i.e., the record before the Court more than adequately demonstrated that the quick and seamless transition that Carlson would have this Court assume would have, in fact, been impossible and costly.

Carlson's argument -- which is nothing more than a claim that the Court's decision was wrong because there is software and hardware in which the Government now has rights -- fails to establish the elements necessary to obtain the extraordinary remedy of relief under Rule 60(b). As set forth below, the evidence upon which Carlson relies arose long after the May 2004 oral argument and the July 26, 2004 decision. Moreover, the arguments now raised are largely duplicative and add nothing probative to the proceeding. Further, Carlson has failed to establish

that the Government's statements at the May 2004 oral argument were anything other than a good faith legal position -- based upon evidence produced to Carlson -- regarding the state of affairs that would exist at the time if the Court set aside the modifications pursuant to which DoD acquired intellectual property rights in various aspects of the DTS once developed. Furthermore, Carlson's argument ignores the other substantive bases upon which the Court's decision was based. Accordingly, Carlson's motion should be denied.

Finally, and of critical importance at this juncture, the re-procurement remedy that Carlson has sought in this lengthy protest process is now moot as the DTS contract is nearing completion and the Government is already in the process of reprocuring the DTS requirements. Hence, the Court's reopening of this case will serve no useful purpose and warrants dismissal as moot.

## STATEMENT OF FACTS

### I. The Government's Legal Position At Oral Argument

During the May 18, 2004, oral argument held before the Court, the Government contended that an injunction against further performance of the modified DTS contract would delay completion and deployment of the DTS and deprive users of the benefits of the system that had been developed to date. The Government based this statement, in part, upon its legal position that requiring DoD to terminate the DTS contract prematurely would render unavailable to the Government intellectual property that Northrop Grumman was developing under the contract. The premises of the Government's position were (1) that the system was still in a critical stage of development and no successor contractor could simply pick up this complex system and continue its development; and (2) that DoD would lose the additional rights that

Northrop Grumman granted to the Government in the modifications if the Court invalidated them.

II. Carlson's Knowledge Of DoD'S Intellectual Property Rights In The DTS

During discovery, Carlson received both the original DTS contract and the modified DTS contact which contained all of the contract provisions that govern DoD's intellectual property rights in the DTS system. Carlson's possession of these materials significantly predated the oral argument; indeed Carlson was provided the materials a second time more than five months before oral argument upon the parties' cross-motions for summary judgment, as they were included in Defendant's Appendix in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendant's Appendix"), Tab 12. These standard intellectual property clauses incorporated in Modification 25 are published in the Code of Federal Regulations and thus were readily available to Carlson. See 48 C.F.R. Subpt. 252.227.

The testimony offered by the Government in September 2005 merely confirmed what the original and modified contract specified in this regard. As explained in that testimony, the original DTS contract required Northrop Grumman to develop the DTS at private expense and did not allocate to the Government any rights in technical data or computer software necessary to operate the system. Carlson's Motion, Attachment 2 at 20. DoD's rights under the restructured contract are set forth in Sections H.7 and H.8 of Modification 25, wherein certain rights are, in fact, provided to the Government. Those provisions of the DTS Contract, as modified, were available to Carlson when the parties' motions were briefed and argued, and they were available to Carlson when it moved for reconsideration before this Court, and when the motion for reconsideration was argued.

III. The Court's Denial Of Carlson's Request For Injunctive Relief

On July 26, 2004, the Court issued an order denying Carlson's request for injunctive relief. Carlson I, 61 Fed. Cl. at 576-77. The Court concluded that the evidence could not support a claim for injunctive relief because development and deployment of the DTS was three years behind schedule and should not be further delayed, and because the public interest demanded that the DTS be made available as promptly as possible. Id. Accordingly, the Court granted summary judgment for the Government upon Carlson's claim for an injunction. Id. The Court reaffirmed this conclusion in its January 12, 2005 order denying Carlson's motion for reconsideration. CW Government Travel, Inc. v. United States, 63 Fed. Cl. 459, 462-68 (2005) ("Carlson II").

Carlson did not in either of these proceedings allege that the Government's rights in the technical data in the modified DTS contract conferred upon the Government sufficient rights to eliminate the delay to the development of the system that this Court concluded would obtain if the modification of the DTS contract were to be invalidated and performance interrupted. In fact, Carlson argued the Northrop Grumman's work product was irrelevant to Carlson's ability to perform the DTS Contract -- Carlson would simply use its own privately developed travel system and modify its own pre-existing work product, at further Government expense, allegedly to meet the Government's needs.

