# United States Court of Appeals for the Federal Circuit

05-5051

CW GOVERNMENT TRAVEL, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,

Defendant-Appellee.

## Judgment

*ON APPEAL from the* UNITED STATES COURT OF FEDERAL CLAIMS

*in CASE NO(S).* 03-CV-1274

*This CAUSE having been heard and considered, it is*

*ORDERED and ADJUDGED:*

AFFIRMED

*ENTERED BY ORDER OF THE COURT*

*DATED* DEC - 6 2005

Jan Horbaly /fp

*Jan Horbaly, Clerk*

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

By: [signature] Date: 1/27/06

**Issued as Mandate: JAN 27 2006**

**COSTS:**

Printing ........ $131.20

Total ........ $131.20

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-5051

CW GOVERNMENT TRAVEL, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,

Defendant-Appellee.

---

DECIDED: December 6, 2005

---

Before LOURIE, CLEVENGER, and LINN, Circuit Judges.

CLEVENGER, Circuit Judge.

Plaintiff-appellant CW Government Travel, Inc. ("Carlson") appeals the judgment of the United States Court of Federal Claims in favor of defendants-appellees, the United States ("government") and Northrop Grumman Space & Mission Systems Corporation ("Northrop Grumman"). Carlson protested modifications to contract number DAMT01-98-D-1005 ("DTS DTR-6 contract") between the government and Northrop Grumman, alleging that the modifications constituted a violation of the Competition in Contracting Act ("CICA"), 41 U.S.C. § 253(a), and seeking a permanent injunction of the restructured contract.

Before the Court of Federal Claims, the government and Northrop Grumman, as defendant-intervenor, filed a motion to dismiss, or in the alternative, for summary judgment. Carlson opposed and filed a cross-motion for summary judgment. The Court of Federal Claims granted the government's motion in part and denied it in part and likewise granted Carlson's motion in part and denied it in part. With respect to the portion of the contract intended to procure a computerized travel management system, the court determined that there were issues of fact as to whether the contract modifications violated CICA. However, the court ruled that, even assuming a CICA violation, Carlson had not established a right to injunctive relief. As Carlson sought no other relief, the court granted the government's motion with regard to that portion of the contract. CW Gov't Travel Inc. v. United States, 61 Fed. Cl. 559 (2004) ("Summary Judgment").

Carlson moved for reconsideration and modification of the court's judgment pursuant to Rule 59; the court denied that motion, CW Government Travel, Inc. v. United States, 63 Fed. Cl. 459 (2005) ("Reconsideration"), and judgment was entered on January 18, 2005, CW Government Travel, Inc. v. United States, No. 03-1274 (Fed. Cl. Jan. 18, 2005). Carlson timely appealed the judgment to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3). Because we find that the Court of Federal Claims properly exercised its equitable discretion in declining to award injunctive relief, we affirm.

I

In 1997, the Department of Defense ("DOD") solicited bids for the DTS DTR-6 contract, which was intended to procure a computerized travel management system, the "Common User Interface" or CUI, that would essentially result in a world-wide paperless, automated, and centralized travel management system. Summary Judgment, 61 Fed. Cl. at 563. In 1998, the Department awarded the contract to BDM International Inc., which was acquired by TRW in 1998, and which in turn was purchased by Northrop Grumman in 2002.[1]

The contract was a five-year fixed-price requirements contract, with three one-year options. Id. at 564. The bid solicitation required that the contractor develop the CUI using commercial off-the-shelf products and assumed that the contractor would install software on user desktops at each military location in order to achieve connectivity, such that the contractor would have to create interfaces with numerous other DOD software products and networks. Id. at 563. Under the initial solicitation, operational deployment of the system was to commence at the first DOD site in Defense Travel Region 6 ("DTR-6") within 120 days of the contract award, while the system was to be fully operational and integrated world-wide, at approximately 11,000 DOD sites, by September 2001. Id. at 564. However, Northrop Grumman's performance was plagued by numerous delays and substantial cost over-runs, such that the contract was projected to cost over fifty percent more than its initial budget and was four years behind schedule.

---

[1] Because the Court of Federal Claims decision, the briefs, and the record refer to TRW and Northrop Grumman interchangeably, we will simply refer to the contractor as "Northrop Grumman."

