# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CW GOVERNMENT TRAVEL, INC.,**<br><br>**Plaintiff,**<br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant,**<br>**and**<br><br>**NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,**<br><br>**Intervenor.** | **Case No. 03-1274C**<br><br>**Judge George W. Miller** |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S BRIEF ON DOD'S INTENTIONS REGARDING REPROCUREMENT OF DTS REQUIREMENTS

In its February 13, 2006 Order, the Court asked CW Government Travel, Inc. ("Carlson") to file a response to Defendant's brief and indicate if additional information is necessary to determine the Department of Defense's ("DoD's") current efforts and intentions regarding reprocurement of the Defense Travel System ("DTS") requirements.

Predictably, the Government finally acknowledges that it intends to perpetuate the sole source contract with Northrop Grumman Space & Mission Systems Corporation ("Northrop") to perform DTS requirements in violation of the Competition in Contracting Act ("CICA"), 10 U.S.C. § 2304, et. seq.; 41 U.S.C., § 253 et. seq. As set forth below, Carlson believes that additional information is essential to determine DoD's intentions regarding the reprocurement of DTS requirements and the validity of such intentions.

A sole source extension of the current DTS Contract with Northrop is not justified under CICA or the Federal Acquisition Regulation ("FAR"). The fact that the Government has simply failed to take the necessary action to prepare for and conduct a timely competitive reprocurement of DTS requirements cannot justify the sole source extension. The Government's brief and declaration provide only ambiguous statements of potential competitions that may be conducted in 2006 for very minor DTS requirements, while seeking no competitive alternatives to sole sourcing the majority of DTS requirements to Northrop. There is no record to establish that delaying completion of DTS requirements in order to conduct a competitive procurement creates any dire consequences for the Government. Limited discovery and an evidentiary hearing are essential to provide the Court with complete and accurate facts.

## I. THE GOVERNMENT REVEALS A CLEAR INTENT TO CONTINUE ITS VIOLATION OF CICA

The DoD has had almost eight years to plan and execute a follow-on competitive procurement for continuing DTS end-to-end travel management system requirements. Despite this, Colonel Brenda Sue Johnson, the Program Director of the Program Management Office of the Defense Travel System ("PMO-DTS"), reveals that DoD has not done so. Consequently, DoD plans to issue another sole source contract to Northrop for at least another year to complete the work it has not been able to complete in eight years. Colonel Johnson provides six reasons (labeled "a" through "f") to justify her "intent to seek a 12-month, sole source extension of the current DTS contract." Johnson Decl. at 7. However, all six reasons relate directly to (1) the fact that contract performance continues to lag way behind schedule, and (2) the PMO-DTS has performed none of the necessary advance planning to competitively select a contractor who could commence work on October 1, 2006 to complete the DTS requirements that could not be completed prior to the expiration of the eighth year of the current DTS Contract. Johnson Decl.

at 7-8. None of the reasons enumerated by Colonel Johnson for seeking a sole source extension of Northrop's DTS Contract justify a sole source contract under CICA or the implementing regulations. FAR Part 6.

First, Colonel Johnson concludes that DoD intends to cite 10 U.S.C. § 2304 (c)(1) as authority for the sole source contract, claiming that Northrop is the only source that can provide the necessary services. It is clear from her enumerated reasons, however, that to the extent Northrop is in that position, it is in that position only because the Government has not taken timely action to competitively procure a replacement contract that could commence on October 1, 2006.[1] In CICA, the Congress specifically rejected the reasoning used by Colonel Johnson. The Statute, 41 U.S.C.A. 253 (f)(5), provides:

> In no case may an executive agency —
>
> (A) Enter into a contract for property or services using procedures other than competitive procedures on the basis of the lack of advance planning . . . .

In addition, FAR 6.301(c) provides:

> Contracting without providing for full and open competition shall not be justified on the basis of (1) a lack of advance planning by the requiring activity . . . .

Thus, CICA and the FAR specifically prohibit a failure to conduct a competitive procurement because the Agency has delayed in doing so to the point that there is an urgent need for the product or service. In other words, while in some circumstances an urgent need for a product or service can justify a noncompetitive procurement to avoid delay, such a situation cannot arise because the Agency failed to act in a timely manner by planning in advance for the competitive

---

1 Colonel Johnson does not contend that only Northrop is capable of performing DTS requirements, but rather that Northrop is the only contractor that could commence or continue work on October 1, 2006.

procurement. The PMO-DTS has had many years to plan and conduct a competitive procurement for a follow-on contract to commence on October 1, 2006, in order to develop interfaces between the DTS and the approximately 18 DoD business systems that remain to be connected.

