**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **CW GOVERNMENT TRAVEL, INC.,** <br> **Plaintiff,** <br> **v.** <br> **THE UNITED STATES,** <br> **Defendant,** <br> **and** <br> **NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION** <br> **Defendant-Intervenor.** | No. 03-1274C <br> Judge George W. Miller |

**NORTHROP GRUMMAN'S RESPONSE TO "PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR INFORMATION RELATED TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT"**

Pursuant to an Order dated February 13, 2006, this Court instructed both Defendant United States and Defendant-Intervenor Northrop Grumman Space and Mission Systems Corporation ("Northrop Grumman") to file a response to Plaintiff CW Government Travel, Inc.'s ("Carlson's") additional briefing on the issue of whether Carlson was entitled to relief from judgment based on "newly discovered evidence." Carlson filed its "Response to the Court's Request for Information Related to Plaintiff's Motion for Summary Judgment" on February 27, 2006. Northrop Grumman has reviewed the Government's Response to Carlson's latest filing and concurs therewith. Hence, its joins in and adopts the Government's Response as its own.

## ARGUMENT

The record before this Court that contained, at the time of the Court's Orders on the Cross-Motions for Summary Judgment, inter alia, (1) a publicly issued Commerce Business Daily ("CBD") notice that informed all potential contractors that the DOD intended to modify Northrop Grumman's DTS contract to include a cost reimbursement contract line item ("CLIN") for software development to effectuate interfaces between Northrop Grumman's DTS and the Government's accounting systems, (2) a copy of the modifications to the DTS contract, which included not only the CLIN for software development for the interfaces, but also the contract clauses pursuant to which the Government would take rights in that developed software, and (3) documents indicating that approximately $45 million of such software development was anticipated to occur between 2002 and 2006.

Hence, the documents detailing not only the fact of the software development and its scope and estimated costs, but also the Government's rights in that software, have been in Carlson's possession throughout this litigation, and clearly well in advance of the Court's Orders in 2004 and 2005.

Notwithstanding its possession of all of these documents and facts, Carlson claims that it was unable to challenge the Government's contention that if the modifications to the DTS contract were determined to have been issued in violation of the Competition in Contracting Act, 41 U.S.C. § 253(a), the development and continued deployment of the DTS system would be significantly delayed while another contractor attempted to develop a system that met the same requirements. As the Government's Response demonstrates, Carlson's argument that the congressional subcommittee testimony and GAO report is "newly discovered evidence" entitling

Carlson to relief under RCFC 60 falls apart upon examination because the proffered testimony and report merely discuss the relevance and impacts of the facts to which Carlson already had pre-decisional access.

The record clearly indicates – and Carlson admits in its latest filing – that all materials outlining the Government's rights in the DTS data, software, and equipment were in Carlson's possession or within Carlson's knowledge long before this Court entered final judgment against Carlson in 2005. For example, the record contained documents reflecting that:

1. On May 22, 2001, the Government issued a public notice in the CBD stating that the Government intended to modify the DTS contract to add a cost reimbursement CLIN "to incorporate software development/engineering pricing features to allow for" interfaces between the DTS and DOD legacy systems. See Appendix to the Government's Motion for Summary Judgment ("Gov. App.") at 021-022, 064.
2. In early 2002, the DTS Contract was modified, adding a cost reimbursement CLIN for software development for interfaces between the DTS and DOD legacy systems. See Gov. App. at 110.
3. Also in early 2002, the DTS Contract was modified to reflect a Government estimate of over $9 million within the first year for software development, while also estimating that additional monies would be spent and additional software would be developed in later years as follows:

| Year | Estimated Amount |
|---|---|
| 2003 | $10,360,528 |
| 2004 | $10,698,724 |
| 2005 | $11,054,856 |
| 2006 | $5,490,650 |

See Gov. App. at 072; Appendix to Plaintiff's Cross-Motion for Summary Judgment ("Plf. App.") at V673-674.

4. The early-2002 DTS Contract modifications added to the DTS contract for the first time contract provisions providing the basis for Government rights in newly developed software (DFARS 252.227-7013 and 252.227-7014). See Plf. App. at V644.

5. Also in early 2002, the DTS Contract modification wherein the Government obtained certain rights in the commercial Gelco Travel Manager Software by means of a $9.7 million purchase of a perpetual license. See Plf. App. at V667.

As shown in the Government's Response, there are numerous exhibits in the record demonstrating clearly that the Government had and would have data rights in some portions of the software, including the interfaces, when Carlson filed its Cross-Motion for Summary Judgment and its subsequent Motion for Reconsideration. But Carlson chose not to raise the data rights issues in either of its motions. Instead, Carlson now essentially seeks a second bite at the apple based – not on "newly discovered evidence" – but on old facts that it has long had in its possession, but which were later analyzed by the GAO and in congressional testimony.

Given these facts, Carlson has failed to meet its burden under RCFC 60. While the congressional testimony and GAO report contained analyses of the facts, the facts themselves

were in Carlson's possession, and as detailed more fully in the Government's and Northrop Grumman's other responses on this matter, therefore, Carlson's Motion for Relief from Judgment must be denied.

DATED: March 13, 2006

Respectfully submitted,

*/s/* John W. Chierichella

John W. Chierichella
Sheppard Mullin Richter & Hampton LLP
1300 I Street, NW, 11th Floor East
Washington, DC 20005
Tel: 202-218-6878
Fax: 202-218-0020

**PROOF OF SERVICE**

I hereby certify, under penalty of perjury, that on March 13, 2006, I caused a true and correct copy of the foregoing NORTHROP GRUMMAN'S RESPONSE TO "PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR INFORMATION RELATED TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/* David S. Gallacher