# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CW GOVERNMENT TRAVEL, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 03-1274C** |
| **THE UNITED STATES OF AMERICA,** | **Judge George W. Miller** |
| **Defendant,** | |
| **and** | |
| **NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,** | |
| **Defendant-Intervenor.** | |

## PLAINTIFF'S RESPONSE TO THE COURT'S 04/18/06 REQUEST FOR BRIEFING

The Court asked CW Government Travel, Inc. ("Carlson") to describe the precise nature of the equitable relief sought and why that relief is appropriate at this time. The Government and Northrop Grumman Space & Mission Systems Corporation ("Northrop") take the position that, given the passage of time, justice delayed should be justice denied. However, the Court has the authority and ability to correct this wrong by granting Carlson meaningful relief. The Court can and should limit the continuing consequences of the Department of Defense's ("DoD's") illegal procurement of the software development program known as the Defense Travel System (the "DTS").

If Carlson's Rule 60 Motion is granted, the Court may fully reopen the matter "for purposes of doing substantial justice." Patton v. Sec'y of the Dep't of Health & Human Servs., 25 F.3d 1021, 1030 (Fed. Cir. 1994) (quoting James W. Moore and Jo Desha Lucas, Moore's Federal Practice, at 60.18[8], 60.19 (2d ed.1993)). See also Curtis v. United States, 61 Fed. Cl.

511, 512 (2004) ("'Rule 60(b) enables a court to grant a party relief from a judgment in circumstances in which the need for truth outweighs the value of finality in litigation.'") (quoting Moore et al., supra, at 60.02[2] (3d ed.2003)). Carlson therefore would be entitled to seek the relief sought in its Amended Complaint and would be able to immediately move for preliminary relief on those matters that have subsequently developed, specifically, the Government's stated intention to issue a sole source extension of the current DTS Contract (No. DAMT01-98-D-1005) to Northrop when the current DTS Contract expires at the end of September 2006. This sole source DTS Contract extension would be for at least another year (through September 30, 2007), cost about $20 million and allow Northrop to continue performing all the DTS requirements that will not be completed when the current DTS Contract expires on September 30, 2006. Colonel Brenda Sue Johnson Declaration ("Johnson Decl.") at 7.[1]

**A. Nature Of Equitable Relief**

The nature of the equitable relief sought must be addressed in two respects. First, upon the Court's granting of the Rule 60 Motion, Carlson would immediately seek temporary relief from the Government's stated intent to award a one-year sole source extension of the DTS Contract to Northrop to continue working beyond the September 30, 2006 expiration of the DTS Contract. Second, Carlson would seek permanent relief at the conclusion of trial to determine if the 2002 Modifications to the DTS Contract constitute cardinal changes that exceed the scope of the original 1998 procurement in violation of the Competition in Contracting Act ("CICA").

---

1 The Declaration of Colonel Brenda Sue Johnson, Program Director for the DTS Program Management Office, indicates that as of September 30, 2006, there will be significant DTS requirements remaining to be performed, including development of interfaces to a number of DoD legacy systems and operationally deploying the DTS to another 3,000 DoD sites and to 2.2 million more DoD potential travelers worldwide. Johnson Decl. at 3. There is no legitimate reason why such requirements should not be competed as required by law.

Preliminary relief is needed to stop performance of an illegal contract and preserve as much work as practical for subsequent performance under a competitively-procured contract. The Government has submitted a sworn declaration and brief acknowledging that DTS requirements will continue well beyond September 30, 2006, and stating that it intends to award to Northrop, on a sole source basis, the right to continue providing services after the expiration of the current DTS Contract. That is, of course, a new development since the filing of the lawsuit in 2003. Indeed, when the Government was urging the Court to grant it summary judgment in 2003 and 2004, it insisted that the DTS Contract requirements were substantially complete (a refrain that now has been sung for five years every time the DTS Contract is threatened), that the DTS Contract requirements would be complete by September 30, 2006, and the follow-on DTS Contract would be competitively procured.

Whether or not the current DTS Contract requirements could be completed by September 30, 2007, and after the expenditure of another $20 million, is open to serious question given the numerous misrepresentations that have previously been made by the Government regarding the status of this program. Mr. Zack Gaddy, Director, Defense Finance Accounting Service, testified at the U.S. Senate's hearing on September 29, 2005 that:

> After several reviews and reports, the time frame for full usage of DTS by everyone in the department [DoD], originally scheduled to be completed by FY 2003 was adjusted to a more realistic time frame of 2009.

Thus, it appears that Colonel Johnson is being overly optimistic to assume they could complete development and deployment of the DTS by September 30, 2007. But regardless, the intended award of this additional work to Northrop on a sole source basis is an additional violation of CICA.

