# IN THE UNITED STATES
# COURT OF FEDERAL CLAIMS

**CW GOVERNMENT TRAVEL, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant,**

**and**

**NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION**

**Defendant-Intervenor.**

No. 03-1274C

Judge George W. Miller

## NORTHROP GRUMMAN'S RESPONSE TO "PLAINTIFF'S RESPONSE TO THE COURT'S 4/18/06 REQUEST FOR BRIEFING"

Pursuant to an Order dated April 18, 2006, the Court instructed Plaintiff CW Government Travel, Inc. ("Carlson") to file a brief with this Court describing the specific injunctive relief that Carlson was requesting under the instant action. The Court also instructed Defendant United States and Defendant-Intervenor Northrop Grumman Space and Mission Systems Corporation ("Northrop Grumman") to file a response to Carlson's brief. Carlson filed its brief describing the injunctive relief it is currently seeking on May 3, 2006. Northrop Grumman has reviewed the Government's Response to Carlson's latest filing and concurs therewith. Hence, it joins in and adopts the Government's Response as its own, as supplemented by this submission.

**ARGUMENT**

The relief that Carlson requests in its May 3, 2006 filing should not be granted by this Court.

**A. Future Contracts**

Carlson requests an injunction against the award of any future sole-source DTS contract. That relief cannot be granted, for three principal reasons:

First, *this Court lacks jurisdiction over a potential future procurement*. The issue is non-justiciable because it does not present a "case or controversy" as required under 28 U.S.C. § 2519 (authorizing the Court of Federal Claims to enter final judgment "arising out of the matters involved in the case or controversy"). See CW Government Travel, Inc. v. United States, 46 Fed. Cl. 554, 557-58 (2000); see also U.S. Constitution, Art. III, § 2 (requiring a case or controversy for Article III courts to sit in judgment). By seeking to enjoin a future contingent contract award, Carlson is forced to challenge "what might happen" and assume both a violation of law and a harm that it "expects." But the United States Constitution, the Court of Federal Claims jurisdictional statutes, and the prudential requirements of this Court require a more definite dispute in order for this Court to sit in judgment and grant Carlson's requested relief.

Second, *determination of the legality of a future procurement is not ripe for review*. The Government has stated that it intends to comply with the requirements of CICA and the FAR with regard to any future competitive or sole-source DTS procurement. See Declaration of Colonel Johnson, Feb. 24, 2006 (attached to "Government Memorandum in Response to the Order Dated February 13, 2006," dated February 27, 2006). Until the agency actually makes a decision and institutes a new procurement, the legality of a hypothesized future procurement

cannot be adjudged. Once the agency has acted and the issue is ripe for review, any company believing the Government's procurement actions violate the law will have an opportunity to challenge the propriety of those actions. Since such actions have yet to occur, any challenge thereto is premature.

Third, *any such future procurement is beyond the issues currently before this Court and beyond the issues raised by Carlson in its Amended Complaint*. Carlson's Amended Complaint raises issues only relating to the 2002 amendments to the DTS contract. Challenges to a future procurement and an injunction against future performance under a separate and not yet initiated acquisition are beyond the scope of issues currently before this Court.

Additionally, and as emphasized below, the "carve out" proposed by Carlson for any such future procurement is ill-defined and impractical. In light of the fact that this Court cannot properly adjudicate an issue over which final agency action has not occurred and over which this Court does not have jurisdiction, granting Carlson any such prospective relief (whether totally enjoining future performance or "carving out" portions) is an inappropriate remedy under the instant action (even if the Court were to grant Carlson's Rule 60(b) motion to set aside the judgment).

**B. Current DTS Contract**

Carlson's request for an injunction for the remainder of the current DTS contract, which is due to expire in September 2006, also cannot be granted here, for two key reasons:

First, *Carlson's only claim before this Court is moot*. As explained in detail in Northrop Grumman's and the United States' previous filings (both those opposing Carlson's Rule 60(b) motion and those responding to this Court's February 13, 2006 Order), Carlson seeks to enjoin

performance on a contract that expires in approximately four months. Indeed, Carlson admits in its proposed timetable that a hearing on the propriety of any equitable relief would not occur until August 2006 – merely one month shy of the end of contract performance. This court has stated that a "case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." CW Government Travel, Inc. v. United States, 46 Fed. Cl. 554, 557 (2000). The relief requested by Carlson is the very definition of mootness – "hypothetical," "academic" and "having no practical significance." Id. Clearly, this Court should not entertain such an idle request.

Second, *the balance of harms and public interest favor continued performance of the current DTS contract and vitiate Carlson's requested relief*. Deployment efforts for the DTS are ongoing and Carlson's requested relief would bring this to a halt, leaving a partially implemented system and numerous Department of Defense employees (including those supporting our nation in wartime) with limited, more expensive, and wasteful travel options. Additionally, halting the DTS contract would force the Department of Defense to incur significant additional costs in order to maintain the legacy systems that are not yet integrated with the DTS. In view of the fact that the DTS contract has nearly expired, it is difficult to imagine any circumstances that might weigh in favor of forcing the United States to waste extra money and time merely to provide a disgruntled company such as Carlson – which declined to bid when the original DTS contract was solicited – the opportunity to submit a proposal for four months of contract effort at the tail end of an eight (8) year contract. Carlson's opportunity to compete, or challenge the legality of any future procurement, will come with any follow-on procurement; it makes no sense to

obstruct progress on the current contract at this late hour, and granting Carlson's requested relief will not serve any public interest.

