# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CW GOVERNMENT TRAVEL, INC.,**<br><br>**Plaintiff,**<br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant,**<br>**and**<br><br>**NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,**<br><br>**Defendant-Intervenor.** | **Case No. 03-1274C**<br><br>**Judge George W. Miller** |

**PLAINTIFF'S WITNESS AND EXHIBIT LIST**

Plaintiff, CW Government Travel, Inc. ("Carlson"), submits the following identification of potential witnesses and exhibits in response to the Court's 5/25/06 Order.

**INTRODUCTORY STATEMENT**

The Court has advised the parties the evidentiary hearing contemplated by the Court will focus on the issue of balancing the hardship and public interest associated with the potential equitable relief sought—an order enjoining further performance of the Defense Travel System ("DTS") Contract DAMT01-98-D-1005. Carlson understands that the Court will assume a violation of CICA, and irreparable injury to Carlson. Of course, the potential hardships and the "balance" of those hardships will have necessarily changed, perhaps significantly, from the situation that was before the Court two years ago when it entered, *sua sponte*, summary judgment on that issue. Moreover, Government factual representations that the Court relied

upon in that decision have been contradicted by evidence and testimony given to the United States Senate in September 2005.

The evidence regarding the hardship to the Government and the potential public interest (to the extent evidence outside of the Congressional balance struck in CICA is developed), is primarily in the hands of the Government. Of course, Carlson has had no discovery of developments or access to Government records after the administrative record was disclosed in September/October 2003. Accordingly, Carlson is not in position for a number of issues to identify specific documents as a specific exhibit and must by necessity point to categories of documents it believes would be relevant and ask for those documents to be produced so that the exhibits can then be specifically identified for submission. Likewise, while Carlson can identify a number of potential witnesses, other witnesses who could address the issues raise by the evidentiary hearing have not been identified by the Government. Carlson has in those instances borrowed the procedure contemplated by Rule 30(b)(6) whereby an entity is asked to designate an individual to testify on specific topics.

Finally, Carlson assumes that the Government will identify specific witnesses and exhibits to support its claim that the balancing test establishes a significant hardship to the Government if the equitable relief is ordered and Carlson will necessarily have to evaluate, and potentially seek discovery regarding the Government's submissions.

In accordance with these introductory points, Carlson provides the following identification of witnesses and exhibits.

1. Colonel Brenda Sue Johnson. Colonel Johnson would be asked to testify regarding her February 24, 2006 Declaration, including the current status of the DTS Contract requirements remaining to be performed and the schedule for completion of those requirements; the cost to the Government if the completion of remaining DTS Contract requirements is delayed, pending a competitive procurement of such requirements; and any other perceived hardships to the



::ODMA\PCDOCS\MC1DOCS1\206760\1

Government if continued performance of the DTS Contract requirements is delayed, pending a competitive procurement of such requirements. Colonel Johnson would also be expected to testify regarding the mitigating effects of permitting Northrop Grumman Space & Mission Systems Corporation ("Northrop Grumman") to continue providing operation and maintenance, Help Desk, and training services to all sites and Department of Defense ("DoD") travelers where the DTS is currently operationally deployed, pending a fair and open competitive procurement of such services.

2. Mr. Zack Gaddy, Director, Finance and Accounting Services, Department of Defense ("DFAS"), would be asked to testify in more detail regarding his September 29, 2005 testimony before the Senate's Permanent Subcommittee on Investigations. He would also be asked to testify regarding the actual utilization of the DTS by Government travelers and whether or not DFAS has reduced staffing and realized a net savings for DoD as a result of using the DTS. He should also be in a position to testify regarding the legacy systems that will continue to be used pending completion of the DTS requirements.

3. Mr. Paul Joyce, Chief, Commercial Travel Division, Travel Management Office ("TMO"), to testify regarding information obtained from industry and military services regarding experience in using the DTS and the need to have travel management contractors check, correct, or complete virtually all DTS transactions, to ensure the lowest available airfare and add missing information. Such testimony would include the additional fees DoD is paying travel management contractors to "Touch" DTS transactions.

