# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CW GOVERNMENT TRAVEL, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 03-1274C** |
| **THE UNITED STATES OF AMERICA,** | **Judge George W. Miller** |
| **Defendant,** | |
| **and** | |
| **NORTHROP GRUMMAN SPACE & MISSION SYSTEMS CORPORATION,** | |
| **Defendant-Intervenor.** | |

## PLAINTIFF'S ANNOTATED VERSION OF PLAINTIFF'S REQUEST FOR FURTHER DISCOVERY

This annotated version of Plaintiff's earlier Request for Further Discovery is filed pursuant to the Court's Order of July 11, 2006.

To date, the only documents produced by the Government have been those which the Government has selected and has voluntarily disclosed. However, during the course of the three depositions of Government personnel permitted by the Court, a number of other relevant documents have been identified which we believe contain information favorable to Plaintiff's position that enjoining the performance of the Defense Travel System (the "DTS") Contract would not create a significant hardship for the Government, and may actually provide a significant financial benefit to the Government.

Per this Court's Order of June 6, 2006, the Plaintiff, CW Government Travel, Inc. ("Carlson"), requests all documents, communications, or evidence of discussions identified during the following depositions and pertaining to:

**DEPOSITION OF COLONEL BRENDA SUE JOHNSON**

- Data regarding actual utilization of the Defense Travel System (the "DTS") versus traditional travel at sites where the DTS has been deployed. **Page 41, Lines 16-22. Requested documents demonstrate that the harm to the Government from an injunction would be minimal because the DTS is not currently being substantially utilized. This appears to be the same report from the DTR-6 Contractor, SATO, to which Paul Joyce frequently made reference.**
- Information provided by the Defense Travel System Program Management Office (the "DTS PMO") to the Government Accountability Office (the "GAO") in the course of the GAO's investigations into the DTS. **Request for this information is withdrawn.**
- Alternative methods considered by the DTS PMO to satisfy the DTS requirements if the DTS Contract is terminated. **Page 374, Line 16 — Page 377, Line 16. Requested information is relevant to determine the availability of such alternative methods in the event that the Court issues an injunction according to the terms of Carlson's proposed Order.**
- Evaluations of Northrop's eTravel System, including, but not limited to, an analysis of the extent to which it meets Department of Defense ("DoD") requirements. **Request for this information is withdrawn.**
- The developmental work on the DTS that will be deferred until after September 30, 2006 due to funding or other currently known constraints. **Page 107, Line 13 — Page 113,**

**Line 13; Page 211, Line 2 — Page 216, Line 3; Page 298, Line 15 — Page 311, Line 5. Requested documents demonstrate that the harm to the Government would be minimal because the injunction would not affect a great bulk of the planned developmental work, which will not be implemented prior to the end of the current Contract on September 30, 2006.**

- The planned DTS enhancements and, if or when they are going to be released between now and September 30, 2006, including, but not limited to, documentation that describes them and indicates when they are going to be released. **Request for this information is withdrawn.**
- The percentage of flights booked by the DTS using General Service Administration ("GSA") City Pairs instead of other available, lower airfares. **Request for this information is withdrawn.**
- Whether change orders were issued under the DTS Contract by the Government, or are contemplated being issued, that would show the benefit of finding airfares lower in price to the GSA City Pair fares. **Page 158, Line 5 — Page 161, Line 22. Requested change orders directing Northrop to display lower airfares demonstrate that the Government would, in fact, be benefited by enjoining further deployment of the DTS which unnecessarily charges the Government for higher priced flights, and continued reliance on Commercial Travel Office ("CTO") Contractors to ensure purchase of the lowest priced airfares.**
- Comparisons between the GSA eTravel System and the DTS that found the eTravel System to be more accurate in terms of displaying flights and airfares. **Request for this**