IV. The Subcommittee Hearing

The congressional testimony proffered by Carlson addresses five categories of property that would be potentially relevant to a new contractor's ability immediately to assume Northrop Grumman's role as the DTS prime contractor:

* Government funded, noncommercial technical data ("Category I"), Carlson's Motion, Attachment 2 at 23, Table 1;

* Governmentally funded noncommercial software ("Category II"), Id.;

* "Several dozen" privately funded commercial software programs ("Category III"), Id.;

* "Three key" privately funded commercial software programs ("Category IV"), Id.; and

* "Hardware (and other equipment) necessary to deliver services under the contract" ("Category V"), Carlson's Motion, Attachment 2 at 23 (text).

As the hearing testimony makes clear, the opinions expressed by Mr. Gaddy of DoD and by the GAO relate only to the property listed in Categories I and II above. No assertion of rights is made with respect to any of the remaining three (3) categories.

With respect to Categories I and II, Carlson's "newly discovered evidence" is neither "new" nor "newly discovered." It adds nothing that did not exist or was not available to Carlson when this Court issued its prior rulings. The Government's "Perpetual Unlimited Rights" in that technical data and software were at that time, and remain today, a function of the standard intellectual property clauses incorporated into the modifications provided to Carlson. Further, there is no indication that the Government's opinion as expressed at the subcommittee hearing was intended to address what rights DoD might have if the Court invalidated the modifications, either (a) in the data and software developed after the modifications that accorded the Government rights, or (b) in the data and software generated prior to the modifications, at a point in time when the DTS Contract had yet to accord the Government any rights whatever in any technical data or computer software. See Carlson's Motion, Attachment I, 34-35 (noting that the issue of property rights in the DTS Contract concerned whether the intellectual property

could be transferred from DoD to a follow-on contractor in the event Northrop Grumman was not selected as the follow-on contractor).

With respect to the property listed in Category III, again, nothing has changed. At the time the Court ruled upon the parties' respective motions for summary judgment and upon Carlson's motion for reconsideration, the Government's rights in this commercial software were likewise a function of the standard intellectual property clauses incorporated in Modification 25. As indicated in the testimony to the subcommittee, the Government did not obtain a perpetual license for this software. Carlson’s Motion, Attachment 2 at 23. Pursuant to the applicable clauses, the Government instead obtained extremely limited rights that terminate upon termination of the DTS contract. These same circumstances obtain to this day, and there is nothing in the proffered materials to suggest otherwise. Thus, if the DTS Contract is terminated, all Government rights in the Category III intellectual property expire.

With respect to the remaining two categories of property needed to perform the contract, Categories IV and V, there is new information. That information is described generally in the subcommittee hearing testimony as an agreement of Northrop Grumman to transfer rights in (1) what the testimony describes as the "three key programs" and (2) the hardware and other equipment needed to perform services under the Contract. No one contends -- not Carlson, not the GAO, not Mr. Gaddy, not DoD -- that DoD had either perpetual or unlimited rights or interest in the former categories, either when the contract was awarded or when it was restructured. To the contrary, the two letters pursuant to which Northrop Grumman expressed its willingness to undertake such a transfer of rights, appended hereto as Exhibit 1, are dated September 22, 2005 and September 23, 2005, well after the Court denied Carlson's request for

injunctive relief.

These letters establish that neither DoD nor Northrop Grumman believed that DoD had either perpetual or unlimited rights in the subject software or any interest in the hardware at the time the issues were briefed to and decided by the Court. The text of the letters also indicates that Northrop Grumman's willingness to transfer its rights in the subject software and hardware that the Government does not possess was conditioned upon three events that have not yet occurred: (1) Northrop Grumman's ability to complete the performance of the contract as restructured; (2) the conduct of a follow-on competition; and (3) the award of the follow-on contract to another contractor. Although supplemental agreements relating to this property are in process, the parties have not yet concluded a final agreement relating to the subjects broached in the referenced correspondence.