In 2001, Northrop Grumman and the government began negotiations to restructure the contract, resulting in Contract Modifications 25, 27, and 29 ("modifications"). Id. The modifications altered portions of the contract relating to both traditional travel services and the computerized travel management system. Meanwhile, Carlson had obtained traditional travel services contracts with the United States Army, and in 2003, along with Northrop Grumman and a third party, was awarded a contract by the General Services Administration ("GSA") for web-based travel systems for all government agencies.

Carlson did not immediately protest the contract modification, but on May 23, 2003, filed a complaint with the Court of Federal Claims. Count I of the amended complaint alleged that three fundamental changes to the contract required competitive procurement under CICA: (1) addition of traditional travel services; (2) modification of the requirements for the CUI; and (3) restructuring of the pricing provisions of the contract. Reconsideration, 63 Fed. Cl. at 461. In Count II of the amended complaint, Carlson sought a permanent injunction, requesting that the court enjoin Northrop Grumman's performance of the DTS DTR-6 contract and that the court require the government to issue a new solicitation for the work encompassed in the out-of-scope modifications.

The government filed a motion to dismiss or, alternatively, for summary judgment, arguing that Carlson had waived its right to challenge the restructuring of the DTS DTR-6 contract, that Carlson lacked standing to challenge the modifications to the contract, and that the modifications to the contract were within the scope of the original contract, such that they did not require a new competitive procurement. Carlson

opposed and filed a cross-motion for summary judgment. Both parties filed statements of fact based upon the administrative record and supporting materials. The court granted both parties' motions in part and denied both parties' motions in part.

With respect to the new contract requirements for traditional travel services, the Court of Federal Claims found that the restructured contract exceeded the scope of the original contract, and thus violated CICA, and that Carlson had standing to obtain redress. Summary Judgment, 61 Fed. Cl. at 570-74. Finding that the changeover to a new service provider would not disrupt traditional travel functions, the court granted the injunction requested by Carlson and ordered that the agency procure traditional travel services in DTR-6 through a competitive bid process. Id. at 574-76. Thus, Carlson prevailed on Counts I and II with respect to the traditional travel services. The government does not appeal this decision.

With respect to the modifications of the CUI requirements and the pricing modifications, the Court of Federal Claims determined that there were issues of fact as to whether these modifications violated CICA but ruled that, even assuming as such, Carlson had not established its right to injunctive relief. Id. at 576-77. Assuming that CICA had been violated, the court granted Carlson a presumption of success on the merits and irreparable harm. Id. at 577-78. However, the court determined that because so much time and money had been spent on the contract, and because the contract was already substantially delayed, the defendants would be substantially harmed if further performance were enjoined. Id. at 578. Further, the court determined that the public interest supported continued performance. Id. at 578-79. Thus, the court found that, even assuming Carlson's success on the merits, the balance of

hardships and the public interest outweighed any irreparable harm to Carlson, and thus injunctive relief was not warranted. Id. at 579. Consequently, the court granted summary judgment in favor of the government on Count II of the amended complaint with respect to these modifications.

Carlson moved for reconsideration and modification of the court's judgment pursuant to Rule 59, arguing, among other points, that the decision amounted to an impermissible refusal to enforce CICA, that the issue of injunctive relief was not before the court on summary judgment, and that Carlson had no opportunity to develop the necessary factual record for the court to undertake an analysis of whether an injunction was appropriate. See Reconsideration, 63 Fed. Cl. 459. The court denied Carlson's Rule 59 motion.

On appeal, Carlson reiterates the arguments made to the Court of Federal Claims in its Rule 59 motion. Carlson argues that the court's decision that injunctive relief was not warranted runs afoul of the Supreme Court's decision in United States v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483 (2001). In particular, Carlson argues that because the court assumed that CICA had been violated, the decision not to award an injunction amounted to an impermissible decision not to enforce CICA.

Carlson also claims that the court erred in addressing whether injunctive relief was inappropriate, arguing that the government had not moved for summary judgment on those grounds and that neither Carlson nor the government had submitted evidence relevant to the balance of hardships and the public interest. Finally, Carlson argues that the court erred in failing to hold an evidentiary hearing to determine the facts relevant to assessing whether an injunction was warranted.

II

In deciding whether a permanent injunction should issue, a court considers: (1) whether the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. PGBA v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n. 12 (1987)). This court will defer to a decision of the Court of Federal Claims to grant or deny injunctive relief, only disturbing such a decision when it amounts to an abuse of discretion. Id. at 1223-24 (citing Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1379 (Fed. Cir. 2000)).