Moreover, there is no evidence that completing the integration of the DTS to the remaining DoD business systems in Fiscal Year 2007 approaches an urgent and compelling requirement that would justify a sole source award to Northrop, even absent the Government's lack of advance planning. DoD's commercial travel system has functioned for many decades without the DTS replacement of all legacy systems, and it can continue to do so for another year.[2] The only harm alleged due to such delay is the claim that DoD will incur some unspecified expense in maintaining the remaining legacy systems for another year while awaiting the completion of the DTS. That consequence cannot justify a sole source contract.

Further, Colonel Johnson does not contend that Northrop is the only contractor capable of developing interfaces between the DTS and DoD business systems. Indeed, any such contention would be blatantly false. There are dozens of DoD contractors that are capable of such computer software development and integration, including Carlson. Moreover, the Government now admits that it has a "perpetual unlimited license" in all the technical data and computer software developed by Northrop to create such interfaces and that the technical data and computer software could be made available to a successor contractor. Therefore, the Government cannot claim that it was or is impossible to have competitively procured a competent contractor to complete the DTS integration requirements that Northrop is unable to complete by September

---

[2] The DTS only covers commercial travel, not troop deployments. Therefore, any attempt to justify sole source performance of DTS requirements because the United States is at war is simply bogus.

30, 2006. The truth is that because the Government has sat on its hands and taken no action to date to competitively procure a follow-on contract to commence on October 1, 2006, there would simply be further delay in developing interfaces between the DTS and the remaining 18 DoD business systems if they comply with CICA.

The belated preliminary procurement steps cited by Colonel Johnson as evidence that it "may" compete some portions of the current DTS Contract requirements are essentially meaningless. In the first instance, the requirements described by the Government represent de minimis portions of the DTS Contract. The Help Desk and Training portions represent no more than three percent of the requirements and are tasks that Northrop likely desires to be relieved of or hopes to get paid more to perform these services.[3] In addition, it is inconsistent for the PMO-DTS to argue, on the one hand, that it is in the best interest of the Government to competitively procure the first set of DTS requirements, DTS Help Desk and Training, from third parties who are not familiar with the DTS (rather than have Northrop continue providing this service for free) while, on the other hand, refuse to consider having a competent contractor perform the remaining DTS Contract requirements that Northrop has been unable to successfully perform in eight years.

The second set of DTS requirements that Colonel Johnson states that DoD may procure separately from the sole source extension of the DTS Contract with Northrop is vague. The technical requirements described under the heading "Travel Management Operations and Sustainment" appear to relate to several well known defects in the DTS. The current DTS connection to Global Distribution Systems ("GDS") apparently does not accurately capture and

---

[3] Providing a 24/7 Help Desk to assist DoD travelers in using the DTS is a requirement that currently Northrop has to provide at no charge. Thus, moving this requirement to a separate contract means the Government will pay someone (probably Northrop) to provide what should be a "free" service — i.e., included in the tens of millions already paid to Northrop to operate and maintain the system.

display to DoD travelers all available flights and airfares. Consequently, DoD travelers frequently book higher priced airfares than those available to Government travelers. The other technical requirement is an interface to the Airlines Reporting Corporation (the "ARC"). Such interface between the DTS and the ARC apparently is intended to correct another DTS defect: travel service contractors report all the ARC information to the Government, but the DTS cannot compile this data when received from multiple travel service contractors for the same customer. The failure of the DTS to provide the data desired by DoD activities on completed air travel has caused the Army to require travel service contractors to "touch" every DTS transaction to enter the missing data, resulting in a higher fee that negates the savings intended from using the DTS. Once again, it is inconsistent for Colonel Johnson to indicate that DoD may issue a solicitation to contract with a third party to correct existing defects in the DTS, but at the same time contend that Northrop should receive a sole source extension to perform the remaining requirements under the DTS Contract.

There are commercial software products available that connect and accurately capture all the flight and pricing information in a GDS. Other available eTravel Systems do not have difficulty in providing the Government with the information available in the ARC. Therefore, without substantially more information, it is unclear exactly what technical requirements Colonel Johnson is considering the possibility of procuring under a separate contract. It is also unclear why contracting with third parties to correct defects in the DTS is apparently acceptable to the PMO-DTS, but it is unacceptable to contract with third parties to complete the other DTS requirements that Northrop is unable to complete prior to October 1, 2006.