In light of these developments, Carlson will promptly move the Court for a preliminary injunction if its Rule 60 Motion is granted. Carlson's Motion will seek a preliminary injunction enjoining the Government from extending the current DTS Contract, or otherwise awarding on a sole source basis to Northrop the requirements being provided by the DTS Contract. As discussed in Section B below, the remaining evidence necessary to support that motion can be developed in the same evidentiary hearing that the Court has indicated will be promptly scheduled to address the issues surrounding equitable relief and the Rule 60 issues.[2] A proposed order setting forth the specific preliminary relief is attached as Exhibit 1. The Order includes a "carve out" provision to avoid any disruption to DoD travelers using the DTS at those sites where the DTS system is currently operational. That provision ensures that there will be no disruption to DoD travelers currently using the DTS at the sites where the DTS is already operationally deployed during the short period of time between the issuance of a preliminary injunction and the final trial of the alleged CICA violations.

After trial and a decision on the merits, Carlson requests an injunction that simply will permanently enjoin further performance of the DTS Contract and enjoin the Government from extending the DTS Contract or awarding a follow-on contract to Northrop for DTS requirements on a sole source basis. It would then be up to the Government to determine a reasonable schedule and procedure to conduct a fair and open competition to procure new or additional DTS requirements. A copy of a proposed Order (that contemplates the completion of the trial and

---

2 Carlson submits that evidence already developed establishes Carlson's likelihood of success on the merits that a CICA violation occurred (particularly in regard to the 2002 changes in the pricing and risk structure of the DTS Contract and the intent to extend the DTS Contract on a sole source basis) and that Carlson has standing to bring this action. The evidentiary hearing currently planned by the Court this summer will address the issues of hardship and public interest in light of new evidence and the current status of the DTS Contract. Thus, if the Court grants Carlson's pending Rule 60 Motion, it will be in a position to promptly rule on a motion for preliminary injunction.

decision on the merits) awarding this permanent relief is attached as Exhibit 2. As with the preliminary relief, Carlson has included the "carve out" provision which will allow Northrop to perform the necessary DTS operation and maintenance, training, and help desk services at those sites so DoD travelers who may be currently using DTS will be able to continue to do so while a competitive procurement is undertaken.[3]

**B. Equitable Relief Is Still Appropriate**

The Court has inquired whether equitable relief is still appropriate "at this time." The answer is an unqualified yes. The sworn declaration and testimony by Government officials establish that DoD's need for the requirements contained in the DTS Contract will extend for years. The fact that a competitively-procured follow-on contract will not exist at the September 30, 2006 expiration of the current DTS Contract solely results from DoD's failure to initiate timely procurement action, despite years to do so. Moreover, the new evidence from the U.S. Senate Hearing and Colonel Johnson's Declaration establish that it is possible to competitively procure a successor DTS contractor without having to start from scratch, and the impact of delaying continued performance of DTS development and deployment requirements to accommodate a competitive procurement will have negligible adverse impact on the Government.

The Government's contention that equitable relief may not be appropriate because the DTS Contract is almost complete is not credible and cannot carry the day. The PMO-DTS has been reporting that the DTS is almost complete for many years. But each such pronouncement has proven to be incorrect, as have the promises that when the current DTS Contract expired on

---

3 This is similar to the procedures fashioned by the Court previously when granting equitable relief by allowing traditional travel services for the DTR-6 region to continue to be provided under the DTS Contract pending the competitive procurement of a new contract.

September 30, 2006, it would be replaced by a competitively-procured contract. This record of exaggerated progress was recognized years ago when the DoD Inspector General's 2002 Report noted that the status reports "did not always appear to report the 'true state' of the DTS program." *Exhibit 14, V1157.* The Government represented to this Court in the Summer of 2004 that the DTS Contract was substantially complete and would be done far in advance of the September 2006 expiration of the DTS Contract. As recently as the Government's January 26, 2006 Opposition to Carlson's Rule 60 Motion ("Government Opposition"), the Government told the Court the DTS Contract was substantially complete and there was:

> ...a continuing re-procurement to select a follow-on contractor in time to make a smooth transition from the current contract to the follow-on contract without disruption to DTS-assisted travel.

Government Opposition at 19. It was not until the Court demanded sworn declarations that the Government admitted that the re-procurement to a smooth transition actually involved a $20 million, 12-month sole source extension of Northrop's current DTS Contract.[4] If the past is a precursor, yet more sole source contract extension/awards will no doubt follow: next year, the Government will likely again state that the DTS is almost complete and there is insufficient time to procure a successor to Northrop. Indeed, a knowledgeable DoD official has already testified that 2009 is "more realistic" for full implementation of the DTS.