Notably, in dealing with these exact same issues in its prior rulings (both the July 26, 2004 and January 12, 2005 Orders),[1] this Court identified a number of facts as dispositive of the conclusion that Carlson was not entitled to equitable relief. Today in 2006, nearly 2 years after this Court's original Order, these facts are still germane to the analysis. For example:

- The DTS contract is substantially complete. Carlson I, at 578.
    - o *This remains true today. The current contract will be complete in September 2006.*
- The contract is now in its sixth year of performance. Id.
    - o *The contract is now in its eighth year of performance.*
- At the time Carlson filed its Complaint, the contract was in the fifth year of performance of an eight-year contract. Id.
    - o *This remains true today.*
- Carlson did not file its Complaint until 14 months after the Government issued the modifications that are the subject of this dispute. Id.
    - o *This remains true today.*
- The Government and Northrop Grumman have expended a significant amount of time, effort, and resources in the development the thus far elusive and highly complex CUI. Id.

[1] See CW Government Travel v. United States, 61 Fed. Cl. 559 (2004) ("Carlson I") and CW Government Travel v. United States, 63 Fed. Cl. 459 (2005) ("Carlson II"), aff'd, CW Government Travel v. United States, 163 Fed. Appx. 853 (Fed. Cir. 2005).

    - *This remains true today, with two years of additional time, effort, and resources having been expended.*

- If the injunction is granted, the project will be delayed to an even greater degree than it has been. Carlson I, at 578.
    - *This remains true today, but will be exacerbated by delays in the further fielding of a system whose functionality has increased over the course of the intervening two years.*
- Any new contractor would not have a system that could be immediately deployed. Id.
    - *This remains true today.*
- Like Northrop Grumman, the new contractor would have to make its system compatible with the Government's existing or so-called "legacy systems." Id.
    - *This remains true today.*
- The process of integrating the new contractor's system with the "legacy systems" takes considerable time, effort, and resources. Id.
    - *This remains true today. According to Colonel Johnson's Declaration, the cost of this effort would be significant.*
- The significant delay and cost to the Government outweighs the injury to Carlson. Id.
    - *This remains true today, even more so in light of the impending expiration of the contract.*

- Both the delay in bringing suit and the status of the DTS contract at the time Carlson filed its Complaint cut against granting the injunctive relief sought by plaintiff. Carlson I, at 578.
    - o *This remains true today.*
- The overwhelming public interest in this matter is in avoiding further delay in this project. Id.
    - o *This remains true today.*
- An injunction is not in the public interest. Carlson II, at 468.
    - o *This remains true today.*
- The balance of hardships disfavors injunctive relief in favor of Carlson. Id.
    - o *This remains true today.*
- No single factor was dispositive in the Court's decision. Id.
    - o *This remains true today.*

Recognizing that the factors apply with equal force to the approximately four months left on this eight year contract, and that any injunction would still serve only to deprive the Department of Defense of the use of the DTS, Carlson includes a purported "carve out" in its proposed order for the injunction, to allow for the continued maintenance and operation of DTS at certain sites where DTS is already deployed. But the blade that Carlson proposes this Court use to "carve out" such effort is dull and unwieldy – the proposed "carve out" is both ill-defined and inadequate to protect the public interest. Even with the proposed injunctive "carve out" for the undefined maintenance and operations at currently deployed sites, Carlson's proposed relief would freeze upcoming deployments and thus preclude the planned continued deployment and

expanded use of the system. Accordingly, the request for injunctive relief (including Carlson's proposed "carve out") does not and cannot satisfy the public interest or the balance of equities to suspend or curtail the current DTS contract that is, in a very real and plain sense, substantially complete.

## CONCLUSION

Based on the foregoing, Northrop Grumman respectfully requests that this Court deny Carlson the relief it requests in its May 3, 2006 filing. Northrop Grumman also respectfully request that this Court deny Carlson's Rule 60(b) motion, allowing the judgment in favor of the United States on Counts I and II of Carlson's Amended Complaint to stand.

DATED: May 22, 2006

Respectfully submitted,

*/s/* John W. Chierichella

John W. Chierichella
Sheppard Mullin Richter & Hampton LLP
1300 I Street, NW, 11th Floor East
Washington, DC 20005
Tel: 202-218-6878
Fax: 202-218-0020

**PROOF OF SERVICE**

I hereby certify, under penalty of perjury, that on May 22, 2006, I caused a true and correct copy of the foregoing NORTHROP GRUMMAN'S RESPONSE TO "PLAINTIFF'S RESPONSE TO THE COURT'S 4/18/06 REQUEST FOR BRIEFING" to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/* David S. Gallacher