4. R. Craig Thompson, CW Government Travel, Inc. Vice President, Government Markets. Mr. Thompson would be asked to testify regarding the actual utilization of the DTS, or lack thereof, by DoD travelers at more than 40 military bases or facilities under Carlson travel management contracts where the DTS has been operationally deployed for at least one year.

5. The Director, or equivalent, of the newly-created Business Transformation Agency that has succeeded the DTS Program Management Office ("PMO") in responsibility for the DTS Program. This individual would be asked to testify regarding the current status of the DTS Contract, plans, schedule, and estimated costs to complete the remaining DTS requirements. He/she would be asked to testify regarding perceived consequences and estimated costs if further performance of the DTS Contract, excepting services necessary so that DoD travelers may continue using the DTS where it is currently operationally deployed, is delayed for a period of time necessary to conduct a fair and open competitive procurement.

6. The Contracting Officer for the Army Contracting Agency Information Technology, E-Commerce and Commercial Contracting Center responsible for the DTS Contract, DAMT01-98-D-1005, to testify regarding the status of the

Contract; authority to complete the remaining requirements under the DTS Contract; contractual alternatives; and estimated costs to mitigate the consequences if further work under the DTS Contract is enjoined. The Contracting Officer would also be asked to testify as to the preparations made to date to competitively procure a follow-on or successor to the current DTS Contract and the time required to conduct such a procurement if further work under the DTS Contract is enjoined.

7. As yet unknown Government witnesses who can testify, with knowledge, as to the status of the DTS Contract and potential consequences if continued performance of the DTS Contract requirements is delayed for a period of time necessary to conduct a fair and open competitive procurement, including but not limited to the following:

   a. The locations and number of DoD personnel where the DTS is not yet operationally deployed, and the current schedule for such deployment.

   b. The actual utilization rates of the DTS to make travel arrangements and process vouchers where it is operationally deployed (versus traditional travel services and legacy systems) and evidence relevant to whether the usage of the DTS has actually resulted in a net savings for DoD, to date.

   c. The functionality requirements under the DTS Contract that remain to be completed; the current schedule for adding that functionality to the DTS; and estimates of any cost impact if the addition of such functionality is delayed for the period of time necessary to conduct a competitive procurement.

   d. Identification of the legacy travel systems alleged to remain to be replaced by the performance of the DTS Contract; the current schedule for replacing each of the remaining legacy systems; and the cost of maintaining each of the legacy systems for the period of time necessary to conduct a competitive procurement.

   e. Any other reasons regarding alleged hardship and the public interest, not addressed above, which the Government contends would arise if further performance of the remaining DTS Contract requirements (except the Carlson proposed "carve out") are delayed pending a competitive procurement of a follow–on contract, including a quantification of the cost of such delays.

8. As yet unknown Government witnesses who can testify as to whether the "carve-out" that Carlson proposed in its Brief and accompanying Order of May 3, 2006 — which would or might allow Northrop Grumman to continue performance of the necessary operation and maintenance, training, and Help Desk services required under the DTS Contract for all sites where the DTS is currently deployed — will

adequately mitigate disruption to DoD travel where the DTS is operationally deployed.

9. As yet unknown Government witnesses who can testify as to any other possible "carve-outs" that would or might mitigate real or perceived hardships if the performance of the DTS Contract is delayed for a period of time necessary to conduct a competitive procurement.