**information is withdrawn because it appears to be available as part of the September 2005 Senate testimony.**

- Any estimates of the additional costs that would allegedly be incurred by the Government if the Court terminates performance of the DTS Contract in August 2006. **Page 251, Line 15; Page 254, Line 1. Requested documents would determine whether there is any merit to the unsubstantiated statements by the Government regarding the alleged cost of an injunction.**
- A list of potential actions that the DTS PMO has prepared in this matter that could mitigate costs to the Government if the DTS Contract is enjoined. **Request for this information is withdrawn.**
- Updates of the May 30, 2006 documentation previously provided to Plaintiff. **The Government has agreed to provide this information.**
- Enhancements that are in the Technology Refresh ("Tech Refresh") and currently contemplated as being planned for completion prior to September 30, 2006. **The Government has agreed to provide this information.**
- Updates of Tab 6 of Defendant's Preliminary Exhibits. **The Government has agreed to provide this information.**
- Updates of deployment and enhancement schedules, including, but not limited to, those for the target releases listed at Tab 11 of Defendant's Preliminary Exhibits. **The Government has agreed to provide this information.**
- The estimated difference in cost to the Government of securing a reservation by using the DTS versus not using the DTS under current DoD Travel Management or CTO Contracts. **Page 386, Line 9. Requested document is relevant to the Government's**

**claim that "freezing" deployment of the DTS would cost more money due to transaction fees paid to CTO Contractors.**

- Whether DFAS will substantially reduce personnel in the DTS in Fiscal Year 2007 or thereafter and actually realize a net savings for DoD resulting from the processing of travel vouchers via the DTS. **Page 418, Line 8 — Page 428, Line 13. The entire savings claimed by the DTS PMO for processing vouchers by the DTS assumes that because the Defense Finance and Accounting Service ("DFAS") will stop charging the Army $16 million to process vouchers, the Government will realize a savings of $16 million without any evidence that the cost of DFAS to DoD will actually be reduced. Carlson is entitled to discover if there is any support for the hypothetical savings estimated by the DTS PMO.**
- The Government's contemplation of issuing a sole source contract or task order to replace the current DTS Contract for period after September 30, 2006. **Page 438, Line 21 — Page 440, Line 1. Requested information is relevant to the period of time that any injunction would be in effect under the Court's Order of June 6, 2006. That information is crucial to any consideration of potential hardship. It is impossible to adequately prepare for a trial on alleged hardships if deployment and development of the DTS is delayed by an injunction without knowing the length of time that such injunction might be in effect.**

**DEPOSITION OF GREGORY D. AMBROSE**

- The background information referenced in the document (and referred to as "DTS 101") prepared by Northrop Grumman Space & Mission Systems Corporation ("Northrop") for

the DoD Inspector General's Office on the Tech Refresh. **Request for this information is withdrawn.**

- Project management plan documents identifying problems or defects requiring correction or enhancements needed by the DTS. **Page 18, Lines 1-6. Requested documents reveal the status of DTS developmental efforts on a regular basis and demonstrates the extent to which planned changes to the DTS will or will not be deployed before September 30, 2006. This is directly relevant to assessing the impact of an injunction issued in early August 2006, and thus prove the limited degree of harm to the Government if an injunction were issued.**
- Agenda prepared for periodic meetings between the DTS PMO and military service representatives at the 06 level to discuss the DTS and documents reflecting the results of such meetings for 2005 and 2006. **Page 36, Line 4 — Page 41, Line 17. Requested documents demonstrate the problems with the DTS reported at least on a monthly basis by senior military service representatives. This information is relevant to the extent of harm, or lack thereof, that will result if an injunction delays further deployment of the DTS and continued use of CTO Contractors to make travel arrangements. These monthly meetings between the DTS PMO and senior military service representatives, in part, to identify DTS problems and/or needed enhancements, were referenced by all three Government Deponents.**
- Reports generated by the Army Test and Evaluation Command in evaluating DTS performance since January 1, 2005. **Page 23, Line 17 — Page 29, Line 10. Requested documents demonstrate the multitude of DTS problems identified and the time and**

**effort involved to adequately correct such problems. This information is relevant to assess the validity of the program schedule for the pending Tech Refresh.**