Simply stated, neither the testimony given at the Senate hearing nor the Appendix to the draft GAO report reflect any material change in the facts that existed at the time the Court ruled against Carlson. The only new facts are embodied in the prospective willingness of Northrop Grumman to transfer certain rights to the Government at some point in the future once the current contract has been completed. There is nothing to suggest that the hearings were intended to address, or that they did address, whether a successor contractor could simply step in, if Northrop Grumman were to be directed to abandon its DTS work, and immediately deploy a functioning DTS. It is further clear that the hearings did not address the specific questions of what rights the Government might have either in pre-modification or post-modification data or software if the challenged modifications were to be invalidated and performance by Northrop Grumman discontinued at Court direction.

## V. The Current Status Of The DTS Contract And Follow-on Procurement

The DTS Contract is scheduled to expire in September 2006 and Northrop Grumman is now in the eighth year of performance of an eight year contract. According to testimony before the Permanent Investigations Subcommittee of the Senate Homeland Security and Governmental Affairs Committee, "[W]e're looking at about a 12-month time frame to go through the procurement process." Carlson Motion, Appendix I at 33. Further, the expectation is that the final two software releases for the DTS Contract will occur prior to the completion of the contract and that the follow-on contract will be overseen by a Management Oversight Review Board which will ensure the implementation of Phase II improvements in the output of the system. Id. By the completion date of the current contract, it is expected that there will be complete deployment at "200 to 300 locations where . . . [e]ighty percent, roughly, of all travel is performed . . ." Id. Further, in November 2004, DoD issued a formal directive establishing DTS as the official system for the Department which is expected to have the effect of pre-empting the establishment or use of alternative systems and increasing the percentage of use of DTS throughout DoD. Id. at 30.

## ARGUMENT

RCFC 60(b) sets forth six circumstances under which "the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding." RCFC 60(b) (emphasis added). "A motion for relief from judgment is one for extraordinary relief entrusted to the discretion of the court, which may be granted only in exceptional circumstances." Yachts Am., Inc. v. United States, 8 Cl. Ct. 278, 281 (1985) (internal citations omitted); Placeway Constr. Corp. v. United States, 19 Cl. Ct. 484, 489 (1990). Thus, "relief from judgment under

Rule 60(b) will not be given if substantial rights of the party have not been harmed by the judgment." Dynacs Eng'g Co. v. United States, 48 Fed. Cl. 240, 242 (2000).

Although Carlson's motion does not specifically address the elements necessary to prevail under any particular subsection of RCFC 60(b), it appears that Carlson's motion is based upon RCFC 60(b)(2), which pertains to "newly discovered evidence," and RCFC 60(b)(3), which pertains to "fraud, misrepresentation, and other misconduct." As set forth below, Carlson has failed to demonstrate that it is entitled to the extraordinary remedy of relief from judgment under either RCFC 60(b)(2) or RCFC 60(b)(3), as well as any other subsection of RCFC 60(b).

## I. Carlson Is Not Entitled To Relief From Judgment Pursuant To RCFC 60(B)(2)

RCFC 60(b)(2) permits the court to relieve a party from final judgment based upon "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." RCFC 60(b)(2). To obtain relief under RCFC 60(b)(2), a party must establish that: (1) the newly discovered evidence pertains to facts that existed at the time of judgment; (2) the party did not possess the evidence at the time of judgment; (3) the evidence could not have been discovered through due diligence; and (4) "the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result." Yachts Am., 8 Cl. Ct. at 281; Endyke v. United States, 14 Cl. Ct. 622, 623 (1988); Charles A. Wright, Arthur R. Miller & Mary K. Kane, Fed. Prac. & Proc., § 2859 (2d ed. 1995).

### A. Carlson’s Motion Addresses Facts Not In Existence At The Time Of Judgment

Not surprisingly, certain facts have changed in the eighteen months since the Court's initial order denying Carlson's request for injunctive relief. The DTS contract is now in the

eighth and final year of performance rather than the sixth year of performance, the Government has invested significant additional time and money in the system, and Northrop Grumman has developed additional intellectual property under the contract. Further, the Government has entered into discussions with Northrop Grumman regarding the transfer of rights to property listed in Categories IV and V above in anticipation of the competitive procurement for the follow-on contract. These discussions occurred in September 2005, well after the Court denied Carlson's request for injunctive relief and motion for reconsideration, and to this day have not resulted in the transfer of any additional rights to DoD. Accordingly, these discussions, as well any plans DoD may have to acquire additional intellectual property rights in the future, cannot, as a matter of law, support Carlson's motion for relief from judgment. See Betterbox Communications LTD v. BB Techs., 300 F.3d 325 (3d Cir. 2002) (affirming denial of Rule 60(b)(2) motion based upon facts that occurred after trial); Rivera v. M/T Fossarina, 840 F.2d 152 (1st Cir. 1988) (same).