An abuse of discretion may be established by showing that the court "made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact finding." Int'l Rectifier Corp. v. Samsung Elecs. Co., 361 F.3d 1355, 1359 (Fed. Cir. 2004) (citing Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 772 (Fed. Cir. 1993)). A finding of fact is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Maritrans Inc. v. United States, 342 F.3d 1344, 1351 (Fed. Cir. 2003) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

III

Carlson argues that the Supreme Court's decision in Oakland Cannabis requires that, where there has been violation of a statute, relief of some sort must be awarded, and that when injunctive relief is the only relief possible, or the only relief sought, it always must be granted, regardless of a court's determination that the public interest would be ill-served by issuance of an injunction.

First of all, contrary to Carlson's arguments, Oakland Cannabis does not abrogate the traditional discretion of a trial court to determine whether or not injunctive relief is available. Rather, the Supreme Court found that trial courts retain their traditional discretion "unless a statute clearly provides otherwise." Oakland Cannabis, 532 U.S. at 484. Neither CICA nor 28 U.S.C. § 1491, which grants the Court of Federal Claims jurisdiction over bid protests, "clearly provides" that the court has no discretion over equitable relief. Indeed, Carlson does not argue that CICA itself removed equitable discretion from the court. Further, in PGBA, we expressly upheld the right of the Court of Federal Claims to refuse injunctive relief in a bid protest case, holding that section 1491 "does not automatically require a court to set aside an arbitrary, capricious, or otherwise unlawful contract award." 389 F.3d at 1225.

While the Supreme Court did not abrogate the traditional equitable discretion of trial courts, it noted that the courts' discretion is not absolute. In particular, a court may not consider, when deciding whether to award an injunction, factors that Congress has already specifically deemed inapplicable to the statute. Oakland Cannabis, 532 U.S. at 497-98. Carlson argues that the Court of Federal Claims did just that when it considered whether enjoining the contract in suit was in the public interest. That is,

Carlson argues that since CICA requires agencies to conduct full and open competition for their contracts, Congress must have determined that performance of an uncompetitive contract never could be in the public's best interest. Thus, Carlson essentially asks us to find that the Court of Federal Claims is absolutely barred from considering the public interest when determining whether or not to enjoin a contract procured in violation of CICA.

Nothing in Oakland Cannabis suggests the sweeping effect Carlson would assign to that decision. Rather, Oakland Cannabis indicates that, where Congress has specifically determined that a particular exemption to a statute is not appropriate, in that case, a medical necessity exemption to a statute prohibiting the manufacture and distribution of marijuana, a court may not decline to award injunctive relief on the basis of that exemption. See id. at 493, 498-99. Carlson does not point to a specific exemption, rejected by Congress during enactment of CICA, upon which the court's decision not to award injunctive relief now relies.

Further, Congress considers the public interest in adopting every statute. Under Carlson's reading, Oakland Cannabis would remove the "public interest" prong from an injunctive relief analysis for violation of any statute. There is simply no indication in Oakland Cannabis that the Supreme Court intended to so drastically alter the traditional equitable discretion of trial courts. In short, Carlson has not shown that the Court of Federal Claims ran afoul of Oakland Cannabis when it determined that, even assuming that the contract in suit violated CICA and granting Carlson a presumption of success on the merits, the balance of hardships and the public interest outweighed any harm to Carlson, such that injunctive relief was not warranted.

IV

Carlson also argues that the court erred in granting summary judgment to the government on the basis of the unavailability of equitable relief, as the government did not raise this issue in its summary judgment motions. Thus, Carlson argues that it was not afforded an opportunity to proffer material evidence or to address the legal basis for the court's decision. However, this court has repeatedly upheld the power of trial courts to enter summary judgment sua sponte or in favor of a non-movant. Massey v. Del Labs., Inc., 118 F.3d 1568, 1572 (Fed. Cir. 1997); Int'l Visual Corp. v. Crown Metal Mfg., Inc., 991 F.2d 768, 770 (Fed. Cir. 1993).