## II. THE COURT SHOULD ACCORD LITTLE CREDIBILITY TO THE GOVERNMENT'S BRIEF OR SELF–SERVING DECLARATION FROM THE DIRECTOR OF THE PMO-DTS

In its brief, the Government exaggerates the claims made in Colonel Johnson's Declaration. Therefore, the Court should focus on the Declaration, and not the characterization or "spin" placed on it by the Government's brief. Colonel Johnson's Declaration does not commit the Government to any firm procurement plans other than Colonel Johnson's intent to seek approval for at least a 12-month sole source extension of Northrop's current DTS Contract and another $20 million. Nor does Colonel Johnson's Declaration support a contention that Northrop is the only contractor capable of performing the remaining DTS Contract requirements. Colonel Johnson evidences no firm intent, much less commitment, to issue solicitations and competitively procure any of the DTS Contract requirements. The requirements she mentions that may be the subject of solicitations in 2006 represent de minimis requirements in the current DTS Contract. Moreover, the delay in issuing any such solicitations will likely also result in the continued sole source performance by Northrop of even those requirements after the expiration of the DTS Contract on October 1, 2006.[4]

In weighing the credibility to be accorded the Government's current representations, the Court is urged to consider the many previous representations by the Government that proved to be misleading. Essentially, every time the DTS Program has been challenged, the PMO-DTS has responded that the DTS Program is substantially complete. In August 2001, in an attempt to justify the wholesale, sole source restructure of the DTS Contract, the then-Director of the PMO-

---

4 The potential schedule given by Colonel Johnson for competitively awarding a contract to correct the identified defects in the DTS is not realistic, given the need to include considerable DTS technical data and computer software in such a solicitation and provide adequate time for qualified offerors to prepare technical proposals. The fact that the RFI was not issued until January 31, 2006, with extremely vague requirements and that interested parties were only allowed two weeks to respond, raises questions concerning the sincerity of this effort.

DTS, Colonel Schaefer, claimed that the DTS had already achieved 91% of the required functionality. Exhibit 9, V697-701. When the DoD Inspector General issued a highly critical report in July 2002 (Exhibit 14) and recommended suspension of the DTS Program, the PMO-DTS represented that:

> DTS is currently operational at seven DoD sites, and available for use by thousands of DoD travelers. The current version of DTS meets the TDY travel system requirements.

Exhibit 14, V1182. The DoD Inspector General's Report specifically noted that the quarterly status reports issued by the PMO-DTS "did not always appear to report the 'true state' of the DTS program." Exhibit 14, V1157.

The GAO Report on the DTS Program, released on January 18, 2006, identified the inability of the DTS to properly display flight information and noted:

> PMO-DTS officials stated that the problem was corrected in an August 2005 release of the software. However, we found that the August 2005 release did not fully address this problem.[5]

When Carlson commenced this litigation, the Government introduced three Declarations that subsequently proved to misrepresent material facts. In mid-2004, Government representations regarding the status of the DTS, the ownership and control of the DTS, and the dire consequences predicted if performance of the DTS Contract by Northrop were enjoined for a competitive procurement, were exaggerated. That pattern continues with the Government's January 26, 2006 Opposition (at page 19) in which the Government argued that Carlson's Motion is moot because:

---

[5] GAO Report to the Congress entitled, "DOD Business Transformation: Defense Travel System Continues to Face Implementation Challenges," January 2006 at 3.

> … the DTS contract is "substantially completed" and there is now a continuing re-procurement to select a follow-on contractor in time to make a smooth transition from the current contract to the follow-on contract without disruption to DTS-assisted travel.

The Declaration submitted in response to the Court's Order reveals that the Government's latest representations to the Court were also misleading. Colonel Johnson's Declaration reveals that the DTS Contract is not substantially complete. The PMO-DTS is actually planning a sole source extension of Northrop's DTS Contract until at least September 30, 2007, and spending an additional $20 million to complete existing DTS requirements. The only "continuing re-procurement" taking place is some preliminary steps that may possibly result in the issuance of one or two solicitations during 2006, for minor DTS requirements, while Northrop continues to perform the vast majority of the DTS Contract requirements on a sole source basis.

The history of the DTS project and this case reveal that the PMO-DTS and the Government representatives say whatever they think is needed to withstand challenges to the program, depending upon the audience. That approach dictates the need for a thorough factual examination, including discovery and an evidentiary hearing.