Second, relief is still appropriate because the forthcoming sole source extension of the DTS Contract is both a continuation of the Government's past illegal conduct and a new

---

4 Colonel Johnson's Declaration revealed that despite years of litigation and representations to the Court and Congress, no steps had been taken to competitively procure a successor contract to perform the majority of the DTS requirements commencing upon the expiration of the 1998 DTS Contract. It is also noted that action necessary to competitively procure even minor DTS Contract requirements that were supposed to occur in April 2006, according to Colonel Johnson, have not occurred.

violation of CICA. Because the violation continues, the Government and Northrop continue to be rewarded for the illegal procurement and inability to successfully complete the DTS Contract as scheduled or budgeted. At some point, the argument that an illegal DTS Contract should continue to be performed because it has been performed for so long must be rejected. That time is now.

In addition, the pending sole source extension of the DTS Contract constitutes a new violation of CICA arising directly from the Government's failure to perform the advance planning necessary to competitively procure a successor contract commencing on October 1, 2006. The argument was addressed in Carlson's previous submission to the Court and will not be repeated. However, it bears recognition that the purported legal basis for a sole source DTS Contract extension or award is not present. Carlson previously predicted that the Government would use Northrop's current performance of the DTS Contract as an argument for further sole source contract extensions/awards. That prediction, like others, has come true. The Government's prior representations that when the DTS Contract ended in September 2006, it would be replaced by a competitively-procured DTS Contract is just one more representation by the Government that suited its purpose at the time, but has not come to pass. Thus, because there is both a continuing violation of CICA, plus a new violation pending and a long-term need for continuing provision of the DTS Contract requirements, relief at this time is appropriate.

### C. The Issues Can Be Promptly Resolved

The schedule that the Court proposed during the April 14 conference (which has been adjusted by less than two weeks) indicates that these issues can be promptly addressed and resolved.

As noted by the Court, some discovery will be needed by Carlson prior to the evidentiary hearing contemplated by the Court. Carlson submits that the discovery it proposed remains necessary because of the Government's contention that the matter is moot and the need to address the "hardship" and "public interest" issues in light of the new evidence contradicting the Government's key factual representations to the Court in 2004.[5] The Government cannot legitimately raise the defense that the matter is moot because the DTS Contract is almost complete and then shield discovery on that issue. Likewise, the discovery proposed by Carlson is appropriate because it will address not only the pending Rule 60 Motion, but also provide the Court with current and accurate information regarding the hardship, or lack thereof, if further performance of the DTS Contract is enjoined.

Even with the need for discovery, an evidentiary hearing addressing all issues involving the equitable relief could be concluded by the end of August 2006. If the Court grants the Rule 60 Motion and also concludes that equitable relief is not precluded by actual hardship to the Government or public interest, Carlson would immediately move for a preliminary injunction pending a trial on the merits of the remaining alleged CICA violations.

Moreover, the schedule for a trial on the merits can also be promptly undertaken, but done so in a staged manner that will allow the Court to address sequentially the violations of CICA arising from the 2002 modifications of the DTS Contract and potentially avoid the most time-consuming issues. The CICA violations were premised on two fundamental modifications: the change in technical requirements and the change in the payment structure which also

---

5 Colonel Johnson's Declaration identified all the potential consequences of delaying performance of the DTS Contract requirements for the 12 months required to conduct a competitive procurement. See, e.g., Johnson Decl. at 8. Limited discovery will prove that those alleged hardships are very minor and do not constitute a legal exception to CICA that would permit the intended sole source extension of the current DTS Contract.

impacted the performance risk allocation. A final determination on the issue of whether the 2002 change in technical requirements constituted a cardinal change could be complex and involve both extensive discovery as well as likely expert testimony. However, the determination as to whether the restructure of pricing/risk allocation provisions constituted a cardinal change in violation of CICA does not present similar obstacles. The restructured DTS Contract fundamentally changed the pricing provisions from a firm, fixed-price performance-based contract, in which the contractor's revenue was contingent upon actual use of the DTS by DoD travelers, to a cost-plus-fee or time and materials requirements contract. The risk of performance and cost overruns were shifted completely from the contractor to the Government. Under the restructured DTS Contract, Northrop was paid up front; its revenue was no longer contingent upon the successful development and development or even the actual use of the DTS by DoD travelers. The DTS was not deemed ready for operational deployment until December 2003, yet the contractor had already been paid over $100 million when it would not have been entitled to any payments under the original DTS Contract.