**DOCUMENT EXHIBITS**

1. Records depicting the actual respective usage of the DTS and traditional travel services to make travel reservations at more than 40 sites where the DTS is operationally deployed under Carlson's Army Travel Management Service Contracts. The period of time for such records starts in July 2003 and extends through April 2006. (Exhibit 1 filed in hard copy)

2. United States Department of Defense TMO, DoD Full & Open Solicitation for Travel Management Services, Industry Conference held on March 28, 2006, including excerpts of the official transcript of the conference regarding usage of the DTS, plus information on industry comments regarding problems experienced and additional costs arising from the use of the DTS. (Exhibit 2 filed in hard copy)

3. The GAO September 29, 2005 Report to the Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs, U.S. Senate, Appendix I entitled "Department of Defense Rights to Property in the Defense Travel System" stated that:

> "To describe DOD's property rights in the DTS we reviewed the DTS contract, applicable acquisition regulations, DOD intellectual property guidance, key DTS license agreements, and written responses from PMO-DTS to our questions, and we met with PMO-DTS and contracting officials and with their legal counsel."

Carlson would like to introduce the "key DTS license agreements, and written responses from PMO-DTS to [GAO's] questions," plus any records of communications between the GAO and PMO-DTS and contracting officials regarding DoD property rights to the DTS. These documents are necessary to determine the pending Rule 60 Motion which seeks to introduce new evidence contradicting previous Government representations regarding hardship and public interest if the DTS contract is enjoined. These documents must be obtained from the Government.

4. Carlson may want to introduce or utilize in testimony the documents or communications reviewed, relied upon, or created by Colonel Brenda Sue

Johnson in the course of drafting her February 24, 2006 Declaration. These documents must be obtained from the Government.

5. Carlson would like to introduce documents or communications reflecting the requirements of the DTS Contract No. DAMTO1-98-D-1005 that are not completed as of this date, or are anticipated not to be completed as of September 30, 2006, plus the current schedule and estimated cost for completion of such DTS requirements. Those documents must be obtained from the Government.

6. Carlson would like to introduce documents or communications reflecting the Government's evaluation of the consequences and cost if the requirements of the DTS Contract No. DAMTO1-98-D-1005 that are not completed as of this date, or are anticipated not to be completed as of September 30, 2006, are further delayed for a period of time necessary to complete such requirements via a fair and open competitive procurement. These documents must be obtained from the Government.

7. Carlson would like to introduce documents or communications reflecting the locations and number of DoD personnel where the DTS is not yet operationally deployed, and the current schedule for such deployment. These documents must be obtained from the Government.

8. Carlson would like to introduce documents or communications reflecting the actual usage of the DTS to make travel arrangements or process vouchers and the actual usage of traditional travel services or legacy systems by DoD travelers where the DTS has been operationally deployed from the date of such deployment. These documents must be obtained from the Government.

9. Carlson would like to introduce documents or communications reflecting the functionality requirements under the DTS Contract that remain to be completed; the current schedule for adding that functionality to the DTS; and estimates of any cost impact if the addition of such functionality is delayed for the period of time necessary to conduct a fair and open competitive procurement. These documents must be obtained from the Government.

10. Because the Government has advised the Court that maintaining existing legacy systems is a hardship, Carlson would like to introduce documents or communications reflecting the identification of the legacy travel systems alleged to remain to be replaced by the performance of the DTS Contract, and the current schedule for replacing each of the remaining legacy systems and the cost of maintaining each of the legacy systems for the period of time necessary to conduct a fair and open competitive procurement. These documents must be obtained from the Government.

11. Carlson would like to introduce documents or communications reflecting plans, including drafts, and communications reflecting plans or efforts, to procure the remaining DTS requirements, via competitive procurement(s) or sole source contracts, along with the estimated schedule for such procurements and the work on such procurements that has been accomplished to date. These documents must be obtained from the Government.

Dated: June 2, 2006

Respectfully submitted,

s/ Lars E. Anderson

Lars E. Anderson
Michael W. Robinson
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 760-1623 (Protected)
*Counsel for Plaintiff*

**CERTIFICATE OF FILING**

I hereby certify that on June 2, 2006, a copy of the foregoing PLAINTIFF'S WITNESS AND EXHIBIT LIST was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Exhibits that Plaintiff has and intends to introduce are being delivered in hard copy to the Court and parties.

s/ Lars E. Anderson
Lars E. Anderson