- Formal or informal responses by the DTS PMO to the above tests generated by the Army Test and Evaluation Command. **Page 28, Line 5 — Page 35, Line 9. Requested documents demonstrate the inadequate response by the DTS to the multitude of problems raised by the Army Test and Evaluation Command, which will be left unaddressed by the planned enhancements, thereby reducing any harm to the Government if an injunction were issued that delays completion of developmental work.**
- Monthly maintenance and/or enhancement releases for the DTS from the past six months. **Page 40, Line 3. Requested documents demonstrate the defects in the DTS or problems experienced by users that negates any harm if DTS deployment is delayed. Moreover, the difficulty or inability to timely correct previously identified problems undermines claims that the current Tech Refresh will be performed on schedule and cure all remaining problems with the DTS.**
- Task orders issued to Northrop pertaining to the above-mentioned maintenance and/or enhancement releases. **Page 40, Line 14 — Page 42, Line 10. Requested documents demonstrate the defects in the DTS or problems experienced by users that negates any harm if DTS deployment is delayed. Moreover, the difficulty or inability to timely correct previously identified problems undermines claims that the current Tech Refresh will be performed on schedule and cure all remaining problems with the DTS.**

- Help Desk tickets issued as a result of Help Desk calls. **Request for this information is withdrawn.**
- System problem reports and/or spreadsheets, including, but not limited to, those generated as a result of Help Desk calls. **Page 42, Line 9 — Page 46, Line 11. Requested documents demonstrate the nature and extent of the DTS problems left unaddressed by the enbancements that the Government plans on deploying before September 30, 2006, thereby reducing any harm to the Government if an injunction were issued.**
- Reports or other documentation provided to or available to the DTS PMO or Business Transformation Agency or Defense Travel Management Office regarding the DTS utilization rates for travel reservations after deployment. **Page 61, Line 17 — Page 62, Line 18. Requested documents demonstrate that the harm to the Government would be minimal if an injunction were issued because the DTS is not currently being substantially utilized even where it has been deployed for extended periods. Therefore, a relatively short injunctive delay in further deployment would have a minimal effect.**
- Reports that keep track of the number of reservations made in the DTS System and/or the number of vouchers processed for 2005 and 2006. **Page 61, Line 17 — Page 62, Line 18. Requested documents demonstrate that the harm to the Government would be minimal if the Court issued an injunction because the DTS is not currently being substantially utilized.**
- Analysis prepared by or available to the Government regarding why the DTS was or was not being extensively used by Government travelers to make travel reservations where

the DTS has been operationally deployed. **Page 63, Line 21. Requested document demonstrates that the harm to the Government would be minimal if the Court issued an injunction because the DTS is not currently being substantially utilized and utilization will not significantly increase as a result of the enhancements that the Government plans on deploying before September 30, 2006.**

- Complaints by the military users of problems or defects with the DTS that were discouraging or inhibiting the use of the DTS to make travel arrangements. **Page 63, Line 4 — Page 66, Line 10. Requested documents appear to reference the monthly meetings between senior military representatives and the DTS PMO that Colonel Johnson and Paul Joyce also referenced, and demonstrate that the harm to the Government would be minimal if the Court issued an injunction because the DTS has many problems and is not being used extensively for travel arrangements.**
- Reports generated by the DTS PMO or any support contractors that indicated the improvements needed in the system which led to the selection of OpenJaw to satisfy those improvements to the DTS reservation module. **Page 67, Line 4 — Page 78, Line 3. Requested documents demonstrate that the current DTS has major problems requiring substantial software development that is unlikely to be completed before September 30, 2006, regardless of what the Court does.**
- Reports that evaluated other commercial products (e.g., SABRE's Get There) to satisfy the improvements needed in the DTS Reservation System. **Page 68, Line 19 — Page 74, Line 13. Requested documents demonstrate that the harm to the Government would be minimal if an injunction were issued because the DTS currently has serious problems that will not be corrected before September 30, 2006.**

- Any instances in which a trip was booked by a member of the DTS PMO on the DTS and the CTO found and noted in the DTS a lower airfare available on the same flight. **Request for this information is withdrawn as duplicative.**
- The most current progress reports for the Tech Refresh. **The Government has agreed to provide this information.**
- The decision whether or not to test the Tech Refresh System after it is delivered by Northrop and before deployment. **Page 161, Line 7 — Page 172, Line 8. Requested document demonstrates that the harm to the Government from an injunction prior to September 30, 2006 would be minimal because the Government will not have adequately tested the Tech Refresh System prior to September 30, 2006, thereby preventing implementation regardless of the Court's action.**

<u>DEPOSITION OF PAUL JOYCE</u>

- Documents related to the periodic meetings of the DTS PMO with representatives of the military services regarding the DTS. **Page 24, Line 18 — Page 26, Line 5; Page 121, Line 21 — Page 124, Line 8. Requested documents demonstrate the nature and extent of the DTS problems that have resulted in low utilization, higher costs to the Government and necessitate the involvement of CTO Contractors to make DoD travel arrangements, thereby reducing any harm to the Government as a result of the issuance of an injunction that delays further deployment of the DTS. These are the same periodic meetings between the DTS PMO and senior representatives of each military service that all three DoD Deponents cited as a source of information regarding problems experienced with the DTS.**

- DTMO's identification of issues to be discussed with the military services regarding DTS issues made after the March 28, 2006 Industry Conference. **Page 26, Line 6 — Page 30, Line 6. Requested document demonstrates the nature and extent of current DTS problems identified by the Industry Conference of March 28, 2006, that have resulted in low utilization and bigher costs associated with the DTS, thereby reducing any harm to the Government as a result of the issuance of an injunction that delays further deployment of the DTS.**

- Documents reflecting the decision process regarding the April 2006 cancellation of the DTS Worldwide CTO Solicitation originally issued in November 2004. **Page 38, Line 12 — Page 40, Line 19. Requested documents demonstrate the nature and extent of the DTS problems affecting utilization and increasing costs that caused significant changes to the Worldwide Solicitation for CTO Contractors who would have to use the DTS. This information demonstrates the lack of harm in the event further deployment of the DTS is delayed by injunction and DoD continues to rely primarily upon CTO Contractors for travel services.**

- Discussions or responses to discussions regarding concerns expressed by the military services to the DTS PMO or DTMO in getting lower airfares than provided by the DTS. **Page 95, Line 15 — Page 96, Line 11. Requested documents demonstrate the nature and extent of the DTS problems that result in higher airline ticket costs from using the DTS than relying on CTO Contractors to make travel arrangements. This DTS defect offsets any potential harm resulting from a delay in further deployment due to an injunction.**

- Reports or summaries prepared by or for the DTS PMO of problems or defects requiring correction or enhancements needed by the DTS. **Page 113, Line 6 — Page 114, Line 11. Requested documents prepared by the DTS PMO Configuration Control Board demonstrate the nature and extent of the DTS problems that result in low utilization of the DTS and higher costs to the Government, thereby reducing any harm to the Government as a result of the issuance of an injunction.**
- Reports available to DoD related to concern that the DTS was not properly displaying flights or airfares. **Page 114, Line 22 — Page 116, Line 16. Requested documents demonstrate the extent to which the Government would, in fact, be benefited by enjoining a program that inaccurately displays flights or airfares, thereby reducing any harm to the Government as a result of the issuance of an injunction and continued reliance on CTOs to provide travel services.**
- Reports available to DoD related to concern that Government personnel were not adequately using the DTS. **Page 30, Line 7 — Page 32, Line 2; Page 116, Line 17 — Page 117, Line 3; Page 128, Lines 6-20; Page 146, Lines 5-9; Page 183, Line 4 — Page 186, Line 20. Requested documents prepared recently by the DTR-6 Contractor at the request of DTMO confirms the relatively low utilization of the DTS and the need for a CTO Contractor to touch virtually all DTS transactions to complete or correct travel reservations. This report is highly relevant to prove that delaying further deployment of the DTS and continuing to rely upon CTO Contractors to make DoD travel arrangements will not cause actual harm to the Government.**

- Reports available to DoD related to concern or discussions regarding how to increase utilization of the DTS. **Request for this information is withdrawn.**
- Reports prepared by or for DoD regarding instances in which the DTS made airline reservations, but lower airfares were available on the same flight or alternative flights. **Page 130, Line 11 — Page 144, Line 10. Requested documents demonstrate the extent to which the Government would, in fact, be benefited by enjoining further deployment of a system that inaccurately displays flights or airfares and continued reliance on CTO Contractors.**
- Communications that notified Northrop that corrections, changes, or enhancements must be made to the DTS to more accurately display available flight and airfare information. **Page 131, Line 13 — Page 134, Line 17; Page 140, Line 16 — Page 143, Line 11. Requested documents demonstrate the extent to which the Government would, in fact, be benefited by enjoining further deployment of a system that inaccurately displays flights or airfares and continues reliance on CTO Contractors.**
- Reports regarding problems experienced with the DTS in which the dates for hotel and rental car reservations did not coincide with the arrival time of the traveler at the temporary duty destination. **Page 136, Lines 7-19. Requested documents demonstrate the extent to which the Government would, in fact, be benefited by enjoining further deployment of a system that often is unable to coordinate the arrival time of the traveler at the temporary duty destination with the dates for hotel and rental car reservations and continued reliance on CTO Contractors.**
- Reports regarding problems experienced with the DTS in which travelers were making multiple reservations in the DTS System which caused airlines to charge the Government

additional fees. **Page 136, Line 20 — Page 137, Line 8. Requested documents demonstrate the extent to which the Government would, in fact, be benefited by enjoining further deployment of a system that allows multiple reservations to be made by the same traveler for the same trip, resulting in penalty costs that far exceed the cost of having a CTO Contractor arrange the travel.**

- Communications or reports regarding whether the DTS had been deployed without adequate testing. **Request for this information is withdrawn.**
- Findings or reports prepared by or for DFAS regarding the inaccurate processing of DTS travel vouchers. **Page 144, Line 11. Requested documents demonstrate the extent to which the Government would, in fact, be benefited by enjoining further deployment of a system that allows inaccurate processing of DTS travel vouchers.**
- Reports regarding how many DoD travelers actually use the DTS reservation module to make airline reservations and, of those, how many of those travel transactions required CTO assistance – e.g., "DTS touch." **Page 183, Line 4 — Page 186, Line 20. Requested documents are another reference to the Report on DTS utilization prepared by the DTR-6 Contractor at the request of DTMO after the March 28, 2006 Industry Conference. This information demonstrates that the harm to the Government of an injunction would be minimal because the DTS is not currently being substantially utilized, costs the Government more money when it is utilized, and requires the assistance of a CTO Contractor for a higher fee.**
- Reports regarding the frequency with which the DTS selection of GSA City Pair airfares do not provide the lowest fare available and consistent with the Defense Transportation Regulation 4500.9-R. **Page 195, Line 12 — Page 210, Line 8. Requested documents**

**demonstrate the extent to which the Government would, in fact, be benefited by enjoining a program that often does not provide the lowest fare available or is consistent with Defense Transportation Regulation 4500.9-R.**

Dated: July 13, 2006

Respectfully submitted,

s/ Lars E. Anderson
Lars E. Anderson
Michael W. Robinson
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, Virginia 22182
Telephone No.: (703) 760-1600
Telecopier No.: (703) 760-1623 (Protected)
*Counsel for Plaintiff*

mc1docs/209656.01

## CERTIFICATE OF FILING

I hereby certify that on July 13, 2006, a copy of the foregoing PLAINTIFF'S ANNOTATED VERSION OF PLAINTIFF'S REQUEST FOR FURTHER DISCOVERY was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Lars E. Anderson
Lars E. Anderson

mcldocs/209656.01