B. Carlson's Motion Is Based Upon Evidence That Carlson Possessed, Or That Was Readily Available To Carlson, At The Time Of Judgment

Evidence "in the possession of the party before the judgment was rendered . . . is not newly discovered and does not entitle the party to relief" under RCFC 60(b)(2). Fed. Prac. & Proc. § 2857; see also Yachts Am., 8 Cl. Ct at 282-83 (denying motion where evidence was available before judgment). Likewise, "relief will not be granted on the pleas of newly discovered evidence unless it clearly appears that such evidence could not have been discovered prior to trial through the exercise of reasonable diligence." Wash. Med. Ctr. v. United States, 211 Ct. Cl. 379 (1977); see also Placeway Constr., 19 Cl. Ct. at 489.

In the instant case, Carlson had the contract provisions that define DoD's rights in the

property listed in Categories I through V. Moreover, as demonstrated by its pleadings, Carlson knew at the time it filed its motion for summary judgment that the restructured contract required Northrop Grumman to develop certain intellectual property at Government expense. See, e.g., JA 221, 224, 226, 231. Carlson had in its possession all evidence needed to ascertain the Government's rights in each of these categories of property. The new materials proffered by Carlson merely characterized the evidence that Carlson possessed. Accordingly, Carlson has failed to establish the second element required to prevail under RCFC 60(b)(2), namely that the evidence was unavailable at the time of trial.

To the extent Carlson claims that it did not have physical possession of any materials necessary to ascertain DoD's intellectual property rights under the restructured contract (e.g., the standard intellectual property rights clauses published in the Code of Federal Regulations) Carlson has failed to produce any explanation, let alone proof, that it could not have obtained such materials prior to judgment. Carlson's failure to have addressed the issue of ownership or license rights in its pleadings, at oral argument, through a motion to supplement the administrative record, or as a basis for its motion for reconsideration, evidences, at best, a lack of diligence that is fatal to Carlson's motion. See RCFC 60(b)(2); Placeway Constr., 19 Cl. Ct. at 489 (denying Rule 60(b)(2) motion where movant could not explain "why [it] could not obtain [the] evidence before the court's decision").

C. The Evidence Proffered By Carlson Is Cumulative And Would Not Alter The Court's Judgment

Carlson's motion must be denied for the additional reason that the hearing transcript and GAO document "would not alter the outcome of the court's decision." Placeway Constr., 19 Cl. Ct. at 489 (denying Rule 60(b)(2) motion based upon cumulative evidence).

Carlson's motion is based upon the erroneous assumption that, if DoD had unlimited rights in significant aspects of the software developed under the DTS contract, a successor contractor could promptly integrate that software into its own system. However, even if the new contractor would have the benefit of the software to interface with the accounting and finance functions at DoD, it would still be required to integrate this software with the remainder of its system. As the Court correctly determined, "any new contractor would not have a system that could be immediately deployed;" its system would have to be integrated with the software developed under the existing contract. This, the court correctly observed, is one of the more complex and difficult tasks required under the contract, and one that has contributed to much of the delay in performance. Carlson I, 61 Fed. Cl. at 578.

Further, according to the hearing transcript submitted by Carlson with its motion, the procurement process is likely to take up to one year for a successor contract to be in place. Carlson’s Motion, Attachment 1 at 25. If the contract is enjoined, users of the system will have to switch from using the automated system to using the manual system (i.e., traditional travel providers) until the new system is deployed. As noted in the hearing transcript, the additional costs to the Government are approximately $20 per use when traditional travel is used instead of DTS. Id. at 26. According to data presented to the subcommittee, in FY 2005 approximately 96,000 vouchers were generated by DTS, which resulted in DoD paying approximately $19.2 million less to travel agents than it would have paid if the vouchers had been generated through the manual system. Id. Further, according to testimony at the hearing, the use of DTS is growing by 10 percent to 15 percent per month, which meant that DoD continued to generate cost savings that would be lost if the contract were enjoined. Id. Indeed, according to the

subcommittee transcript, DoD estimated DTS will result in cost savings of approximately $35 million in FY 2006. Id. at 20.

In short, contrary to Carlson's suggestion, the transcript only validates the evidence considered by the Court and adds nothing new, except for updated data that confirms the trends in the deployment and use data previously presented to and considered by this Court. While the contract was in its fifth year of performance when Carlson filed its complaint, Carlson I, 61 Fed. Cl. at 578, and in its sixth year when the motions for summary judgment were adjudicated, Northrop Grumman is now in its eighth and final year of performance. The automated system developed under the contract is now in place in more than 5,600 locations, will be deployed to the remaining major sites by the end of FY 2006, and will be available to locations at which approximately 80 percent of the travel occurs by the end of FY 2006. Carlson's Motion, Attachment 1 at 26. All of the deployment and use would be terminated and disrupted if the contract was enjoined and users of the system would be relegated to the use of traditional travel services.

As the Court observed, completion of the contract by Northrop-Grumman was in the public interest because "[w]ith the increased need for military travel due to recent world events, it is in the public interest that the DTS system be deployed to as many travel regions as possible, as quickly as possible." Carlson I, 61 Fed. Cl. at 579. This remains so even if a contractor selected after an estimated one year interruption in the procurement process is able to obtain the benefits of all the software and hardware developed and/or used under the contract. Indeed, the "evidence" submitted by Carlson does not in any manner undermine the Court's conclusion that "[a]ny new contractor would not have a system that could be immediately deployed." Hence,

there is no basis for setting aside the judgment.

II. Carlson Is Not Entitled To Relief From Judgment Under RCFC 60(B)(3)

RCFC 60(b)(3) permits the court to set aside a judgment based upon "fraud . . . misrepresentation, or other misconduct of an adverse party." RCFC 60(b)(3). To prevail on a motion under RCFC 60(b)(3), the movant must establish (1) a fraud or misrepresentation of an adverse party that (2) prevented the movant from fairly presenting its case. Engal Indus., Inc. v. Lockformer Co., 166 F.3d 1379, 1384 (Fed. Cir. 1999); see also Dynacs Eng'g, 45 Fed. Cl. at 241-42; Fed. Prac. & Proc. § 2860. Carlson cannot establish either of these elements.

A. There Was No Fraud Or Misrepresentation

The proffered evidence of the Government's current interpretation of its rights in the various software and hardware elements of the 2005 DTS does not contradict the Government's statements at oral argument. The DoD does not currently own or have unlimited or perpetual license rights in the property listed in Categories III, IV, or V. There is no evidence that DoD would somehow acquire such rights in these categories of property if the Court ordered a re-procurement.

With respect to the property listed in Categories I and II, i.e., the Government funded software and technical data, the proffered testimony correctly indicates that DoD currently holds perpetual unlimited rights. Yet, there is absolutely nothing in the hearing testimony or the GAO draft report that undermines counsel's fundamental position at oral argument that, irrespective of the rights in particular aspects of the system, if the DoD were to be forced to terminate Northrop Grumman's DTS contract and re-procure, the deployment of a completed and operating DTS would be significantly delayed. Simply stated, nothing in the Senate proceedings addressed (a)

the consequences of a termination of the contract in advance of completion; (b) the impact of a court order invalidating the modifications at issue on rights created solely and exclusively under those modifications in data or software developed after the date of those modifications; or (c) the impact of such an order on Government rights in any intellectual property that predated the challenged modifications and in which, absent the modifications, the Government had no basis for any assertion of rights.

Moreover, even if the Court were to conclude that the Government's statements at oral argument were incorrect, Carlson has failed to establish that the Government intended to deceive the Court. Thus, Carlson's motion should be denied for the additional reason that there is no evidence -- let alone clear and convincing evidence -- of fraud or misrepresentation. See Algonac Mfg. Co. v. United States, 198 Ct. Cl. 258, 262, 458 F.2d 1373, 1376 (1972) (holding that Rule 60(b)(3)'s predecessor required "clear and convincing evidence of an unconscionable plan or scheme designed to improperly influence the court in its decision"); Zurich North America v. Matrix Servs., Inc. , 426 F.3d 1281, 1291-92 (10th Cir. 2005) (holding that a movant under Rule 60(b)(3) must establish "an intent to deceive or defraud the court").

B. Carlson Had Every Opportunity To Present Its Case Fully And Fairly

"Courts determining Rule 60(b)(3) motions always require proof that the alleged fraud or other misconduct prevented the moving party from fully and fairly presenting his or her case at trial." Moore's Fed. Prac. § 60.43. Carlson has failed to allege, let alone prove, this element of RCFC 60(b)(3). To the contrary, as set forth in Section I.B, supra, Carlson had in its possession the evidence upon which the Government based its position regarding DoD's rights in the DTS. Carlson had the contract; it had the data rights clauses of the contract; it had the FAR and

DFARS against which to read those clauses; and it had experienced government contracts' counsel to evaluate those contract provisions against the claims it and the Government asserted before this Court.

Because Carlson had undeniable, independent access to this information, its motion for relief from judgment under RCFC 60(b)(3) must be denied. See Maudlin v. M/V Peacock, 809 F.3d 1043, 1405 (9th Cir. 1987) (affirming denial of Rule 60(b)(3) motion were information "was not in the exclusive control of the [nonmovant]"); Diaz Methodist Hospital, 46 F.3d 492, 496 (5th Cir. 1995) (same).

III. Carlson’s Motion Is Moot

It is undisputed that now Northrop Grumman is in the eighth year of an eight year contract. DoD is in the process of re-procuring the DTS requirements and will soon issue requests for information pertaining to follow-on contracts. DoD’s re-procurement actions will be structured in a way to insure that there is no disruption to the Defense Travel System. If this Court were to invalidate the contract and order a re-procurement, not only would DoD’s ongoing re-procurement efforts be disrupted but, rather than have DTS be functional while the re-solicitation moves forward, instead there would be a break in performance and interim travel arrangements would have to be made under the manual system at great expense to DoD. This makes no sense and indicates that, as a practical matter, the contract is too close to completion to allow injunctive relief to be considered as a practical remedy even assuming the 2002 modifications violated the relevant statute.

As the Court has noted:

> It is well established that when a contract has been substantially completed, it is impossible, or at the least imprudent, for the court

> to order that the contract be rebid to a more desirable bidder. Gull Airborne Instruments, Inc. v. Weinberger, 694 F.2d 838, 846 (D.C.Cir. 1982) (if a contract has been satisfactorily performed, there is no justification for re-awarding the contract to a more deserving bidder). Because the contract here has been substantially completed, an injunction barring our use of the past performance evaluation in this contract is not a realistic remedy. Therefore, we dismiss as moot Forestry's claim for injunctive relief barring use of the past performance evaluation in the protested contract.

Forestry Surveys and Data v. The United States, 44 Fed. Cl. 485, 491-91 (1999) (some citations omitted). Like in Forestry Surveys and Data, the DTS contract is "substantially completed" and there is now a continuing re-procurement to select a follow-on contractor in time to make a smooth transition from the current contract to the follow-on contract without disruption to DTS-assisted travel. Accordingly, "it is impossible, or at the least imprudent, for the court to order that the contract be rebid to a more desirable bidder." Id. Therefore, Carlson's claim for injunctive relief is moot and there is no basis upon which to reopen the judgment. See, e.g., James Luterbach Construction Co., Inc. v. Adamkus, 781 F.2d 999, 602 (7th Cir. 1986); Owen of Georgia v. Shelby County, 648 F.2d 1084, 1094 (6th Cir. 1981); Dan Caputo Co. v. Russian River County Sanitation District, 749 F.2d 571, 574 (9th Cir. 1984).

## CONCLUSION

Carlson has failed to establish the elements required to obtain relief from judgment under RCFC 60(b)(2), RCFC 60(b)(3), or any other section of RCFC 60(b). Accordingly, Carlson's motion should be denied.

DATED: January 26, 2006 Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

/s/ David A. Levitt
DAVID A. LEVITT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: 202-307-0309
Fax: 202-514-7965

CERTIFICATE OF FILING

I hereby certify that on January 26, 2006, a copy of the foregoing OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/S/ David A. Levitt

# EXHIBIT I

NORTHROP GRUMMAN
Mission Systems

Northrop Grumman Space & Mission Systems Corp.
Mission Systems
12900 Federal Systems Park Drive
Fairfax, VA 22033-4411

TRANSMITTED ELECTRONICALLY

September 22, 2005

Department of The Army
Army Contracting Agency
Information Technology, E-Commerce
And Commercial Contracting Center
2461 Eisenhower Avenue
Alexandria, VA 22331-7000

ATTENTION: Ms. Peggy Butler, Contracting Officer

SUBJECT: Intellectual Property

REFERENCES: (a) Contract No. DAMT01-98-D-1005
(b) Delivery Order No. 0010
(c) Discussions between Northrop Grumman and the PMO-DTS held September 21, 2005

Dear Ms. Butler:

Northrop Grumman Space & Mission Systems Corporation, operating through Northrop Grumman Mission Systems Sector, Information and Technical Solutions Division is pleased to follow-up to our reference (c) discussion. The question has been asked whether the Department of Defense ("DoD") owns the Defense Travel System ("DTS") software, including the Gelco Travel Manager software.

The DTS software includes software developed under the DTS contract by Northrop Grumman and software licensed from Gelco. Ownership rights in software developed under a DoD contract is governed by DFARs clause 252.227-7014. While in accordance with this clause, Northrop Grumman owns the software Northrop Grumman developed under the DTS contract, the DoD has perpetual, unlimited rights and license to use the software Northrop Grumman developed under the DTS contract in any manner and for any purpose whatsoever and to have or authorize others to do so. Northrop Grumman's and the DoD's rights in the DTS software are subject to Gelco's Travel Manager Source Code License.

Gelco's Travel Manager Source Code License grants a personal, perpetual, exclusive license to Northrop Grumman to use the Gelco software to develop/change, deploy travel and expense software and services for use by the United States Department of Defense as part of the Defense Travel System. Northrop Grumman may also

sublicense the license to a third party provided the third party agrees in writing to be bound by the terms of the license.

Gelco prohibits assignment of the license without prior written consent except however, Northrop Grumman may assign the license to the Department of Defense for the DTS project. Should Northrop Grumman not win the recompete of DTS, and upon request of the DoD, Northrop Grumman will assign the Gelco license to the DoD, at no cost to the DoD, upon conclusion of Northrop's Grumman's current DTS contract. Upon assignment, the DoD acquires all the rights previously given to Northrop Grumman as detailed above.

Should you have any questions or require additional information, please contact the undersigned via telephone at (703) 968-2220, via facsimile at (703) 968-2205, or via e-mail at Charlene.Fines@ngc.com.

Sincerely,

Charlene C. Fines

Charlene C. Fines
Contract Manager

cc: Sharon Roberts/DTS-PMO

NORTHROP GRUMMAN
Mission Systems

Northrop Grumman Space & Mission Systems Corp.
Mission Systems
12900 Federal Systems Park Drive
Fairfax, VA 22033-4411

TRANSMITTED ELECTRONICALLY

September 23, 2005

Department of The Army
Army Contracting Agency
Information Technology, E-Commerce
And Commercial Contracting Center
2461 Eisenhower Avenue
Alexandria, VA 22331-7000

ATTENTION: Ms. Peggy Butler, Contracting Officer

SUBJECT: DTS Hardware

REFERENCES: (a) Contract No. DAMT01-98-D-1005
(b) Delivery Order No. 0016
(c) Discussions between Northrop Grumman and the PMO-DTS held September 21, 2005

Dear Ms. Butler:

In follow-up to our reference (c) discussions, Northrop Grumman Space & Mission Systems Corporation, operating through Northrop Grumman Mission Systems Sector, Information and Technical Solutions Division (Northrop Grumman) agrees that should Northrop Grumman not win the recompete of DTS, upon conclusion of Northrop's Grumman's current DTS contract and at the request of the DoD, Northrop Grumman will assign the title of the DTS Production System Hardware acquired by Northrop Grumman under reference (b) to the DoD. The aforementioned Hardware shall be assigned at its then-current state ("as is"). The DoD shall assume all costs, risk and liability associated with physical removal and transfer of the equipment as well as appropriate maintenance agreements.

Should you have any questions or require additional information, please contact the undersigned via telephone at (703) 968-2220, via facsimile at (703) 968-2205, or via e-mail at Charlene.Fines@ngc.com.

Sincerely,

Charlene C. Fines

Charlene C. Fines
Contract Manager

cc: Sharon Roberts/DTS-PMO