Further, Carlson had ample opportunity to address the issues pertaining to equitable relief. First of all, Carlson, in its own motion for summary judgment, argued that "the Court should . . . order that the DTS DTR-6 Contract be terminated and the [DOD's] requirement for a web-based end-to-end travel management system and traditional travel services . . . be promptly procured under fair and open competition." J.A. at 198-99. In opposing Carlson's summary judgment motion, the government argued that injunctive relief was not warranted, as it would require forfeit of all money paid to Northrop Grumman under the contract, payment of termination fees, discontinuance of the CUI, and delay in reinstatement of a functional program. In addition, the parties briefed many of the same issues when addressing the government's laches argument. In particular, the government argued that Carlson's failure to protest the contract modification for fourteen months would result in material prejudice to the government, as delays resulting by injunctive relief would cause the government "serious continuing economic harm since . . . the Government has spent

millions of dollars developing and deploying" the CUI. J.A. at 173. Thus, even though the government did not move for summary judgment on the grounds ultimately relied upon by the court, Carlson had ample opportunity to address those issues.

Carlson also argues that the court erred in failing to grant an evidentiary hearing to determine the facts necessary to assess whether injunctive relief was warranted. However, parties to bid protest actions are not necessarily entitled to evidentiary hearings. The statute which confers upon the Court of Federal Claims jurisdiction over bid protests, 28 U.S.C. § 1491(b)(3), "expressly requires the trial court to give 'due regard' to 'the need for expeditious resolution of the action.'" Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (quoting 28 U.S.C. § 1491(b)(3) (2001)). Summary judgment decisions under RCFC 56.1 are generally made on the administrative record, "as may be supplemented consistent with RCFC 56(a) or (b)." Id. With respect to the issue of relief, the court may, if it chooses, supplement the administrative record with an evidentiary hearing. See, e.g., PGBA, 389 F.3d at 1223. However, the decision to hold an evidentiary hearing is within the court's discretion, and absent abuse of that discretion, failure to hold such a hearing is not reversible error.

In addition, in this case, Carlson was given ample opportunity to supplement the record. As noted above, Carlson requested injunctive relief on the CUI portion of the contract in its own summary judgment motion. Further, Carlson was permitted to submit any evidence related to the motions for summary judgment.[2] Indeed, Carlson submitted

---

[2] Carlson argues that the court's determination that material issues of fact existed with respect to the summary judgment motions indicates that the record was not sufficiently developed. However, determining whether there was a fundamental change to the contract involves very different facts than determining whether the balance of hardships and the public interest warrant enjoining performance of the contract.

five volumes of evidence in support of its summary judgment motion. Thus, Carlson had ample opportunity to further inform the court as to how the balance of hardships and the public interest warranted enjoining performance of the contract.

Finally, based upon the evidence before the Court of Federal Claims at the time of its decision, the court's determination that injunctive relief was not warranted was not an abuse of discretion. At the time of Carlson's complaint, the contract was in its fifth of eight years of performance, and at the time of the court's decision, its sixth year of performance. Summary Judgment, 61 Fed. Cl. at 578. The contract is thus now in its seventh year of performance. The court found that a large percentage of the work on the contract has been completed and that both the government and Northrop Grumman have expended significant time, effort, and resources. Id. Evidence also indicated that the contract is already delayed beyond its initial deadlines, which proved to be overly optimistic, and that an injunction would delay the contract even further. Id. The evidence on which the court relied also indicated that Northrop Grumman is the owner of the CUI system that it developed such that, if the contract were enjoined, Northrop Grumman would walk away with the system and the government would have to recommence development of the system. Id. In the meantime, the CUI would be suspended. Id. at 578-79. In addition, evidence indicated that no contractor has a system meeting the contract requirements and ready to be deployed. Indeed, Carlson concedes that it could not immediately take over the contract, as its web-based travel system does not meet the contract requirements and would require modification.

Thus, the Court of Federal Claims concluded that, even granting Carlson a presumption of success on the merits and irreparable harm, the balance of hardships

and the public interest weighed against enjoining further performance of the DTS DTR-6 contract. That determination did not constitute a clear error of judgment, nor was it based on an error of law or a clearly erroneous finding of fact. As such, the court's decision not to enjoin performance of the contract did not constitute an abuse of discretion.

V

As a final matter, we must address Carlson's request to supplement the record on appeal. While this appeal was pending, on September 29, 2005, the Investigations Subcommittee of the United States Senate's Committee on Homeland Security and Governmental Affairs ("Subcommittee") held hearings regarding the benefits and costs of the DTS DTR-6 contract. Carlson asserts that, during these proceedings, a DOD official informed the Subcommittee that the government owns the CUI and its software, such that if the contract were to be terminated, the government would be able to turn over the software developed by Northrop Grumman to another contractor. This testimony, Carlson argues, directly contradicts representations made by the government to the Court of Federal Claims that if the contract were to be terminated, the government would have to recommence development of the system. If the testimony before the Subcommittee is true and accurate, it could undermine the determination of the Court of Federal Claims that enjoining the contract would cause substantial cost to the government and delays in implementing the CUI system. Thus, Carlson requested leave to supplement the record with the testimony before the Subcommittee, in an effort to persuade this court that the decision of the Court of Federal Claims amounted to an abuse of discretion.

However, the record on appeal is generally limited to that which was before the trial court. Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091, 1116 (Fed. Cir. 2000); Fed. R. App. P. 10(a). Our sister circuits have occasionally granted leave to supplement the record on appeal, but any authority to enlarge the record "is rarely exercised and is a narrow exception" to the general rule limiting the record to that considered below. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993); see also, Ross v. Kemp, 785 F.2d 1467, 1474-76 (11th Cir. 1986).

Further, as conceded at oral argument, Carlson may present the Subcommittee testimony to the Court of Federal Claims as part of a Rule 60(b) motion to reopen the judgment. In particular, under RCFC 60(b)(2), Carlson may, within a reasonable time not to exceed one year from entry of judgment, move to reopen the judgment of the Court of Federal Claims for newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b). As judgment was entered on January 18, 2005, Carlson's opportunity to file a Rule 60(b) motion with the Court of Federal Claims has not yet passed. Thus, although we deny Carlson's motion to supplement the record, and we affirm the decision of the Court of Federal Claims on appeal, we do so without prejudice to any right Carlson has to pursue its concern about the effect of the testimony before the Senate on the correctness of the decision of the Court of Federal Claims that equitable relief as requested is not warranted.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Jethin Brown Date: 1/27/06

BILL OF COSTS (File original and three copies with the Clerk within 14 days of judgment.)

Docket No(s): 05-5051 Caption: CW Government Travel v. U.S.

The Clerk is requested to tax the following costs against: CW Government Travel

| ITEM | Number of copies | Number of pages | Actual cost | Allowable cost | Total billed | Total taxed |
|---|---|---|---|---|---|---|
| Docketing Fee (if paid in this court) | xxxxx | xxxxx | | | | |
| Table of Designated Materials (original) | xxxxx | | | 6.00 | | |
| Table or Compilation of Designated Materials (copying and collating) | | | | 0.08 | | |
| Brief (original) | xxxxx | | | 6.00 | | |
| Brief (cover and binding) | | xxxxx | | 2.00 | | |
| Brief (copying and collating) | | | | 0.08 | | |
| Appendix (original—table of contents) | xxxxx | | | 6.00 | | |
| Appendix (covers and binding) | | xxxxx | | 2.00 | | |
| Appendix (copying and collating) | | | | 0.08 | | |
| Reply Brief (original) | xxxxx | | | 6.00 | | |
| Reply Brief (covers and binding) | | xxxxx | | 2.00 | | |
| Reply Brief (copying and collating) | | | | 0.08 | | |
| Other (describe): Stipulated Costs | | | | | | |
| GRAND TOTALS | | | | | $131.20 | $131.20 |

FILED U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT DEC 21 2005 JAN HORBALY CLERK

RECEIVED DEC 21 2005 United States Court of Appeals For The Federal Circuit

CERTIFIED COPY I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE. UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT By: Date:

City/County of Washington ) District/State of Columbia ) SS

I, John W. Chierichella, swear under penalty of perjury that the services for which costs are taxed were necessarily perfor[med] itemized statements of the costs incurred or invoices are attached. Copies of this bill were served on all parties.

Signature: [signature] 12 21 05

# PROOF OF SERVICE

I hereby certify, under penalty of perjury, that on December 21, 2005, I caused a true and correct copy of the foregoing NORTHROP GRUMMAN'S BILL OF COSTS to be served, via first class mail, upon the following:

Lars E. Anderson
Venable LLP
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182

David A. Levitt
Department of Justice
1100 L Street, NW
Room 1138
Washington, DC 20005

David S. Gallacher