## III. DISCOVERY AND AN EVIDENTIARY HEARING ARE REQUIRED

Colonel Johnson's Declaration raises more questions than it resolves about DoD's intentions and efforts regarding reprocurement of DTS requirements. Further, while Colonel Johnson is currently the Program Director, PMO-DTS, she indicates that the responsibility for the DTS Program and the PMO-DTS itself are in the process of being transferred to a newly-created DoD Business Transformation Agency. Thus, it is not clear what, if any, knowledge and authority Colonel Johnson has in regard to reprocurement of continuing DTS requirements. Moreover, determinations regarding any sole source extension of the current DTS Contract must

be made first by a Contracting Officer and then approved by the Head of a Procuring Activity. FAR Part 6. While Colonel Johnson indicates her intent to seek approval for a sole source extension of Northrop's DTS Contract, there is no indication that a Contracting Officer would or could make the necessary determinations for such a sole source extension. Colonel Johnson also vaguely describes possible ancillary procurements of minor DTS requirements that she is considering, but there is no indication that any firm procurement decisions have been made.

The Government fails to provide any information concerning the extent to which the mandatory efforts for advance planning, market research, or attempts to prepare specifications that would have permitted a competitive reprocurement of DTS requirements commencing on October 1, 2006 have, or have not, taken place. No contemporaneous documents have been produced that suggest that the Government made any good faith efforts to determine or implement necessary action to timely secure a competitive reprocurement of DTS requirements. Although a DoD official told the U.S. Senate on September 29, 2005, that upon the expiration of the current DTS Contract at the end of FY 2006, there would be a rebid of a "follow-on contract support to operate and maintain the system," apparently no efforts were made to fulfill that commitment. Although the Government has a perpetual unlimited license to make the technical data and computer software developed by Northrop available to successor contractors, there is no indication that the Government ever considered using its rights to the DTS data and software to foster competition for a competitive reprocurement.

There is also no explanation of the role being played by Northrop in regard to preparations for potential follow-on procurements of DTS requirements, such as those described by Colonel Johnson. If Northrop is participating in the preparation of potential solicitation requirements, then violations of prohibitions against organizational conflicts of interest may have

occurred. See FAR Subpart 9.5. Similarly, if Northrop has or is participating in preparing alleged justifications to support a sole source extension of Northrop's DTS Contract, then the validity of such an extension would be tainted. Discovery is required to determine Northrop's role in the determinations regarding reprocurement of DTS requirements.

Colonel Johnson indicates that if Northrop's DTS Contract is not extended until at least September 30, 2007, there will be a delay in replacing some existing DoD legacy systems used in travel management. There is no evidence (or even an allegation) that a delay of one year in replacing some DoD legacy systems or linking the DTS to other DoD legacy systems creates any sort of urgent and compelling situation that legitimately justifies a sole source contract in exception to CICA. The completion of the DTS is already five years late, and yet DoD travel needs continue to be met. There are approximately five million commercial trips each year by DoD travelers. If the mere fact that using a competitive procurement would delay replacement of some existing DoD business systems is sufficient to justify sole source procurements, there would never be a competitive procurement. Discovery is required to determine what, if any, adverse consequences would be incurred by the Government if the completion of outstanding DTS requirements is delayed for the time necessary to conduct a competitive procurement and whether such alleged adverse consequences are of the nature and severity that would justify an exception to CICA.[6] Moreover, the fact that there will not be a competitively-procured contract in place to commence performing DTS requirements on October 1, 2006, is entirely due to the

---

6 Since the issue involves a new contract action rather than an existing contract, we believe the standards that must be applied are the mandates of CICA and FAR Part 6, and only the exceptions to a full and open competition that are specifically authorized by statute and regulation, rather than a balancing of hardships and public interest that a Court normally applies if asked to enjoin performance of a previously awarded contract.

failure of the PMO-DTS and DoD procurement officials to do their job in a timely fashion, as required by statute and regulations.

In order to obtain accurate information concerning DoD's efforts and intentions regarding reprocurement of the DTS requirements and the issues noted above, the following discovery would be required:

- The production of documents related to or reflecting any plans, communications, or efforts by DoD to consider, prepare for, or implement a competitive re-procurement of the DTS requirements remaining after September 30, 2006.
- The production of documents related to or reflecting any plans, communications, or efforts by DoD or DoD contractors to advocate or attempt to justify a sole source extension of the Northrop DTS Contract beyond September 30, 2006.
- The production of documents identifying and describing the DTS Contract requirements that are anticipated to remain incomplete as of October 1, 2006, and the consequences if completion of those requirements is delayed.
- The Deposition of Colonel Brenda Sue Johnson to test the validity and accuracy of her Declaration and to address the missing or confusing information contained therein.
- The Deposition of the Contracting Officer(s) responsible for the current DTS Contract with Northrop and/or would be responsible for justifying and implementing any sole source extension or reprocurement of the DTS requirements.

- The Deposition of the responsible DoD official who will replace or supervise the Program Director, PMO-DTS, under the reorganization mentioned in Colonel Johnson's Declaration.

It is anticipated that, at the conclusion of this limited discovery, a short evidentiary hearing would be beneficial for the Court.

## IV. THIS LITIGATION IS NOT MOOT

Colonel Johnson's Declaration proves conclusively that this litigation is not moot and that the Government intends to continue its violation of CICA. Not only does the Government intend to give Northrop another sole source contract for $20 million and 12 months, but there is no reason to believe this extension will not be further extended if the DTS requirements are not completed after this money is spent and time has passed. Furthermore, Colonel Johnson suggests that after Northrop has completed the DTS requirements, DoD will finally competitively procure any new requirements for the DTS. Given the track record to date, it is likely that Colonel Johnson's successor will argue that since Northrop spent nine years and hundreds of millions of dollars completing the original DTS requirements, Northrop should be given a sole source contract at that stage for any changes or new DTS requirements.

The Government has had years to prepare to competitively reprocure the DTS requirements commencing on October 1, 2006, and has failed to perform the planning and take the necessary actions to conduct such a competitive procurement. The PMO-DTS and other Government officials totally restructured the original DTS Contract in secret during 2001 and concealed those contract modifications from the public for years — until November 2003. They have consistently misrepresented the status of the DTS Program to other DoD officials, the Congress, and this Court — with the end goal of keeping the program and Northrop's contract

alive. It is relatively certain that the DTS requirements will never be competitively procured unless and until a Court orders it.

The Government's Response to the Court's Order uses the now familiar strawman tactic of creating a false issue, attributing it to Carlson, and trying to create the impression that the Court is being requested to take cataclysmic remedial action. Contrary to the Government's mischaracterization, Carlson does not agree that there should be no suspension or disruption in the performance of DTS Contract requirements. What Carlson suggests is that to avoid disruption of DoD travel actually using the DTS pending a competitive procurement, Northrop could be permitted to continue operation and maintenance of the DTS and Help Desk services, but only to DoD travelers where the DTS is currently deployed and used. Carlson does not agree that Northrop should be permitted to continue performing all DTS requirements after September 30, 2006, such as further deployment of the DTS or creating new interfaces to DoD legacy systems. Currently, less than 10 percent of DoD commercial travel arrangements are being performed using the DTS, and the other over-90 percent is quite adequately performed by travel management service contractors via traditional travel services — just as it has been for decades and during the many years of delay already experienced in performing the DTS Contract.

The remedial action being sought would not cause the Court to dictate the planning, scheduling, or the actual conduct of a competitive procurement. If the Court simply enjoins the continued performance or sole source extension of the Northrop DTS Contract, or sole source award of another DTS Contract to Northrop (except for the continued service to DoD travelers where the DTS is currently deployed and used), and orders that all incomplete or future DTS requirements be procured under fair and open competitions, it will be up to DoD procurement officials to determine the schedule and procedures for the conduct of such procurements. Thus,

Carlson is not seeking to have the Court conduct or manage any DTS follow-on procurement, and there is no validity to the argument proffered by the Government.

The cases cited by the Government are simply irrelevant to the facts of this case. It is clear that the DTS Contract is not substantially complete, since it admittedly requires at least until September 30, 2007 and an additional $20 million to complete. Nor has Carlson asked the Court to award a contract to Carlson or direct the schedule or procedures to be followed in a competitive reprocurement of DTS requirements.[7] Moreover, the Government's consistent misrepresentation of material facts throughout this litigation has forfeited any presumption of regularity on the part of DoD in regard to the DTS Contract.

Dated: March 13, 2006

Respectfully submitted,

s/ Lars E. Anderson

Lars E. Anderson
Michael W. Robinson
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 760-1623 (Protected)
*Counsel for Plaintiff*

---

7 The Government's reliance on Bannum, Inc. v. United States is curious, since that case indicates that, where there is a compelling reason to do so, a court may involve itself in an ongoing procurement. Bannum, 56 Fed. Cl. 454, 460 (2003).

# CERTIFICATE OF FILING

I hereby certify that on March 13, 2006, a copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S BRIEF ON DOD'S INTENTIONS REGARDING REPROCUREMENT OF DTS REQUIREMENTS was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Lars E. Anderson
Lars E. Anderson