Limited discovery will reveal that, to date, Northrop has been paid over $200 million more than it would have earned under the original DTS Contract. Moreover, even though the DTS contains serious defects, it is now the Government, not Northrop, that must pay the consequences. The determination of the CICA issues arising from the restructure of the pricing/risk allocation provisions of the contract would require only limited discovery and could be resolved by the Court in a one- to two-day trial. If the Court determined that the 2002 changes in the payment structure and contract risk allocation violated CICA, the Court could issue the proposed permanent injunction and never have to address the details of the 2002 changes to the technical requirements of the DTS Contract.

Carlson proposes that the Court schedule a trial on the restructure of the pricing/risk contract provisions after a brief discovery period and defer the trial on the change to the technical requirements. Thus, if the planned evidentiary hearing on the Rule 60 Motion and hardship/public interest issues this summer results in the reopening of the case and issuance of a preliminary injunction, essentially, the entire case could be resolved by this Court in the Autumn of 2006.

Significantly, Carlson's proposed Orders each include a carve-out provision that will minimize any burden of both the preliminary and permanent injunction. While this is not the time to argue the burdens and hardship issues, it bears recognition that the Court can grant this relief, resolve the illegalities of the procurement, enforce CICA, and not disrupt any of the services where the DTS is currently deployed and being used by DoD travelers.

Dated: May 3, 2006

Respectfully submitted,

s/ Lars E. Anderson
Lars E. Anderson
Michael W. Robinson
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 760-1623 (Protected)
*Counsel for Plaintiff*

Attachments

# CERTIFICATE OF FILING

I hereby certify that on May 3, 2006, a copy of the foregoing PLAINTIFF'S RESPONSE TO THE COURT'S 04/18/06 REQUEST FOR BRIEFING was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Lars E. Anderson
Lars E. Anderson

# EXHIBIT 1

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **CW GOVERNMENT TRAVEL, INC.,** **Plaintiff,** v. **THE UNITED STATES OF AMERICA,** **Defendant,** and **NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,** **Defendant-Intervenor.** | ) | **Case No. 03-1274C** **Judge George W. Miller** |

**ORDER**

On the basis of the findings of fact and conclusions of law issued with this Order, the Court grants CW Government Travel, Inc.'s Motion for Preliminary Injunction, and:

The Court orders that Defendants are enjoined from (a) continued performance of Contract No. DAMT01-98-1005 and (b) extending or otherwise awarding on a sole-source basis the requirements being provided under Contract No. DAMT01-98-1005 until trial of this matter or further order of the Court, except that Defendant Northrop Grumman Space & Mission Systems Corporation may continue to perform only the necessary operation and maintenance, training, and help desk services required under the Contract, so that Department of Defense travelers may continue using the Defense Travel System ("DTS") where the DTS is currently operationally deployed, as of the date of this preliminary injunction.

The Court orders the Government to provide within three (3) business days of this Order a list of all sites where the DTS is currently operationally deployed, and schedules a status conference on ________________, to discuss the schedule for discovery and trial of the disputed issues regarding the alleged violation of the Competition in Contracting Act.

IT IS SO ORDERED.

s/ George W. Miller_____
GEORGE W. MILLER
Judge

# EXHIBIT 2

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CW GOVERNMENT TRAVEL, INC.,**<br>**Plaintiff,**<br>v.<br>**THE UNITED STATES OF AMERICA,**<br>**Defendant,**<br>**and**<br>**NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,**<br>**Defendant-Intervenor.** | **Case No. 03-1274C**<br>**Judge George W. Miller** |

**ORDER**

After a trial and on the basis of the findings of fact and conclusions of law accompanying this Order, the Court declares that the 2002 modifications to Contract No. DAMT01-98-1005 (Contract Modifications 0025 and 0027) constitute cardinal changes exceeding the scope of the original 1998 procurement and thereby violate the Competition in Contracting Act's mandate for competitive procurement of goods and services, and:

The Court orders that Defendants are enjoined from (a) all further performance of work under Contract DAMT01-98-1005, and/or (b) extending Contract DAMT01-98-1005 or otherwise awarding on a sole source basis the requirements being provided under the Contract, except that the Defendant Northrop Grumman Space & Mission Systems Corporation may continue to perform only the necessary operation and maintenance, training, and help desk services required under the Contract, so that Department of Defense travelers may continue using

the Defense Travel System ("DTS") where the DTS is currently operationally deployed, as of the date of this Order, for a period of time reasonably necessary for the Government to conduct a fair and open competitive procurement for such services.

The Court orders Defendants to provide within three (3) business days of this Order a list of all sites where the DTS is currently operationally deployed. The Government shall within 30 days prepare and present a proposed timetable for the conduct of a fair and open competitive procurement, or procurements, of all remaining DTS-related requirements. Thereafter, the Court shall schedule a status conference to consider any objections Plaintiff may have to the Government's proposed timetable for the competitive procurement(s) of DTS-related requirements.

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge